SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Plaintiff Righthaven LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>PAHRUMP LIFE, an entity of unknown origin and nature; MAREN SCACCIA, an individual; and MICHAEL SCACCIA, an individual,<br><br>Defendants. | Case No.: 2:10-cv-01575-JCM-PAL<br><br>**PLAINTIFF RIGHTHAVEN LLC'S RESPONSE TO MICHAEL SCACCIA'S MOTION FOR SUMMARY JUDGMENT** |

Righthaven LLC ("Righthaven") hereby responds to Defendant Michael Scaccia's ("Defendant") Motion for Summary Judgment (the "Motion," Doc. # 12).  This response is based on the pleadings and papers on file in this action, any oral argument this Court may allow, and any other matter upon which this Court takes notice.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendant asks this Court to conclude, as a matter of law, that his unauthorized replication of the literary piece "Warden, other employees resign from prison in escape fallout" (the "Work") was fair use.  Defendant's submission, however, fails to include any admissible

1

evidence upon which the Court could rely to grant the relief requested.  This fact, standing alone, strikes a fatal blow to Defendant's Motion.

Defendant's lack of evidentiary support for his Motion aside, his submission clearly fails to establish that he conduct is exempt from liability on fair use grounds.  In this regard, Defendant has admitted crucial facts that unquestionably weigh in favor of finding against fair use.  In fact, the evidence before the Court more appropriately supports a finding that Defendant should be barred from advancing a fair use defense in this case.  While the Court may not be prepared to enter such relief at this stage of the proceedings and in view of Defendant's *pro se* status, at a minimum Defendant's Motion should be denied.

## II.    STATEMENT OF FACTS

Righthaven filed this copyright infringement action on September 14, 2010.  (Doc. # 1.) Righthaven asserts that it is the owner of the copyrighted Righthaven is the owner of the copyright in the Work. (*Id.* at 2, Ex. 1.)

Righthaven contends that Defendant is, and has been at all times relevant to this lawsuit, identified by the current registrar, GoDaddy.com, Inc. ("GoDaddy"), as the registrant of the Internet domain found at <pahrumplife.org> (the "Domain" and the content available through the Internet at the Domain is referred to herein as the "Website").  (*Id.* at 2.) Defendant is, and has been at all times relevant to this lawsuit, identified by GoDaddy as an administrative contact and technical contact of the Domain. (*Id.*)

Righthaven contends that on or about August 15, 2010, the Defendant displayed an unauthorized reproduction of the Work as part of the content accessible on the Website.  (*Id.* at 3-4.)  Righthaven further maintains that Defendant willfully copied the Work without authorization and displayed the unauthorized reproduction on the Domain.  (*Id.* at 5.) Righthaven has, among other things, sought entry of a permanent injunction and an award of statutory damages against Defendant and others defending parties named in the action. (*Id.* at 5-6.) Righthaven has demanded a jury trial in this case.  (*Id.* at 7.)

### III.    APPLICABLE STANDARDS

Entry of summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56") is only proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986).  This burden is only discharged through the submission of admissible evidence in support of the claimed basis for relief.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *see also Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir. 1990).  As required on a motion for summary judgment, the facts are construed "in the light most favorable to the party opposing the motion."  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  *Anderson,* 477 U.S. at 249.  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."  *Id.* at 256.

Rule 56 must be construed "with due regard . . . for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury."  *Celotex Corp.,* 477 U.S. at 327.  Summary judgment is proper only after there is an adequate opportunity for discovery. *Id.* at 326.  This is particularly true when evidence is presented by a moving party in support of summary judgment on matters exclusively within their possession or based on their knowledge and there has not been an adequate opportunity to conduct discovery on those matters.  *See Anderson,* 477 U.S. at 257.  In fact, "where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted as a matter of course."  *International Raw Materials, Ltd. v. Stauffer Chem. Co.,* 898 F.2d 946, 949 (3d 1990)(internal quotation marks omitted).

Application of the foregoing standards in view of the record before the Court demonstrates that summary judgment is unwarranted based on Defendant's arguments that his

infringing conduct falls within the Fair Use exception.   To begin with, Defendant has failed to support his request for summary judgment with admissible evidence, which standing along provides a basis for denying the Motion.   The lack of any admissible evidence aside, summary judgment is substantively unwarranted under a proper four factor fair use analysis.   Moreover, summary judgment is unwarranted given the fact discovery has yet to be conducted in this case by either party.

