CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorney for *Amicus Curiae*
PROFESSOR JASON SCHULTZ

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RIGHTHAVEN LLC, a Nevada limited-liability company,

    Plaintiff,
v.

PAHRUMP LIFE, MAREN SCACCIA and MICHAEL SCACCIA

    Defendants.

CASE NO.: 2: 10-cv-01575-JCM -PAL

***AMICUS CURIAE* BRIEF OF PROFESSOR JASON SCHULTZ**

## *AMICUS CURIAE* BRIEF

### I. INTRODUCTION

*Amicus Curiae* Professor Jason Schultz ("*Amicus*") is an Assistant Clinical Professor of Law and the co-director of the Samuelson Law, Technology & Public Policy Clinic at the University of California's Boalt Hall School of Law.[1] *Amicus* submits this brief concerning the Court's Order To Show Cause ("OSC") why this action should not be dismissed for lack of standing, to assist the Court in applying the standard for standing for copyright claims in light of 17 U.S.C. § 501(b) and *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F. 3d 881 (9th Cir. 2005).

As a preliminary matter, *Amicus* joins the brief filed by Amicus Democratic Underground, which explains in great detail why neither the Strategic Alliance Agreement ("SAA") nor the Amendment to the SAA "vest Righthaven with anything beyond a bare right to sue," and thus are impermissible transfers under *Silvers*. This brief will endeavor not to repeat arguments made therein but rather offer a broader perspective of the importance of scrutinizing pretextual attempts at copyright assignments in light of *Silvers* and the purposes of the Copyright Act. *Amicus* takes no position on the argument offered by Defendant Michael Scaccia that the original article was not owned by Stephens Media under the work made for hire doctrine.

### II. ARGUMENT

One of the central constitutional and statutory purposes of copyright law is to reward authors for their creative endeavors. This is primarily accomplished via the exclusive rights granted by Section 106 of the Copyright Act and through the enforcement provisions of Section 501. However, the right to sue for copyright infringement is not an abstract independent right. As the Ninth Circuit has explained, "Congress' grant of the right to sue was carefully circumscribed." *Silvers*, 402 F.3d at 885. This circumscription comes in two forms: (1) the requirement of copyright ownership; and (2) the requirement that actionable infringement must

---

[1] Professor Schultz submits this brief on his own behalf, not on behalf of the Samuelson Law Clinic or the Boalt Hall School of Law. His counsel represents defendants in several other actions pending in this court that have been filed by Righthaven. *See e.g.* Case Nos. 10-cv-01343, 10-cv-01356.

take place during the duration of ownership. As to the first, Congress inextricably linked the right to sue to ownership of one or more exclusively held rights so that "only owners of an exclusive right in the copyright could bring suit." *See id.* at 886. This is further reinforced by the plain language of Section 501(b) of the Copyright Act which limits the right to sue to "[t]he legal or beneficial owner of an exclusive right under a copyright...." 17 U.S.C. § 501(b).  The *Silvers* court applied this language, and found that one could not assign a bare right to sue.

*Silvers* also endorsed the holding in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971 (2d Cir. 1991), in which the Second Circuit allowed an entity to purchase both the copyright and accrued claims.  The Ninth Circuit allowed a narrow exception to the durational limitations of Section 501(b) (generally granting exclusive standing to sue to a plaintiff for infringement of a right "while he or she is the owner of it"), reasoning that the purposes of the Copyright Act would be served by allowing transfers of accrued claims when needed to ensure the integrity of the assigned right. *Silvers*, 402 F.3d at 890, fn.1.

Righthaven's attempt to circumvent these circumscriptions and expand upon the Ninth Circuit's limited exception to the durational requirement in *Silvers* does not serve the purposes of the Copyright Act.  Righthaven instead seeks to serve the purposes of its litigation-based business model by asking this Court to sever the link between true ownership and standing through endorsement of its pretextual attempt at assignment. This Court should reject this effort and continue to limit copyright infringement standing to situations that support copyright ownership and creativity, not aggregate litigation efforts by parties that have no connection to the creative or publishing process.

  A. **The right to sue for infringement arises from the purposes of the Copyright Act, which include incentives to create, not litigate.**

The careful limitations on who may sue for copyright infringement are meant to serve copyright's broader purpose. While Congress endorsed the divisibility of copyright rights in the 1976 Act, it did not remove link between ownership and enforcement. Congress recognized that if the right to sue could be severed from copyright ownership, the link between enforcement and creativity would be severed, thus negating the benefits copyright is meant to ensure.

1	In *Silvers*, the Ninth Circuit reinforced this notion in both its majority and one of its

2	dissents. In the majority opinion, the *en banc* panel held that, in most circumstances, standing to

3	sue only accrued to those owning a copyright at the time of an alleged infringement.

