SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel:    (702) 304-0432
Fax:   (702) 922-3851

DALE M. CENDALI, ESQ. (admitted *pro hac vice*)
dale.cendali@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel:    (212) 446-4800
Fax:   (212) 446-4900

*Attorneys for Plaintiff Righthaven LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>                Plaintiff,<br><br>vs.<br><br>PAHRUMP LIFE, an entity of unknown origin and nature; MAREN SCACCIA, an individual; and MICHAEL SCACCIA, an individual,<br><br>                Defendants. | Case No.:  2:10-cv-01575-JCM-PAL<br><br>**PLAINTIFF RIGHTHAVEN LLC'S OMNIBUS RESPONSE TO THE AMICUS CURIAE BRIEFS OF DEMOCRATIC UNDERGROUND AND PROFESSOR JASON SCHULTZ** |

Pursuant to the Court's June 17, 2011 Order (Doc. # 41), Righthaven LLC ("Righthaven") hereby responds to the Amicus Curiae briefs of Democratic Underground (Doc. # 32) and Professor Jason Schultz (Doc. # 36) (collectively, the "*amici*"), which relate to whether Righthaven has standing. The hearing for the Court's April 28, 2011 Order to Show Cause why Righthaven's Complaint should not be dismissed for lack of standing (Doc. # 20) is currently set for June 30, 2011, at 10:30 a.m. (Doc. # 38.)

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................... 1

II. ARGUMENT .............................................................................................................. 2

    A. Righthaven Is the Sole Copyright Owner and Sole Party with Standing to Sue. ................................................................................................................. 2

    B. Neither the Purpose of the Transaction nor Stephens Media's Retention of Certain Rights Invalidates the Assignment. ............................................. 5

    C. Righthaven's Status as Assignee and its Standing to Sue for Infringement Are Aligned with Longstanding Principles of Copyright Law. ................................................................................................................. 7

    D. Dismissing the Case Now Would Needlessly Exalt Form over Substance. ........................................................................................................ 8

III. CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Althin CD Med., Inc., v. W. Suburban Kidney Ctr., S.C.*,
  874 F. Supp. 837 (N.D. Ill. 1994) ............................................................................... 4

*Bushnell, Inc. v. Brunton Co.*,
  659 F. Supp. 2d 1150 (D. Kan. 2009) ........................................................................ 9

*Davis v. Blige*,
  505 F.3d 90 (2nd Cir. 2007) ....................................................................................... 6

*Gray v. Preferred Bank*,
  2010 WL 3895188 (S.D. Cal. Sept. 30, 2010) ........................................................... 9

*Haddad Bros. Inc. v. Little Things Mean A Lot, Inc.*,
  2000 WL 1099866 (S.D.N.Y. Aug. 4, 2000) ............................................................. 9

*Harris v. Amgen, Inc.*,
  573 F.3d 728 (9th Cir. 2009) .................................................................................... 10

*HT Litig. Trust v. Jess Rae Booth*,
  2008 WL 5227300 (9th Cir. Dec. 16, 2008) ............................................................ 10

*In re Movie Gallery, Inc.*,
  2010 WL 6618894 (Bkrtcy. E.D. Va. Feb. 25, 2010) ................................................ 3

*In re Peregrine Entm't, Ltd.*,
  116 B.R. 194 (C.D. Cal. 1990) ................................................................................... 3

*Int'l Armament Corp. v. Matra Manurhin Int'l., Inc.*,
  630 F. Supp. 741 (E.D. Va. 1986) ............................................................................. 5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005) .................................................................................................... 1

*Nafal v. Carter*,
  540 F. Supp. 2d 1128 (C.D. Cal. 2007) ................................................................. 4, 7

*Northstar Fin. Advisors, Inc. v. Schwab Inv.*,
  2011 WL 1312044 (N.D. Cal. Mar. 2, 2011) ............................................................. 9

*Premier Dental Prods. Co. v. Darby Dental Supply Co.*,
  794 F.2d 850 (3d Cir. 1986) ....................................................................................... 5

*Rawlings v. Nat'l Molasses Co.*,
  394 F.2d 645 (9th Cir. 1968) ...................................................................................... 5

*SGS-Thomson Microelectronics, Inc. v. Int'l Rectifier Corp.*,
  1994 WL 374529 (Fed. Cir. Jul. 14, 1994) ................................................................ 6

*Silvers v. Sony Pictures Entm't, Inc.*,
  402 F.3d 881 (9th Cir. 2005) ........................................................................... 3, 4, 6, 7

..

