CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorney for *Amicus Curiae*
PROFESSOR JASON SCHULTZ

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>PAHRUMP LIFE, MAREN SCACCIA and MICHAEL SCACCIA<br><br>　　　　　Defendants. | CASE NO.:  2: 10-cv-01575-JCM -PAL<br><br>**REPLY TO PLAINTIFF RIGHTHAVEN LLC'S OMNIBUS *AMICI* RESPONSE BRIEF** |

# *AMICUS CURIAE* BRIEF

## I. INTRODUCTION

*Amicus Curiae* Professor Jason Schultz ("*Amicus*") is an Assistant Clinical Professor of Law and the co-director of the Samuelson Law, Technology & Public Policy Clinic at the University of California's Boalt Hall School of Law.[1]  *Amicus* submits this brief in reply to the Omnibus Response Brief filed by Plaintiff (Dkt. 44).

In its Brief, Righthaven attempts to distinguish its lack of standing from the plaintiff in *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F. 3d 881 (9th Cir. 2005) in several ways. Amicus will address two of these arguments that were raised in response to his original brief: (1) that if Righthaven lacks standing, Stephens Media will have no recourse for pursuing valid claims of copyright infringement and (2) that the facts and circumstances of today's market for online media somehow grant it an exception to the *Silvers* rule. Both these arguments are unavailing. Notable, Righthaven provides little more than a paragraph addressing the specific language of the Strategic Alliance Agreement ("SAA") and the Amendment to the SAA and fails to explain how they are anything other than pretextual attempts at contract around the *Silvers* prohibition.

## II. ARGUMENT

### A. Stephens Media is the proper plaintiff and real party-in-interest, not Righthaven.

After its preliminaries, Righthaven argues that, should the Court find it lacks standing, then no plaintiff could bring a claim for infringement of the copyright at issue because the alleged assignor, Stephens Media, would lack standing as well. Nothing could be further from the truth. In examining the SAA and its Amendment, it is clear that true ownership of the copyright at issue remains with Stephens, and thus, Stephens is capable of bringing any infringement suit it deems appropriate as long as it is willing to serve as the named plaintiff.

---

[1] Professor Schultz submits this brief on his own behalf, not on behalf of the Samuelson Law Clinic or the Boalt Hall School of Law. His counsel represents defendants in several other actions pending in this court that have been filed by Righthaven. *See e.g.* Case Nos. 10-cv-01343, 10-cv-01356.

1  *Accord Righthaven, LLC v. Democratic Underground, LLC et al*, Case No. 2:10-cv-01356-RLH, 2011 WL 2378186 at *6 (D. Nev. June 14, 2011) ("If Stephens Media wishes to assert claims against Democratic Underground, it may do so separately."). What it cannot do is outsource that role to Righthaven. Amicus will not repeat all of the arguments that have been presented as to why Stephens remains the true owner but will simply emphasize one example – that the SAA gives it the right to "terminate" any assignment whenever it wishes. *See* SAA § 8 (affording Stephens unilateral power to terminate); Amendment § 2 (affording Stephens unilateral power to terminate subject to a perfunctory ten dollar payment). Just as a landlord can evict a tenant, this gives Stephens the right to remove possession of the copyright from Righthaven at will. Thus, Stephens is still the owner of the copyright, and Righthaven is more akin to a renter.[2]

**B. The challenges of today's market for online media do not grant Righthaven an exception from Section 501(b) and the rule in *Silvers*.**

Next, Righthaven misconstrues *Amicus'* argument about the connection between creativity and copyright ownership as part of a plea for the Court to deviate from the *Silvers* rule in order to intervene in the woes of online newspaper markets. First, *Amicus'* original argument was *not* that copyrights are unassignable to entities divorced from the creative process; rather, the argument was that Congress intended the right to sue to be linked to ownership in order to ensure that parties that sue for infringement are the same parties that exploit the copyright commercially. This connection helps copyright's purpose: "[t]o promote the Progress of Science and useful Arts[.]" U.S. Const., Art. I, § 8, cl. 8. This purpose is also helpful in assessing whether Righthaven is a true owner of an exclusive right or not. If Stephens Media continues to control ownership and exploitation of the work, then it is the only party Congress has empowered to sue.

---

[2] While not germane to the ruling in this case, *Amicus* has wondered all along why Stephens Media did not file this case, and other Righthaven suits, as the named plaintiff, thereby ameliorating any of these standing problems. After all, from what *Amicus* can tell, all of Righthaven's employees are Nevada bar members with admission to this Court. Thus, it would have been far easier for Stephens to simply hire these lawyers as outside counsel to sue on its behalf. Much like other contingency fee relationships, the financial relationship in the SAA could have been part of the attorney-client retainer agreement. *Amicus* has no answers to this question, but one could speculate that (somewhat ironically) Stephens wished to keep its name out of the press or attempt to avoid the burdens of litigation such as discovery, attorneys' fees, costs, or sanctions.

In its Response, Righthaven does not deny that it is a "complete stranger" to the creative and publishing process, exactly the type of party whom the *en banc* court in *Silvers* (including Judge Berzon in dissent) sought to exclude from the right to sue. *Silvers*, 402 F.3d at 891. Instead, it argues that, because news stories cost can considerable sums to investigate, write, edit, and publish, Stephens Media should be allowed to enlist Righthaven as its enforcer, while publishing entities such as Stephens continue to exploit the works. Yet these economics are no different than those in the movie industry that Nancey Silvers worked within. There too, movies cost considerable sums to make, and it may well have been economical to allow plaintiffs like Silvers to sue for enforcement. However, the Ninth Circuit rejected this permissive model of enforcement because it did not align with the constitutional objectives and statutory text of copyright. *Silvers*, 402 F.3d at 890. Much like the studio in *Silvers*, Stephens Media is fully capable as the copyright owner to sue and enforce its copyrights against any alleged infringer, and thus, can fulfill copyright's promise completely. Moreover, it is copyright ownership—not effort and cost—that the Constitution and Congress seek to protect under Title 17. *See Feist Publications, Inc., v. Rural Telephone Service Co.*, 499 U.S. 340 (1991). Thus, Righthaven's concerns—no matter how true—cannot serve to expand standing beyond the *Silvers* rule.

///
///
///
///
///
///
///
///
///

**III.     CONCLUSION**

      Righthaven's Response to Amici does not change the analysis of the issue before the Court. Under Section 501(b) and *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005), Righthaven has no claim under federal copyright law, and its case should be dismissed with prejudice.

Dated: June 27, 2011                                                  Respectfully submitted,

                                                                               CHAD A. BOWERS, LTD.

                                                                               By: /s/ Chad Bowers
                                                                               Chad A. Bowers, Esq.
                                                                               Law Offices of Chad A. Bowers
                                                                               NV State Bar Number 7283
                                                                               3202 W. Charleston Blvd.
                                                                               Las Vegas, Nevada 89102

                                                                               *Attorney for* Amicus Curiae *Professor Jason Schultz*