## IV.   ARGUMENT

### A.   *The Court is Compelled to Deny Defendant's Motion Because He Has Failed to Come Forth With Admissible Evidence.*

 The Court is required to deny Defendant's summary judgment request because he has failed to support the Motion with admissible evidence.

As noted above, a party moving for summary judgment under Rule 56 has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 256.  This burden is only discharged through the submission of admissible evidence in support of the claimed basis for relief.  *See Celotex Corp.,* 477 U.S. at 325 (1986); *see also Musick,* 913 F.2d at 1394.  Moreover, the Court may only rely on declarations that contain facts within the declarant's personal knowledge and that would otherwise be admissible under the Federal Rules of Evidence.  *See Orr v. Bank of America, NT & SA,* 285 F.3d 764, 778 (9th Cir. 2002); *Bank Melli v. Pahlavi,* 58 F.3d 1406, 1412 (9th Cir. 1995).

Here, Defendant has supported the Motion with absolutely no admissible evidence, which he is obligated to provide in order to be entitled to entry of summary judgment.  In this regard, Defendant has submitted a three paragraph declaration that merely states: (1) he is the Defendant; (2) "[a]ll statement of fact set forth in the FACTS section of the memorandum to which this Declaration is attached are true of [his] own personal knowledge, except those stated on information and belief;" and (3) an affirmation that his factual statements are made under penalty of perjury "except those matters stated on information and belief . . . ."  (Doc. # 12-1.) Defendant's declaration completely fails to set forth the basis for his alleged personal knowledge of any particular fact or assertion upon which he relies. (*Id.*)  Moreover, Defendant's declaration

fails to delineate what the factual assertions are and how the factual assertions constitute admissible evidence.  (*Id.*)  Furthermore, Defendant's declaration fails to identify what, if any, factual assertions are premised on "information and belief."  (*Id.*)  As the Court is likely aware, declarations based on "information and belief" are entitled to no evidentiary weight where the declarant lacks personal knowledge.  *See Bank Melli,* 58 F.3d at 1412.  Granted, the Defendant is not a lawyer.  This, however, does not justify departing from the requirements mandated by Rule 56 and decisions interpreting Rule 56.

In short, Defendant is required to come forth with evidence and demonstrate its admissibility to be entitled to entry of summary judgment in his favor.  Defendant has completely failed to demonstrate that the Motion is supported by admissible evidence. Accordingly, the Court is compelled to deny Defendant's Motion.

**B.**     ***Defendant's Failure to Submit Admissible Evidence Aside, Entry of Summary Judgment on Fair Use Grounds is Unwarranted.***

Defendant asks this Court to enter summary judgment in his favor by finding that his infringing conduct qualifies as fair use.   Defendant's own unsworn statements submitted in support of the Motion support its denial, either through the existence of genuine issues of material fact or due to Righthaven's inability to explore these genuine issues of material fact through discovery.

Fair use is an affirmative defense upon which a defendant bears the burden of proof and the burden of persuasion.  *See Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1158 (9th Cir. 2007).  "In ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Anderson,* 477 U.S. at 254. As explained by the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"):

> "Fair use is a mixed question of law and fact.  If there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work."

*Los Angeles News Serv. v. KCAL-TV Channel 9,* 108 F.3d 1119, 1120 (9th Cir. 1997)(quoting *Hustler Magazine, Inc. v. Moral Majority, Inc.,* 796 F.2d 1148, 1150 (9th Cir. 1986)).

Further complicating entry of summary judgment in fair use cases is that the Court's inquiry is not controlled by a bright line test.  Specifically, when a copyright defendant asserts the affirmative defense of fair use, the district court must consider the following factors: "(1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the work as a whole; and (4) the effect of the use upon the potential market for the work or the value of the work." *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1014 (9th Cir. 2001) (internal quotation marks omitted); *see also* 17 U.S.C. § 107.  The fair use doctrine requires a "case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 577 (1994).  Courts are required to consider and weigh all four factors when conducting a fair use analysis. *Id.*  Conducting such an analysis as a matter of law requires that controlling facts be presumed or admitted. *See Fisher v. Dees,* 794 F.2d 432, 435-36 (9th Cir. 1986).  Here, Defendant's unsworn statements submitted in support of the Motion demonstrate that he is not entitled to entry of summary judgment on the issue of fair use.