4	However, it did allow a limited exception, following the Second Circuit in *ABKCO*.

5	Copyright holders were permitted to transfer accrued causes of action for past infringements

6	when made in conjunction with the transfer of the copyright itself, under the theory that "one is

7	acquiring a copyright whose value has been impaired," and therefore one should be able to repair

8	that impairment. *Silvers*, 402 F.3d at 890, fn. 1. In other words, the Ninth Circuit recognized the

9	general rule that standing must be contemporaneous with both copyright ownership *and*

10	allegedly infringing activity, and only approved a narrow exception when the integrity of a

11	copyright was implicated.

12	Even Judge Berzon's dissent reinforces this notion. There, she wrote that she "would

13	hold that Silvers, given her status as the original creator of the contested 'work-for-hire,' may

14	pursue the accrued claims assigned by Frank & Bob Films, while a complete stranger to the

15	creative process could not." As Judge Berzon saw it, Ms. Silvers "maintained an interest in how

16	her work was used. More importantly, Silvers, as the creator, is the person for whom the

17	copyright system is designed to provide incentives for more creations." So even here, despite

18	her disagreement with the majority, Judge Berzon's more expansive rule would still have

19	precluded a "complete stranger to the creative process" from pursuing copyright claims.

20	Here, it is clear that Righthaven is such a stranger. It has no connection to either the

21	creative processes involved in the making of the article at issue or its commercial exploitation.

22	As Congress recognized, the copyright owner is in the most appropriate position to make the

23	decision about whom to sue, while a complete stranger is not. This dichotomy of interests has

24	played out in the Righthaven litigation campaign. For example, Righthaven has sued at least two

25	sources for *Las Vegas Review-Journal* articles, prompting Stephens Media's general counsel to

26	candidly admit "I agree that we shouldn't sue sources." Joe Mullin, *Is This the Birth of the*

27

28

*Copyright Troll?,* Corporate Counsel (Aug. 16, 2010).[2]  In briefing in other Righthaven litigation, Stephens Media has pointed to more incidents when Righthaven's suits went against its interests, including a suit against the Senate candidate that the newspaper itself had endorsed. *See* Stephens Media Reply in Support of Motion to Dismiss in *Righthaven v. Democratic Underground*, (Case No. 2:10-cv-01356-RLH –GWF), Dkt. 56 at 12. Despite Stephens' purported ability to control whether or not to file litigation (SAA § 3.3), the differential incentives between the owner and the litigation firm here illustrate exactly why Congress limited the power to initiate a lawsuit to the true copyright owner.

Thus, absent evidence of true copyright ownership, allowing Righthaven standing to sue would do nothing to further the purposes of the Copyright Act in providing incentives for more creation. It certainly does not further the purposes that the Ninth Circuit endeavored to support in *Silvers*.

### B. Neither the SAA nor its Amendment provide anything other than pretextual indicia of copyright ownership.

Righthaven's lawsuit must be dismissed because the SAA and its Amendment are nothing more than pretextual attempts to manufacture standing. For example, in response to flaws in original SAA, Righthaven and Stephens Media appear to have attempted to amend the Agreement to provide further arguments that Righthaven is either the legal or beneficial owner of the copyright at issue. However, these arguments are largely pretextual and do nothing to comport with copyright's purpose. True legal owners of copyrights are just that – owners. They do not have conditional ownership that can be "terminated" at will by another party. *Compare* SAA § 8. Nor do they orchestrate ownership transactions around the viability of suit or litigation strategy. *Compare* SAA § 3.3.  Instead, they are primarily concerned with the right to remuneration for exploitation of the work in commercial settings. *Compare* SAA § 7.2.

Here, Righthaven appears to have realized this fundamental flaw in the SAA, and now attempts to remedy it by arguing that the "Amendment also contains provisions requiring

---

[2] *Available at* http://www.law.com/jsp/cc/PubArticleCC.jsp?id=1202466627090.

1  Stephens Media to pay Righthaven royalties for its use of the Work, making Righthaven the
2  beneficial owner in the Work." Response to OSC at 9. But even assuming *arguendo* that this
3  Amendment is valid, it does not resolve what is lacking in Righthaven's position. If anything, it
4  only further reinforces it. The universal $1 flat annual payment-per-work outlined in the
5  amendment has no relationship whatsoever to the value of the copyright at issue, its commercial
6  exploitation, or the creative process that copyright law seeks to encourage. It certainly does not
7  approach the form of a true royalty payment (which is often based on the market value of the
8  work or a percentage of profits from its exploitation). In fact, when one considers that this
9  scheme allows Righthaven to pay $1 for alleged ownership of each work and then sue for up to
10 $150,000 in damages for its infringement, one can hardly believe that this "single dollar"
11 consideration is anything other than an instrumental sham to manufacture standing.