*Univ. of Pittsburgh v. Varian Med. Sys., Inc.*,
  569 F.3d 1328 (Fed. Cir. 2009) .................................................................................... 10

*Valmet Paper Mach., Inc. v. Beloit Corp.*,
  868 F. Supp. 1085 (W.D. Wis. 1994) ........................................................................... 9

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
  944 F.2d 870 (Fed. Cir. 1991) ...................................................................................... 7

*Vittoria N. Am., L.L.C. v. Euro-Asia Imports Inc.*,
  278 F.3d 1076 (10th Cir. 2001) .................................................................................... 5

**STATUTES**

17 U.S.C. § 101 ................................................................................................................ 2

17 U.S.C. § 501(b) ........................................................................................................... 2

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. art. I, § 8 ..................................................................................................... 1

...

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Over 200 years ago, the framers of the U.S. Constitution recognized that written works and other forms of artistic expression were deserving of legal protection. U.S. CONST. art. I, § 8. These fundamental principles regarding protecting and fostering artistic creation did not disappear simply because artistic works have transitioned from tangible to digital. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928-929 (2005) (citing the concern that "digital distribution of copyrighted material threatens copyright holders as never before"). The digital age, however, has allowed infringement to occur on a massive scale. As pointed out by *amici*, Righthaven was created precisely to stem this tide of unabashed copyright infringement on the Internet brought about by the technological ease of copying. While *amici* go to great lengths to portray Righthaven's business purpose in a negative light, there is nothing wrong with a party focused on protecting intellectual property—except, of course, from the perspective of an infringer.

But Righthaven's business purpose, whether laudable or not, has nothing to do with the issue the Court must decide—whether Righthaven has standing to maintain this lawsuit. Righthaven undoubtedly owns the copyright under the recently executed Amendment.[1] Through that agreement, Righthaven obtained all right, title and interest in the infringed work, and licensed back only a non-exclusive right to exploit the work. No authority cited by *amici* suggests that such a structure is insufficient to convey standing to pursue past—or future—claims of infringement simply because the assignee was created to enforce the intellectual property rights it acquired. Indeed, if that were the law, countless non-practicing entities would be deprived of standing to bring patent infringement

---

[1] As set forth in its previous memorandum, Righthaven believes that the original Assignment and SAA between Righthaven and Stephens Media were sufficient to give Righthaven standing to sue. But since this Court issued its Order to Show Cause, another court in this District has held that these agreements failed to effect a copyright assignment to Righthaven. *Righthaven LLC v. Democratic Underground, LLC*, Doc. # 116, Case. No. 2:10-cv-01356-RLH-GWF (D. Nev.) (Hunt, J.). While Righthaven respectfully disagrees with Judge Hunt's decision, it will not burden this Court with those arguments and will instead address its arguments to the Amendment. Another court in this District has also recently held that Righthaven lacks standing, even under the Amendment. *Righthaven LLC v. Hoehn*, Doc. # 28, Case. No. 2:11-CV-00050-PMP-RJJ (D. Nev.) (Pro, J.). Righthaven disagrees with that decision and intends to appeal. Nonetheless, Righthaven and Stephens Media are considering further amending their agreements in order to prevent other courts from erroneously concluding that Righthaven lacks standing. If and when the parties do so, they will promptly provide the Court with all amended agreements.

claims.

Nor do the contingent rights retained by Stephens Media have any impact on Righthaven's ability to bring this suit. It is well-established that limitations or restrictions do not invalidate an otherwise valid assignment. Indeed, Courts of Appeals throughout the country have rejected the very argument that *amici* make here, *i.e.*, that such limitations suggest a sham.