### a.   The purpose and character of use weighs against a finding of fair use raises genuine issues of material fact.

Turning to the first factor in the fair use analysis, which calls for consideration of "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1).  In considering the purpose and character of the use, courts must determine whether the alleged infringing publication, when comparatively viewed with the copyrighted work, "merely replaces the object of the original creation or instead adds a further purpose or different character." *Napster, Inc.,* 239 F.3d at 1015.  Stated differently, the "purpose and the character of use" factor involves resolving the question as to "whether the allegedly fair use was 'transformative,' *i.e.,* whether the second use 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.'" *Los Angeles News Serv. v. CBS Broad., Inc.,* 305 F.3d 924, 938 (9th Cir. 2002) (*quoting Campbell,* 510 U.S. at 579).  This inquiry has a wide-ranging impact on the fair use

analysis: "the more transformative the new work, the less will be the significance of the other factors, like commercialism, that may weigh against a finding of fair use." *Campbell,* 510 U.S. at 579.

To begin with, Defendant admits that he utilized the unauthorized copy of the Work for the exact same purpose as the source publication – "for the purpose of news reporting and comment." (Doc. # 12 at 8.) Thus, Defendant's use of the work was not "transformative," but rather sought to replace information that could have rightfully been obtained from the Work in the source publication. These similar purposes – between that of the source publication's dissemination of the Work and the Defendant's display of the unauthorized version on the Website weighs against a finding of fair use as to the first analysis factor.

Defendant's 100% unauthorized copying of the Work further demonstrates that the first factors weighs against a finding of fair use. As noted by the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), the copying a literary work "in its entirety bespeaks no 'intellectual labor and judgment.' It merely 'supersedes the object' of the original work." *Worldwide Church of God v. Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) ("*Worldwide Church*"). The decision in *Worldwide Church* does not stand alone. Other courts faced with the issue of wholesale or verbatim copying have likewise concluded that such infringing conduct weighs against a finding of fair use. *See Campbell,* 510 U.S. at 587-88 (whether "a substantial portion of the infringing work was copied verbatim from the copyrighted work is a relevant question . . . for it may reveal a dearth of transformative character or purpose under the first factor . . ."); *Walt Disney Prods. v. Air Pirates,* 581 F.2d 751, 757 (9th Cir. 1978) (acknowledging that "near-verbatim copying" generally precludes a finding of fair use); *Los Angeles Time v. Free Republic,* No. 98-7840, 1999 WL 33644483, at *10 (C.D. Cal. Nov. 8, 1999) ("There is nothing transformative about copying the entirety or portions of a work verbatim.") ("*Free Republic I*").

Here, the infringement at-issue in this case contains an exact, 100%, duplication of the Work. (Compl. Exs. 1-2, Doc. #1, Exs. 1-2.) No modifications or revisions are contained in the infringing copy of the Work displayed on Defendant's Website. (*Id.*) In fact, the infringing copy

of the work is nothing more than a cut-and-paste reprint of the Work. This form of mindless infringing conduct clearly contains absolutely no "transformative value" under the first fair use factor. As the *Worldwide Church* panel reasoned, to satisfy this requirement, "[t]here must be real, substantial condensation of the materials, and intellectual labor and judgment bestowed thereon; and *not merely the facile use of the scissors, or extracts of the essential parts, constituting the chief value of the original work.*" *Worldwide Church,* 227 F.3d at 1117 (emphasis added).