12      This is not to say that there can be no standing for beneficial owners of copyrighted
13 works. However, the purpose of allowing suits by beneficial owners is to protect "an author who
14 had parted with legal title to the copyright in exchange for *percentage royalties* based on sales or
15 license fees." H.R.Rep. No. 1476, 94th Cong., 2d Sess. 159, reprinted in 1976 U.S. Code Cong.
16 & Ad. News 5659, 5775 (emphasis added). The use of "percentage" is key, because it illustrates
17 the unity of financial interests in maximizing sales and license fees.

18      As courts have reasoned, when the reward provided to creators is dependant on the
19 efforts of an assignee, an "equitable trust relationship is established between the two parties."
20 *Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir.1984); *see also Yount v. Acuff Rose-Opryland,* 103
21 F. 3d 830, 834 (9th Cir. 1996) ("because an infringer may well injure those who have rights to
22 *royalties*, standing has been conferred upon them.") (emphasis added). David Nimmer, NIMMER
23 ON COPYRIGHT, § 12.02[C] (explaining that beneficial ownership arises from the right to receive
24 royalties based upon the exploitation of the copyright).

25      The Amendment's nominal payment of a dollar certainly does not create an "equitable
26 trust relationship" between Stephens Media and Righthaven. Under the revised SAA, Righthaven
27 gets its dollar no matter what, and has no real interest in whether or not Stephens Media
28 successfully exploits the work. Moreover, endorsing this attempt to manufacture beneficial

ownership thorough token payments does nothing to promote the creation and dissemination of copyrighted works. Instead, it only promotes pretextual attempts to feign royalties so that Stephens Media can continue to profit-share in Righthaven's champertous business model without having to incur the costs and responsibilities of a proper copyright plaintiff. Thus, the terms of the SAA and its purported Amendment should not confer standing to Righthaven, as they not only run contrary to holding in *Silvers*, but also the very purposes its limited exception was meant to promote.

### C. To the extent *Silvers* allows for assignments of the right to sue in conjunction with transfers in copyright ownership, only the right to sue for past infringements is transferable.

Finally, Righthaven misreads *Silvers* for the proposition that Stephens Media can somehow assign it the right to sue for future acts of infringement. Response to OSC at 6.[3] This is incorrect. In *Silvers*, the Ninth Circuit found an exception to Section 501(b)'s durational limitation was permissible. However, only the right to sue for past infringement could be assigned in conjunction with transfer of copyright ownership and only for a very specific reason: in order to make sure that "one is acquiring a copyright whose value has [not] been impaired." *Silvers,* 402 F.3d at 890, fn. 1. Once copyright has transferred ownership, standing to sue for any new or ongoing infringement accrues to the owner at the time of that infringement. Neither *Silvers* nor the plain language of the Copyright Act permit a prospective contractual transfer of future claims by the previous owner.

The fact that Righthaven sought such an assignment only further reinforces that the SAA was not a true transfer of copyright ownership and amounts to all but a *de facto* admission that it lacks standing in this case. *See id.* at 890 ("the Copyright Act does not permit copyright holders

---

[3] Righthaven's brief is a bit confused on this subject. On the one hand, Righthaven argues, incorrectly, that the Assignment conferred "the right to sue for any past, present or future infringements." Response to OSC at 6. On the other hand, Righthaven focuses on "accrued claims" when discussing the rule in *Silvers*. *See, e.g., id.* at 8. In any event, the issue before this Court includes future claims. *See* Complaint at ¶¶ 38-39 (suing for alleged ongoing harm to copyrights occurring after the purported assignment and license-back.).

1  to choose third parties to bring suits on their behalf,") (quoting *ABKCO*, 944 F.2d at 980). In
2  fact, it appears that these "future infringement" clauses were designed to enable Righthaven to
3  retain control of its infringement suits even if Stephens terminated the SAA. If Righthaven were
4  a true copyright owner, it would not have any such concerns, as copyright ownership is not
5  subject to termination by contract. Just as the new owner of a house does not need the previous
6  owner to assign the right to sue against future trespassers, no copyright owner needs a previous
7  owner to assign it future causes of action for infringement or the right to seek injunctive relief.
8  Here, Righthaven has expressly sought these permissions from Stephens Media, thereby
9  admitting it lacks the indicia of true copyright ownership and undermining its case for standing
10 in this litigation.

**III.    CONCLUSION**

A proper analysis of Section 501(b) and *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) shows that Righthaven has no claim under federal copyright law, and its case should be dismissed with prejudice.

Dated: June 3, 2010                                         Respectfully submitted,

                                                            CHAD A. BOWERS, LTD.

                                                            By: /s/ Chad Bowers
                                                            Chad A. Bowers, Esq.
                                                            Law Offices of Chad A. Bowers
                                                            NV State Bar Number 7283
                                                            3202 W. Charleston Blvd.
                                                            Las Vegas, Nevada 89102

                                                            *Attorney for* Amicus Curiae *Professor Jason Schultz*