Finally, *amici*'s arguments that the Amendment should not be considered because standing must exist at the time the lawsuit is filed threaten to elevate form over substance at the expense of judicial resources. As explained in detail below, in situations analogous to this one, numerous courts have allowed the plaintiff to continue with the lawsuit after an original defect in standing has been remedied. Here, as in those cases, allowing Righthaven to pursue its claim without having to re-file its complaint promotes efficiency and judicial economy; the result urged by *amici* does not.[2]

Because Righthaven now unquestionably owns the copyright at issue, and because any original defect in standing has been cured by the Amendment, Righthaven respectfully requests that the Court not dismiss its complaint.[3]

## II.   ARGUMENT

### A.   Righthaven Is the Sole Copyright Owner and Sole Party with Standing to Sue.

It is black-letter law that a copyright owner has standing to bring a claim for infringement. 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled … to institute an action for any infringement of that particular right …."). A copyright owner need not have been the author or original owner; indeed, copyright law recognizes the transferability of the rights protected by copyright. 17 U.S.C. § 101 ("A 'transfer of copyright ownership' is an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in

---

[2] For example, as a result of Judge Hunt's decision to dismiss Righthaven's complaint despite the fact that it presently has standing, Righthaven must now either intervene in the still-pending action or re-file its complaint in an entirely new action, needlessly wasting the time and resources of both the parties and the court.

[3] Righthaven will also move this Court for leave to file an amended complaint in order to remedy any procedural standing defect arising under the original complaint. Righthaven intends to file its motion for leave to amend in the next few days.

time or place of effect, but not including a nonexclusive license.")  It is also black-letter law that a non-exclusive licensee lacks standing to sue for infringement.  *See id.*; *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 898 n. 7 (9th Cir. 2005).

Pursuant to the Amendment, there can be no question that Righthaven obtained "all right, title and interest to said Work such that Righthaven shall be recognized as the copyright owner of the Work, shall have the right to register said Work with the United States Copyright Office, and shall have the right to pursue past, present and future infringements of the copyright in and to the Work." (Doc. # 26, Ex. 3.)  As the owner of the copyright,[4] Righthaven has the ability to exploit its exclusive rights as it sees fit.  Righthaven may reproduce the copyrighted work, create derivative works, assign the copyright, grant licenses, receive royalty payments and sue for copyright infringement.  In short, Righthaven may utilize the entire bundle of exclusive rights that accompany copyright ownership.  Nothing in the Assignment, Amendment or Operating Agreement (Doc. # 32-2) prevents Righthaven from doing so.  Righthaven granted a non-exclusive license back to Stephens Media to use the copyrighted work (Doc. #26, Ex. 3 at § 7.2), but that license does not divest Righthaven of its rights.  *See Silvers*, 402 F.3d at 898 n. 7.

Nonetheless, *amici* argue that this valid assignment somehow failed to convey the rights necessary to bring suit for past infringement.  The cases on which they rely, however, are factually distinguishable in all key respects.  First, in *Silvers*, the copyright owner executed an "Assignment of Claims and Causes of Action" in favor of the plaintiff, retaining ownership of the underlying copyright and assigning to the plaintiff only "all right, title and interest in and to any ***claims and causes of action***."  402 F.3d at 883 (emphasis added).  The copyright owner in *Silvers* never purported to assign the underlying work itself, or any rights protected by copyright.  Thus in *Silvers*, the ***only*** right, title and interest assigned was the right, title and interest in litigation.  That is not the case here.

---

[4] To credit *amici's* argument, the Court must find that ownership of the infringed work was not actually transferred.  No doubt, a creditor of Righthaven would seek to lien its copyrights in the event of a default, and no doubt, if Righthaven were ever to file bankruptcy, a bankruptcy court would recognize those copyrights as assets of the debtor.  *See, e.g., In re Movie Gallery, Inc.*, 2010 WL 6618894, at *7 (Bkrtcy. E.D. Va. Feb. 25, 2010); *In re Peregrine Entm't, Ltd.*, 116 B.R. 194, 203 (C.D. Cal. 1990).