It should be noted that Defendant claims "[t]he Pahrump Life blog is completely non-commercial. No revenues for it have been sought or received." (Doc. # 12 at 9.) No evidence, competent or otherwise, has been submitted in support of this assertion. Thus, while a non-commercial use does have some bearing on the first fair use factor, there is an inadequate evidentiary basis for the Court to rely on this contention. Moreover, even if Defendant's were accepted as true, the Ninth Circuit has nevertheless held that a "[d]irect economic benefit is not required to demonstrate a commercial use." *See Napster, Inc.,* 239 F.3d at 1015. In other words, in the context of fair use, "monetary gain is not the sole criterion . . ." *Worldwide Church of God v. Philadelphia Church of God, Inc.,* 227 F.3d 1110, 1117 (9th Cir. 2000) ("*Worldwide Church*")(emphasis added). Instead, the threshold for commercial use can be satisfied if the defendant's use of the infringed work generates good will for, and promotes, the defendant's underlying operation. *See Free Republic I,* 1999 WL 33644483, at *15-16 (finding of fair use is supported by "the fact that defendants' web page is enhanced by use of the articles, and that [sic] fact that the copying assists in generating support, both financial and non-financial, for their operation"). This concept is directly applicable at present because Defendant is obviously publishing the Pahrump Life blog for some reason – be it for his own personal notoriety or otherwise. It is without question that such an inquiry will need to be examined during the discovery process, which has yet to commence in this case. This point aside, there is absolutely nothing of evidentiary value before the Court upon which it could properly conclude the first use factor weighs in favor of fair use given the Defendant's wholesale, unauthorized replication of

the Work.  In fact, Defendant's infringement in this case weighs heavily against a finding of fair use under the first analysis factor.

> **b.      The nature of the copyrighted work is not amenable to summary judgment.**

The second factor in the fair use analysis calls for consideration of "the nature of the copyrighted work." 17 U.S.C. § 107(2).  This factor "turns on whether the work is informational or creative." *Worldwide Church,* 227 F.3d at 1118.  Righthaven asserts that this factor weighs against a finding of fair use, or at a minimum raises a genuine issue of material fact, because Defendant copied the Work without authorization and the subject matter was clearly subject to copyright protection.

As a news article, the Work is admittedly based on fact.  However, the manner in which the Work's content is structured and articulated demonstrates considerable creativity and effort undertaken by the author in bringing the material to print.  Furthermore, regardless of the Work's arguably factual nature, the Defendant's wholesale copying of the Work is not somehow exempted from liability.

Contrary to the Defendant's contention, he is not permitted to commit blatant copyright infringement simply because the Work's highly expressive attributes are coupled with substantial factual content.  The "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality." *Harper & Row Publishers, Inc.,* 471 U.S. at 547.  Moreover, written news articles reflect the reporter's creative endeavors in compiling a piece for dissemination. *Los Angeles Times v. Free Republic,* 54 U.S.P.Q.2d 1453, 1467 (C.D. Cal. Apr. 4, 2000) ("*Free Republic II*"). As noted by the court in *Free Republic II,* "a news reporter must determine which facts are significant and recount them in an interesting and appealing manner." *Id.*

Defendant's assertion that the Work "contains less than 300 words" is equally unpersuasive.  (Doc. #12 at 9.)  There is no bright line test for fair use.  Rather, the fair use doctrine requires a "case-by-case analysis." *Campbell,* 510 U.S. at 577.  Moreover, a work does not deserve less copyright protection based on its size, length or in view of it being a composite work. *Cf. Hustler Magazine, Inc.,* 796 F.2d at 1155. Accordingly, Righthaven submits that

Defendant has failed to establish that the second fair use factor weighs in favor of a fair use finding, which supports denying him the relief requested in the Motion.

### c. *The amount and substantiality of the Work taken does not support a finding of fair use.*

The third factor examined under a fair use analysis requires the Court to consider "the amount and substantiality of the portion used in related to the copyrighted work as a whole." *See* 17 U.S.C. § 107(2). This factor clearly weighs against a finding of fair use.

Defendant admits that he misappropriated 100% of the Work. (Doc. # 12 at 10.) This wholesale theft of the Work clearly weighs against a finding of fair use. As noted by the Ninth Circuit in *Worldwide Church* with regard to the "amount and substantiality" third fair use factor, "[w]hile 'wholesale copying does not preclude fair use per se,' copying an entire work 'militates against a finding of fair use.'" *Worldwide Church,* 227 F.3d at 1117 (*quoting Hustler Magazine, Inc.,* 796 F.2d at 1155). The *Worldwide Church* panel then explained, "'the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.'" *Id.* at 1118 (*quoting Harper & Row Publishers, Inc.,* 471 U.S. at 565)). Thus, while Defendant claims he "the whole of the Article essentially had to be reproduced" in order to facilitate his news reporting purpose, this fact clearly supports the qualitative value of the Work. In this regard, it should be noted that other viable options were available to Defendant for accomplishing his "news reporting" purpose without infringing the Work. For instance, Defendant could have used his own words to summarize the Work along with a link to the original source publication for Website viewers interested in reading the entire story. Instead of taking such an obvious and reasonable path, Defendant instead decided to take the easy road out by cutting and pasting a 100% copy of copyright protected content on the Website without authorization. Such acts are not entitled to fair use protection. As noted by the panel in *Worldwide Church:*

> We have found no published case holding that fair use protected the verbatim copying, without criticism, of a written work in its entirety.