The second case relied on by *amici*, *Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007), is similarly inapposite.  As a preliminary matter, *Nafal* was decided under the more narrow 1909 Copyright Act (*id.* at 1138), which, in contrast to the 1976 Copyright Act, did not allow the bundle of rights protected by copyright to be separable.  *Silvers*, 402 F.3d 881 at 896.  Moreover, the plaintiff never alleged that he owned the copyright at issue.  Instead he was assigned a purported one-half interest to an exclusive licensee's rights but lacked any ability to exercise any rights under the copyright.  540 F. Supp. 2d at 1143.  Moreover, in *Nafal*, the plaintiff was not a party to the original exclusive license agreement with the copyright owner (*id.* at 1141) and the plaintiff was not actually a co-exclusive licensee because he lacked any of the rights held by the other co-licensee (*id.* at 1142).  Here, by contrast, the original copyright owner, Stephens Media, assigned its entire copyright directly to Righthaven, and Righthaven granted back to Stephens Media only the right to exploit the copyright on a non-exclusive basis.  Under these circumstances, the only party to the transaction with any exclusive rights and the only party with standing to sue for copyright infringement is Righthaven.

Finally, Democratic Underground also cites *Althin CD Med., Inc., v. W. Suburban Kidney Ctr., S.C.*, another case where standing was denied to a plaintiff that claimed to have standing not as the copyright assignee, but as an exclusive licensee under a chain of prior agreements.  874 F. Supp. 837, 840 (N.D. Ill. 1994).  Again, the facts in that case are markedly different from those at issue here.  There, the owner-licensor retained the sole right to determine whether or not to bring an infringement action and gave virtually no right to transfer or assign the license agreement.  *Id.* at 843.  Thus, the licensee, who then granted a sublicense to the plaintiff, could not have granted exclusive rights.  *Id.*

*Amici's* argument, while devoid of authority, is undeniably clever.  As *amici* well know, the assignment and non-exclusive license back structure at issue here effectively deprives the assignor, Stephens Media, of standing to bring a claim for infringement.  If the Court were to endorse *amici's* argument, it would effectively find that no party has standing to bring suit against the infringer here.  While certain *amici*—such as accused infringer Democratic Underground—would no doubt welcome such a ruling, the result would not only be unprecedented, it would be directly at odds with

the Constitutionally-based system of granting copyright owners exclusive rights to their works in order to incentivize creativity.

### B. Neither the Purpose of the Transaction nor Stephens Media's Retention of Certain Rights Invalidates the Assignment.

Democratic Underground argues at length that Righthaven's assignment is merely a "sham" because of Righthaven's business purpose and the existence of two provisions in the Amendment: a provision giving Stephens Media 30 days written notice prior to exploiting the Infringed Work (Doc. #26, Ex. 3 at § 7.2) and a separate provision giving Stephens Media the option to re-purchase the copyright (Doc. # 32-1 at 7.). Democratic Underground is wrong.

Parties routinely enter into complex agreements transferring intellectual property rights. It is well-established that these transfers are not invalid simply because the original owner retains some rights. *See, e.g., Vittoria N. Am., L.L.C. v. Euro-Asia Imports Inc.*, 278 F.3d 1076, 1082 (10th Cir. 2001) (holding that a "thirty-day reassignment clause does not establish that [the trademark assignment] is a sham") (citing *Premier Dental Prods. Co. v. Darby Dental Supply Co.,* 794 F.2d 850, 855-56 (3d Cir. 1986) ("[L]imitations in an otherwise valid assignment do not invalidate it")); *Int'l Armament Corp. v. Matra Manurhin Int'l., Inc.*, 630 F. Supp. 741, 746 (E.D. Va. 1986) ("Plaintiff's ownership of the marks is subject to conditions on its license agreement with Carl Walther, which make that distributorship revocable by Walther for violation of 'essential' clauses. Such limitations on an assignment do not invalidate or make it a sham, however.")