*Worldwide Church,* 27 F.3d 1110, 1120.  Accordingly, Defendant's unauthorized 100%
replication of the Work weighs strongly against a finding of fair use with regard to the third
analysis factor.

> ### d.   The fourth fair use factor is not amenable to summary judgment.

The fourth factor examined under a fair use analysis requires the Court to consider "the
use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4).  This
factor does not weigh in favor of a fair use finding.

To begin with, Righthaven is entitled to a presumption of market harm if is it
demonstrated that there are commercial elements associated with the Defendant's infringement.
*See Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984)("*Sony Corp.*").
At this stage of this proceedings, Righthaven has not been permitted to engage in any discovery
efforts directed toward Defendant's potential commercial use with regard to the Website and its
unauthorized display of the Work.  As such, Righthaven is unable to assess whether it is entitled
to a presumption of mark harm.  This raises a genuine issue of material fact concerning the four
fair use factor, thereby justifying denial of summary judgment.

Even without considering the possible presumption of market harm to which Righthaven
may be entitled, Defendant's unauthorized 100% copying of the Work, the record in this case in
view of the applicable case law tips the fourth factor against a fair use finding.  First, as opposed
to a transformative work, "a work that merely supplants or supersedes another is likely to cause a
substantially adverse impact on the potential market of the original." *Sony Computer Entm't, Inc.
v. Connectix Corp.,* 203 F.3d 596, 607 (9th Cir. 2000).  The law is clear that "a work composed
primarily of an original, particularly its heart, with little added or changed, is more likely to be a
merely superseding use, fulfilling the demand for the original." *Campbell,* 510 U.S. at 587-88.
In the *Campbell* decision, the Supreme Court explained that whether a work is copied verbatim is
a relevant inquiry under the fourth fair use factor, as this may reveal "a greater likelihood of
market harm . . ." *Id.* at 587.  "[W]here the [defendant's] use is for the same intrinsic purpose as
the copyright holder's . . . *such use seriously weakens a claimed fair use.*" *Worldwide Church,*

227 F.3d at 1117 (emphasis added) (*quoting Weissmann v. Freeman,* 868 F.2d 1313, 1324 (2d Cir. 1989)).

Here, the Defendant cannot escape the fact that they engaged in the cyberspace equivalent of making a Xerox copy of the Work and then used the Xerox copy to advance his admitted news reporting purpose.  Defendant did nothing to alter the content of the Work. Such circumstances warrant the conclusion that Defendant's infringement has likely caused a substantial impairment on the potential market for the Work and that Defendants' infringing copy of the Work fulfilled the demand for the original. *See Campbell,* 510 U.S. at 587-88; *Sony Computer Entm't, Inc.,* 203 F.3d at 607.

Additionally, the Court's analysis of the fourth fair use factor must consider "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market for the original." *See Campbell,* 510 U.S. at 590 (internal quotation marks omitted).  In this regard, the appropriate inquiry "must take account not only of harm to the original but also of harm to the market for derivative works." *Id.* (*quoting Harper & Row Publishing, Inc.,* 471 U.S. at 568).[1]  Such reasoning, when applied to the instant case, clearly reflects the presence of potential market harm.

If numerous, additional Internet users were to replicate the Defendant's wholesale, cyberspace Xerox copy of the Work, the market for both the Work and derivatives of the Work would be inevitably diminished regardless of the intentions of each individual infringer.  The Ninth Circuit has held that the fourth fair use factor is not limited to market impairment; this analysis also includes "the effect of the use on the *value* of the copyrighted work." *Worldwide Church of God,* 227 F.3d at 1119 (*quoting* 17 U.S.C. § 107(4)) (emphasis in original).  Thus, "even copying for noncommercial purposes may impair the copyright holder's ability to obtain the rewards that Congress intended him to have . . . [t]hose rewards need not be limited to monetary rewards; compensation may take a variety of forms." *Id.* (*quoting Sony Corp.,* 464 U.S. at 450).