Moreover, the Ninth Circuit, more than 40 years ago, rejected the argument that an assignment made solely to facilitate a lawsuit is somehow improper. In *Rawlings v. Nat'l Molasses Co.*, 394 F.2d 645, 648 (9th Cir. 1968), the Ninth Circuit held:

> Defendants make the further point that the arrangement between plaintiff and [assignor] was accomplished for the sole purpose of permitting plaintiff to bring this action without joining [assignor] as a party plaintiff or defendant. We assume that to be true. Defendants urge that the transaction was a sham. The documents were in fact executed and nothing in the record indicates that as between [assignor] and plaintiff they are either void or voidable. If not, then the purpose underlying their execution is of no concern to the defendants.

Thus, the Ninth Circuit long ago rejected the argument that the purpose behind a business transaction or a business itself has any bearing on the issue of standing.

Finally, the very case on which *amici* most heavily rely advises the Court to reject *amici's* argument. As the Ninth Circuit held in *Silvers,* courts "should interpret the Copyright Act consistently with the requirement of the Patent Act" because of the fundamental similarity between the two types of intellectual property rights. 402 F.3d at 888; *see also Davis v. Blige*, 505 F.3d 90, 104 (2nd Cir. 2007) ("Although patent and copyright law function somewhat differently, courts considering one have historically looked to the other for guidance where precedent is lacking . . . . Licenses in patent and copyright function similarly . . . .").

*Amici* pay no heed to that aspect of *Silvers* and ignore that courts in numerous patent cases have rejected the argument that an otherwise valid transfer of intellectual property rights made to confer standing is somehow defective, or a sham, because the motivating business purpose is litigation. For example, in a highly analogous case in the patent context, the Federal Circuit held that patent assignments made for the sole purpose of bringing suit are nonetheless valid. *SGS-Thomson Microelectronics, Inc. v. Int'l Rectifier Corp.*, 1994 WL 374529 (Fed. Cir. Jul. 14, 1994). There, the defendant urged the court to ignore the patent assignment between related corporate entities because, like here, the agreement was entered for the purpose of conferring standing to sue for infringement. The defendant also argued "sham" because the assignment required the plaintiff to assign the patents back at the conclusion of the litigation, a much greater restriction than that present in this case. *Id.* at *6. The court rejected defendant's arguments, ruling that "[t]his court and other courts have held that an assignment that explicitly provides for possible transfer back to the assignor is nevertheless effective to give the assignee standing." *Id.* The court further held that:

> the district court erred in granting summary judgment on the ground that the assignments of the … patents were shams because the sole purpose of the assignment was to facilitate litigation. In so ruling, the trial court ignored the express language in the assignments and in effect created a new requirement, not found in any case law, that a patent assignment must have an "independent business purpose."

*Id.* Thus, in the very context that *Silvers* advises courts to consider, the Federal Circuit explicitly ruled that the motive or purpose of an assignment is irrelevant to the assignee's standing to enforce the exclusive rights conferred and that the assignor's ability to re-acquire its rights does not deprive the assignee of its right to bring suit. *Id.* at *6-7. If the Court were to follow this reasoning, as *Silvers* holds it should, *amici's* arguments must be rejected.

In yet another case decided by the Federal Circuit, the court held that a grant of patent rights was sufficient to confer standing notwithstanding the fact that the grantor retained several rights relating to the patent. *See Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991). In *Vaupel*, the grantor retained "1) a veto right on sublicensing by Vaupel; 2) the right to obtain patents on the invention in other countries; 3) a reversionary right to the patent in the event of bankruptcy or termination of production by Vaupel; and 4) a right to receive infringement damages." *Id.* at 875. Despite the grantor's retention of these rights, the court held that "none of these reserved rights was so substantial as to reduce the transfer to a mere license or indicate an intent not to transfer all substantial rights." *Id.* Here, as in *Vaupel*, the rights retained by Stephens Media do not negate the exclusive rights conferred to Righthaven; thus, Righthaven is the owner of the copyright and has standing to sue for infringement.