---

[1] Similarly, in this analysis, "[a]ctual present harm need not be shown; such a requirement would leave the copyright holder with no defense against predictable damage." *Sony Corp.,* 464 U.S. at 451.

The potential reduction of a literary work's present and future market value resulting from Internet-based copyright infringement is exemplified by the district court's holding in *Free Republic II*.  In *Free Republic II*, the defendants asserted a fair use defense to justify the posting of the plaintiff's newspaper articles on the defendants' website.  *Free Republic II,* 54 U.S.P.Q.2d at 1455-59.  In finding against fair use, the United States District Court for the Central District of California explained that "[d]efendants use 'substitutes' for the originals, and has the potential of lessening the frequency with which individuals visit plaintiffs' websites, of diminishing the market for the sale of archived articles, and decreasing the interest in licensing the articles." *Id.* at 1471.

The reasoning employed by the court in *Free Republic II* should be applied by this Court. As the Defendant's infringement arguably substitutes for and supersedes the purpose of the original Work given that it consists of a 100% replication of the Work, it takes very little, if any, leap in deductive reasoning to conclude that readers of the Work on the Website may be diverted from, or elect not to read, the Work's original source publication.  Stated differently, there is simply no intuitive motivation for someone reading the wholesale, 100% replication of the Work on the Website to seek out and read the original version of the Work in any format – such as an Internet website copy or a hard copy.  Simply put, the reader has digested the content and is in all likelihood through with the Work, thereby depriving the source publication of other tangible and intangible benefits of increased readership, viewership and/or subscribership.  These virtually required logical inferences in view of Defendant's infringement clearly support a finding of diminished value of the Work and of derivatively associated literary works available from the source publication.  Such a finding weighs against fair use under factor four of the Court's analysis.

Defendant argues that the market value for the Work could not have been adversely affected because the Work is available for free on source publication's website.  (Doc. # 10 at 10.)  The Defendant is clearly missing the point here.  While the Work was certainly made freely available for ***viewing*** via the LVRJ website, the Work was not made freely available in order to permit third parties to ***republish*** it for their benefit. An extension of the Defendant's logic would

mean that anyone would be free to set up a competitive Internet news site, stock said site full of content published by the LVRJ, yet escape liability for infringement by claiming that the LVRJ permitted this infringing practice.

Furthermore, the fact that copyrightable material is often published, and thus, ***made available to the public***, is not a new concept.  Apparently, the Defendant is unaware that the USCO requires copyright registrants to deposit a specimen of each work with the Copyright Office "for the use or disposition of the Library of Congress." *See* 17 U.S.C. § 407(b).  Once registered, each protected work deposited with the USCO enters the Library of Congress and is made accessible to the public. *See id.*  However, the fact that a protected work is made publicly available does not mean that the work can be freely copied and distributed amongst the public without repercussion.  In effect, the Defendant is arguing that he reasonably assumed that the infringed Work could be copied and publicly distributed simply because it was made available on the Las Vegas Review Journal's ("LVRJ") website.  This proposition is highly illogical and essentially ignores hundreds of years of established copyright law.

Moreover, by stating that the LVRJ website encouraged users to share its articles via e-mail and through other means, the Defendant conveniently ignores the fact that the LVRJ website only permits users to save a **hyperlink** leading to the articles published on the LVRJ website, or to e-mail a **hyperlink** leading to the LVRJ website. Importantly, both of these options ultimately require the user (or the user's e-mail recipient) to access the LVRJ articles directly through the LVRJ website.   In other words, the option to save or e-mail a hyperlink to the LVRJ articles rightfully ensures that Internet users will only view said articles as they are displayed by the LVRJ website, rather than by viewing unauthorized copies of the articles displayed on an infringing website.  This use of hyperlinks, prudently employed by the LVRJ website, is seemingly intended to both ensure copyright protection and invite user traffic to view LVRJ articles online.  As such, the Defendant cannot reasonably argue that he properly inferred the LVRJ's consent to wholesale reproduce the Work.  By no means is the LVRJ's use of hyperlinks intended to encourage users to commit copyright infringement without any possible repercussion, and the Defendant's contention to the contrary is entirely unreasonable.