  **C.**  **Righthaven's Status as Assignee and its Standing to Sue for Infringement Are Aligned with Longstanding Principles of Copyright Law.**

It is well-established that in copyright law, as in patent and trademark law, parties other than the original owner-creator may acquire the intellectual property rights and sue for infringement. *See, e.g., Nafal*, 540 F. Supp. 2d at 1132 (rights to copyrighted work, which was created in 1960, had passed from original owner to heirs by death). Nevertheless, *amicus* Jason Schultz claims, without citation to ***any authority***, that "Congress recognized that if the right to sue could be severed from copyright ownership, the link between enforcement and creativity would be severed, thus negating the benefits copyright is meant to ensure." In other words, Mr. Schultz's argument presupposes that the right to sue inalienably lies with the creator of the work. That presupposition is demonstrably wrong: if the ability to enforce a copyright were limited only to the creator of the work, copyrights would not be assignable at all, let alone assignable as separate pieces of a bundle of exclusive rights, as contemplated by the 1976 Act. *See Silvers*, 402 F.3d at 886. By revising the Copyright Act to allow for the bundle of exclusive rights to be held by separate parties, Congress recognized the right to separate copyright ownership and its inherent right of enforcement from the creative aspect of the work. Indeed, it is commonplace in the entertainment industry for the original creator of the work to be far-removed from the eventual holder of the copyright. To say that only the original creator has

the ability to sue for enforcement of copyrights would dramatically change the way corporate intellectual property transactions occur on a daily basis.

Second, and contrary to Mr. Schultz's contention that Righthaven has "no connection to the creative or publishing process," Righthaven was created in order to assist media organizations in pursuing the infringement of copyrighted works. Without the cooperation of these organizations, Righthaven would have no assigned copyrights to enforce. The originators of news stories invest considerable sums paying reporters to investigate and write the news stories, in addition to paying editors, copywriters and the others necessary to publishing a newspaper, only to have their propriety content illegally copied and posted elsewhere. As a result of this copyright infringement, these news organizations are losing revenue, advertisers and readers. Yet, Mr. Schultz does not explain— because he cannot—how this infringement or its consequences foster creation or further the purposes of the Copyright Act, as opposed to free-riding copiers. Nor does he address the serious adverse effects of online copyright infringement to media organizations whose existence depends upon advertisements and paid subscriptions to their websites. The inconvenient truth behind *amici's* posturing is that if Internet infringement of content continues to go unchecked, there will be less financial incentive to create content, resulting in less content available to the public. While Mr. Schultz, in his ivory tower of Berkeley, sees fit to cast judgment on Righthaven's business model, the fact remains that, in the real world, it is difficult for people to stay in business without a return on their investment. There are legitimate, and legal, ways of acquiring content that provide a fair return to the copyright owner. Unfortunately, we have not yet reached a time where those methods are utilized for most of the content posted online.

As the assignee of a valid copyright, Righthaven has the power to exclude others from unauthorized copying—a power wholly consistent with the purposes of the Copyright Act: to foster creativity.

### D.     Dismissing the Case Now Would Needlessly Exalt Form over Substance.

Finally, *amici's* position that the Court should disregard Righthaven's current standing as copyright owner and dismiss the case if it concludes that standing did not exist under the original agreements needlessly expends the parties' and the court's resources. Under similar circumstances,

another district court in this Circuit recognized that requiring a dismissal of the original complaint after a standing defect was cured "elevates form over substance." *Northstar Fin. Advisors, Inc. v. Schwab Inv.*, 2011 WL 1312044, at *3-4 (N.D. Cal. Mar. 2, 2011). In *Northstar*, the Court effectively allowed the plaintiff to file an amended complaint based on a post-filing assignment in order to cure the original defect in standing. *Id.* (noting that the cases defendants relied upon simply recited the rule that standing is considered at the outset of the litigation but failed to address how a court should treat a post-filing assignment of claim).