Defendant's contention that his unauthorized display of the Work may have increased traffic to the LVRJ's source website is without merit.  (Doc. # 10 at 10.) Courts in jurisdictions nationwide have repeatedly rejected the proposition that the use of a copyrighted work is fair because said use might somehow increase the demand for the plaintiff's work.  *See, e.g., Campbell,* 510 U.S. at 591 n. 21 (even if a "film producer's appropriation of a composer's previously unknown song . . . turns the song into a commercial success[,] the boon to the song does not make the film's simple copying fair"); *DC Comics Inc. v. Reel Fantasy, Inc.,* 696 F.2d 24, 28 (2d Cir. 1985) ("Since one of the benefits of ownership of copyrighted  material is the right to license its use for a fee, even a speculated increase in DC's comic book sales as a consequence of RFI's infringement would not call the fair use defense into play as a matter of law. The owner of the copyright is in the best position to balance the prospect of increased sales against revenue from a license"); *Ringgold v. Black Entertainment Television, Inc.,* 126 F.3d 70, 81 n. 16 (2d Cir. 1997) ("Even if the unauthorized use of plaintiff's work in the televised program might increase poster sales, that would not preclude her entitlement to a licensing fee"). Furthermore, the Defendant's wishful contention in this regard also fails to account for the possibility that readers may be diverted from the Work's original source publication as a result of the unauthorized copy's availability on the Defendant's Website.  Ultimately, this wholly speculative theory has no bearing on the Court's analysis and does nothing to bolster the Defendant's assertion of fair use.

In sum, there is ample reason for the Court to conclude that Defendant's 100% unauthorized copying of the Work for the same purpose, to provide a news report, resulted in market harm.  Defendant's arguments to the contrary are unpersuasive.  As such, the fourth fair use factor supports a finding against fair use.  At a minimum, the market harm issues raise genuine issues of material fact that support denying Defendant's Motion.

**C.    *Defendant's "Other Issues" Do Not Warrant Dismissal.***

The remaining material portions of Defendant's Motion relate the Work not containing protectable content and speculative allegations concerning an invalid assignment of rights.  (Doc. # 10 at 11-12.)  These "other issues" do not warrant dismissal of Righthaven's Complaint.

To begin with, Defendant claims that the Work is not subject to copyright protection because is it 300 words of facts.  Defendant is wrong.  Copyright protection is not based upon the amount of content, but the expressions conveyed in said content.  As noted above, the "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality." *Harper & Row Publishers, Inc.,* 471 U.S. at 547.  Moreover, written news articles reflect the reporter's creative endeavors in compiling a piece for dissemination. *Los Angeles Times v. Free Republic,* 54 U.S.P.Q.2d 1453, 1467 (C.D. Cal. Apr. 4, 2000) ("*Free Republic II*").  As noted by the court in *Free Republic II*, "a news reporter must determine which facts are significant and recount them in an interesting and appealing manner." *Id.*  Defendant offers no credible arguments to traverse these decisions.  In short, his argument is without merit and should be rejected.

Defendant's speculative rant about the validity of Righthaven's assignment must also be rejected.  Quite simply, this portion of the Motion reads like a recitation of genuine issues of material fact that need to be resolved during the discovery process.  That said, Righthaven has alleged ownership of the Work and that Defendant has committed copyright infringement of the Work.  Righthaven is under no obligation at this stage of the proceedings to defend its assignment of the Work.  Accordingly, Defendant's speculative innuendo cannot support dismissal of Righthaven's Complaint.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Righthaven respectfully requests the Court deny Defendant's Motion and grant such other relief as it deems appropriate and just.

Dated this 28th day of February, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 28th day of February, 2011, I caused the foregoing document to be served by the Court's CM/ECF system and to be served via U.S. Mail to:


Michael Scaccia:
4191 West Quail Run Road
P.O. Box 9466
Pahrump, Nevada 89060

                                         SHAWN A. MANGANO, LTD.

                                         By: /s/ Shawn A. Mangano
                                         SHAWN A. MANGANO, ESQ.
                                         Nevada Bar No. 6730
                                         shawn@manganolaw.com
                                         9960 West Cheyenne Avenue, Suite 170
                                         Las Vegas, Nevada 89129-7701
                                         Tel: (702) 304-0432
                                         Fax: (702) 922-3851

                                         *Attorney for Righthaven LLC*

17