No doubt there are courts, including some in this District, that will simply dismiss a complaint if standing did not exist at the inception of the lawsuit. Such cases were cited by *amici*. Nevertheless, there is a clear split of authority on this issue, and many courts have found good reason to come to the opposite conclusion and have allowed a plaintiff to proceed with the lawsuit once a standing defect had been cured. *See, e.g., Gray v. Preferred Bank*, 2010 WL 3895188, at *3 (S.D. Cal. Sept. 30, 2010) ("Because the defect in standing has been cured, the Court declines to dismiss the [Second Amended Complaint] on this basis and proceeds to discuss Plaintiffs' claims for relief."); *Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1160-1161 (D. Kan. 2009) ("The question remains whether the proposed amended complaint which alleges standing as of now would be sufficient. The Court agrees with *Randolph-Rand* that forcing plaintiff to file a new suit would be a waste of resources."); *Haddad Bros. Inc. v. Little Things Mean A Lot, Inc.*, 2000 WL 1099866, at *9 (S.D.N.Y. Aug. 4, 2000) ("Initial defects in standing are remediable through an amended complaint. Where an amendment cures a standing defect, nothing in the nature of that amendment would prohibit it from relating back to the initial complaint."); *Valmet Paper Mach., Inc. v. Beloit Corp.*, 868 F. Supp. 1085, 1089-1090 (W.D. Wis. 1994) ("[A] decision that the written assignment did not cure the standing defect would simply lead plaintiffs to amend the complaint to add the assignor and then dismiss it as an unnecessary party, or simply to reinstate the lawsuit. Either alternative would result in needless delay and needless expenditure of the parties' and the court's resources. Thus, holding that the written assignment executed only thirteen days after suit was commenced did not cure plaintiffs' standing defect would only 'exalt form over substance.'").

Given Righthaven's current standing to sue under the Amendment, dismissal of the lawsuit at

this juncture is unwarranted.[5]  The parties have already been litigating this action for over one year, and the issue of standing under the Amendment should be resolved on the merits now, without further expenditure of judicial resources.

### III.    CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court find that Righthaven has standing to maintain this infringement action.

Dated this 22nd day of June, 2011

                                                SHAWN A. MANGANO, LTD.

                                                <u>By: /s/ Shawn A. Mangano</u>
                                                SHAWN A. MANGANO, ESQ.
                                                Nevada Bar No. 6730
                                                shawn@manganolaw.com
                                                9960 West Cheyenne Avenue, Suite 170
                                                Las Vegas, Nevada 89129-7701
                                                Tel:         (702) 304-0432
                                                Fax:        (702) 922-3851

                                                KIRKLAND & ELLIS LLP
                                                DALE M. CENDALI, ESQ. (admitted *pro hac vice*)
                                                dale.cendali@kirkland.com
                                                601 Lexington Avenue
                                                New York, New York 10022
                                                Tel:         (212) 446-4800
                                                Fax:        (212) 446-4900

                                                *Attorneys for Righthaven LLC*

---

[5] If the Court nonetheless concludes that the lawsuit must be dismissed for lack of standing, such dismissal should be without prejudice. *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009) ("Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment."); *Univ. of Pittsburgh v. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332-1334 (Fed. Cir. 2009) ("A dismissal for lack of standing is jurisdictional and is not an adjudication on the merits . . . . The Third Circuit and this court, as well as other regional circuit courts, have repeatedly emphasized that a dismissal for lack of standing should generally be without prejudice, particularly when the defect is curable"); *HT Litig. Trust v. Jess Rae Booth*, 2008 WL 5227300, at *1 (9th Cir. Dec. 16, 2008) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear, upon *de novo* review, that the complaint could not be saved by amendment.").

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 22nd day of June, 2011, I caused the foregoing document to be served by the Court's CM/ECF system and to be served via U.S. Mail and electronic mail to:

Michael Scaccia:
4191 West Quail Run Road
P.O. Box 9466
Pahrump, Nevada 89060
pahrumplife@yahoo.com

                                                  SHAWN A. MANGANO, LTD.

                                                  By: /s/ Shawn A. Mangano
                                                  SHAWN A. MANGANO, ESQ.
                                                  Nevada Bar No. 6730
                                                  shawn@manganolaw.com
                                                  9960 West Cheyenne Avenue, Suite 170
                                                  Las Vegas, Nevada 89129-7701
                                                  Tel:     (702) 304-0432
                                                  Fax:    (702) 922-3851

                                                  *Attorney for Righthaven LLC*