LAURENCE F. PULGRAM (*Pro Hac Vice*)
lpulgram@fenwick.com
FENWICK & WEST LLP
555 California Street, Suite 1200
San Francisco, CA 94104
Telephone:   (415) 875-2300
Facsimile:    (415) 281-1350

CHAD BOWERS (NV State Bar No. 7283)
chadalbertbowers@gmail.com
CHAD A. BOWERS, LTD
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone:      (702) 457-1001


Attorney for Amicus Curiae
DEMOCRATIC UNDERGROUND, LLC

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company,<br><br>     Plaintiff,<br><br>  v.<br><br>PAHRUMP LIFE, a entity of unknown origin and nature; MAREN SCACCIA, an individual; and MICHAEL SCACCIA, an individual,<br><br>     Defendants. | Case No.: 2:10-cv-01575-JCM (PAL)<br><br>**AMICUS CURIAE DEMOCRATIC UNDERGROUND LLC'S REPLY IN SUPPORT OF AMICUS BRIEF** |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

I.  THE SAA FAILS TO ASSIGN EXCLUSIVE RIGHTS IN THE COPYRIGHT...............2

II.  RIGHTHAVEN'S ARGUMENT THAT THE MAY 9 AMENDMENT CREATES
    SUFFICIENT OWNERSHIP IS BOTH INCORRECT AND BARRED BY ISSUE
    PRECLUSION ...............................................................................................................3

    A.  Righthaven's Claim That It Controls Exploitation of the Copyright
        Under the May 9 Amendment Defies the Amendment's Terms and the
        Decision in *Hoehn*.............................................................................................3

    B.  Issue Preclusion Estops Righthaven From Arguing That The
        Amendment Sufficiently Assigns the Copyright ...........................................4

    C.  Righthaven's Attempts To Distinguish Precedent Fail..............................5

III.  RIGHTHAVEN'S SUGGESTIONS THAT ITS LITIGATION PRACTICES ARE
     WELL ACCEPTED IS CONTRARY TO LAW ...........................................................7

    A.  Righthaven's Reliance on Trademark Cases is Misplaced. ......................7

    B.  Righthaven's Reliance on Patent Authorities is Misplaced. ....................8

    C.  Righthaven's Invocation Of The Objectives of Copyright Do Not
        Support It's Model. ...........................................................................................11

    D.  Righthaven's Assignment Is Also Void Under the Law of Champerty.................13

IV.  RIGHTHAVEN'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE...............15

    A.  Righthaven's Claims Must Be Dismissed.................................................15

    B.  Righthaven's Claim Should Be Dismissed With Prejudice .....................17

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Labs. Diamedix Corp.,*
    47 F.3d 1128 (Fed. Cir. 1995) ............................................................................................ 10

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.,*
    604 F.3d 1354 (Fed. Cir. 2010) .......................................................................................... 10

*Althin CD Med., Inc., v. W. Suburban Kidney Ctr., S.C.,*
    874 F. Supp. 837 (N.D. Ill. 1994) ..................................................................................... 6, 9

*Aspex Eyewear, Inc. v. Miracle Optics,*
    434 F.3d 1336 (Fed. Cir. 2006) .......................................................................................... 10

*Bangkok Broad. & T.V. Co., Ltd. v. IPTV Corp.,*
    742 F. Supp. 2d 1101 (C.D. Cal. 2010) ............................................................................... 9

*Clements v. Airport Author. of Washoe County,*
    69 F.3d 321 (9th Cir. 1995) .................................................................................................. 5

*Del Webb Communities, Inc. v. Partington,*
    No. 2:08-cv-00571, 2009 WL 3053709
    (D. Nev. Sep. 18, 2009) ............................................................................................... 13, 14

*Graham v. La Crossee & Railroad Co.*
    102 U.S. 148 (1880) ............................................................................................................ 14

*Green v. Ancora-Citronelle Corp.,*
    577 F.2d 1380 (9th Cir. 1978) .............................................................................................. 5

*Gruber v. Baker,*
    20 Nev. 453, 23 P. 858 (1890) ........................................................................................... 14

*Harris v. Amgen, Inc.,*
    573 F.3d 728 (9th Cir. 2009) .............................................................................................. 18

*HT Litig. Trust v. Jess Rae Booth,*
    No. 07-56381, 2008 WL 5227300 (9th Cir. Dec. 16 2008) ................................................ 18

*In re Primus,*
    436 U.S. 412 (1978) ............................................................................................................ 13

*Int'l Armament Corp. v. Matra Manurhin Int'l., Inc.,*
    630 F. Supp. 741 (E.D. Va. 1986) ........................................................................................ 7

*Lerner v. Fleet Bank,*
    318 F.3d 113 (2d Cir.2003) ................................................................................................ 17

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................................................................ 15

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Lum v. Stinnett*,
   87 Nev. 402, 488 P.2d 347 (1971) ............................................................. 13, 14

*Martin v. Morgan Drive Away, Inc.*,
   665 F.2d 598 (5th Cir. 1982),
   *cert. dismissed*, 458 U.S. 1122 (1982) ........................................................ 15

*Mazer v. Stein*,
   347 U.S. 201 (1954) ....................................................................................... 9

*Nafal v. Carter*,
   540 F. Supp. 2d 1128 (C.D. Cal. 2007) .................................................. 5, 6, 9

*Newman-Green, Inc. v. Alfonzo-Larrain*,
   490 U.S. 826 (1989) ................................................................................. 15, 16

*Premier Dental Prods. Co. v. Darby Dental Supply Co.*,
   794 F.2d 850 (3d Cir. 1986) ........................................................................... 7

*Prima Tek II, L.L.C. v. A-Roo Co.*,
   222 F.3d 1372 (Fed. Cir. 2000) ..................................................................... 10

*Rawlings v. Nat'l Molasses Co.*,
   394 F.2d 645 (9th Cir. 1968) ........................................................................... 8

*Righthaven LCC v. Jama*,
   2011 WL 1541613 (D. Nev. April 22, 2011) ........................................... 11, 12

*Righthaven LLC v. Barham*,
   Case No. 2:10-cv-02150-RLH, Dkt. 20 (D. Nev. June 22, 2011) ................... 1, 2

*Righthaven LLC v. Choudhry*,
   2011 WL 1743839 (D. Nev. May 03, 2011) .................................................. 11

Righthaven LLC v. Democratic Underground,
   LLC, Case No. 2:10-cv-01356-RLH, 2011 WL 2378186 (D. Nev. June 14, 2011) ........ *passim*

*Righthaven LLC v. DiBiase*,
   Case No. 2:10-cv-01343-RLH, Dkt. 72 (D. Nev. June 22, 2011) ................... 1, 2

*Righthaven LLC v. Hill*,
   Case No. 1:11-cv-00211-JLK, Dkt. 16 at 2 (D. Colo. April 7, 2011) .................... 12

Righthaven LLC v. Hoehn,
   Case No. 2:11-cv-00050-PMP, 2011 WL 2441020 (D. Nev. June 20, 2011) ............... *passim*

*Righthaven LLC v. Realty One Group, Inc.*,
   2010 WL 4115413 (D. Nev. Oct. 19, 2010) .................................................. 11

*Righthaven v. Democratic Underground*,
   Case 2:10-cv-01356-RLH, Dkt. 36, at 16:10-14 .......................................... 17

*Righthaven v. Democratic Underground*,
   Case No. 2:10-cv-1356, Dkt. 94 (D. Nev. April 14, 2011) .................................. 11

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ver
sion: 6

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004) ........................................................................... 17

*Schwartz v. Eliades,*
    113 Nev. 586, 939 P.2d 1034 (Nev. 1997) ...................................................... 15

*Schwartz v. Eliades,*
    113 Nev. 586, 939 P.2d 1034 (Nev. 1997) ...................................................... 14

*SGS-Thomson Microelectronics, Inc.* v. *lnt'l Rectifier Corp.,*
    1994 WL 374529 (Fed. Cir. Jul. 14, 1994) ....................................................... 8

*Sicom Sys., Ltd. v. Agilent Techs., Inc.,*
    427 F.3d 971 (Fed. Cir. 2005) ........................................................................... 18

*Silvers v. Sony Pictures Entm't,*
    402 F.3d 885 (9th Cir. 2005) .................................................................... *passim*

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
    464 U.S. 417 (1984) ............................................................................... 8, 9, 12

*The Trademark Cases,* 100 U.S. 82 (1879) .......................................................... 8

*Theme Promotions, Inc. v. News Am. Mktg. FSI,*
    546 F.3d 991 (9th Cir. 2008) ........................................................................... 19

*Tripati v. Henman,*
    857 F. 2d 1366 (9th Cir. 1988) ........................................................................... 5

*United Drug Co. v. Theodore Rectanus Co.,*
    248 U.S. 90 (1918) ............................................................................................. 8

*United States v. Mendoza,*
    464 U.S. 154 (1984) ........................................................................................... 5

*Univ. of Pittsburgh v. Varian Med. Sys.,*
    569 F.3d 1328 (Fed. Cir. 2009) ....................................................................... 18

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*
    944 F.2d 870 (Fed. Cir. 1991) ........................................................................... 9

*Vittoria North America LLC v. Euro-Asia Imports, Inc.,*
    278 F.3d 1076 (10th Cir. 2001) ......................................................................... 7

Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold &
    Easement in the Cloverly Subterranean, Geological Formation,
    524 F.3d 1090 (9th Cir. 2008) ..................................................................... 4, 17

**RULES**

FED. CIR. R. 32.1(c) ............................................................................................. 8

**OTHER AUTHORITIES**

14 C.J.S. Champerty and Maintenance § 2 ................................................. 13, 14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Alice Haemmerli, *Why Doctrine Matters: Patent and Copyright Licensing and the Meaning of Ownership in the Federal Context*, 30 COLUMBIA JOURNAL OF LAW & THE ARTS 1, 46 (2006) ................................................................................................ 9

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 2:1 (4th ed. 2011) .............................................................................................. 7

*McCarthy*, Ch. 6 .............................................................................................. 8

*McCarthy*, § 18:42 ........................................................................................... 8

William Patry, 2 PATRY ON COPYRIGHT, § 5:136 at 5-293 (2009) ........................................ 13, 14

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**INTRODUCTION**

After striving mightily to hide its Strategic Alliance Agreement (SAA) with Stephens Media from the litigants and the public, Righthaven is now facing the consequences of its scheme to sue third parties over uses of copyrights it does not really own or control.  Since the facts have been exposed, Righthaven has lost four cases in which this Court has correctly found that Righthaven did not own the copyrights at issue.[1]  It took over a year to reach this result only because, as Chief Judge Hunt noted, "Righthaven [initially] led the district judges of this district to believe that it was the true owner of the copyright in the relevant news articles" and "did not disclose the true nature of the transaction by disclosing the SAA or Stephens Media's pecuniary interests." *Righthaven LLC v. Democratic Underground*, LLC, Case No. 2:10-cv-01356-RLH, 2011 WL 2378186 (D. Nev. June 14, 2011) (hereafter "*Democratic Underground*").

In an attempt to stem this tide, Righthaven obtained from this Court permission to brief, again, the arguments raised by the *amici* that had proved persuasive in these other cases. However, Righthaven's Omnibus Response to the Amicus Curiae Briefs ("Omnibus Response" Dkt 44) chose instead to omit discussion of most of the substantive issues in the *amicus* briefs. Other than a perfunctory footnote stating it respectfully disagrees with Chief Judge Hunt and Judge Pro, the Omnibus Response does not address any of the arguments why the SAA represented an impermissible attempt to transfer mere rights to sue. *Compare* DU Amicus Brief ("DU Brief") at 2–5.  Righthaven also fails entirely to address the *unchanged* provisions of the SAA, which continue to provide Stephens Media with authority over whom to sue, automatic reversion, and—most strange—the ability to mortgage the copyright it purportedly assigned away. *Compare* DU Brief at 7–8.  Righthaven also abandons its "beneficial ownership" argument. *Compare* DU Brief at 8, n.5 and Schultz Brief at 6–7.  It fails to explain why its business model is not unlawful champerty. *Compare* DU Brief at 9, n.6.  Nor does Righthaven

---

[1] *Righthaven LLC v. Democratic Underground*, LLC, Case No. 2:10-cv-01356-RLH, 2011 WL 2378186 (D. Nev. June 14, 2011) (holding that the SAA did not assign the copyright); *Righthaven LLC v. Hoehn*, Case No. 2:11-cv-00050-PMP, 2011 WL 2441020 (D. Nev. June 20, 2011) (holding that neither the SAA nor the May 9 Amendment of the SAA assigned the copyright); *Righthaven LLC v. DiBiase*, Case No. 2:10-cv-01343-RLH, Dkt. 72 (D. Nev. June 22, 2011) (dismissing on the basis of *Democratic Underground* and *Hoehn*); and *Righthaven LLC v. Barham*, Case No. 2:10-cv-02150-RLH, Dkt. 20 (D. Nev. June 22, 2011) (same).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  explain why it called a change from "exclusive" to "non-exclusive" a "clarification," when that

2  change *reverses* the language of the original SAA. *Compare* DU Brief at 10.

3        Instead, Righthaven places all of its hopes on the May 9, 2011 Amendment, claiming that

4  it "undoubtedly" and "unquestionably" owns the copyright post-Amendment—a strange choice of

5  words after Judge Pro's June 20, 2011, decision, which explicitly held that the Amendment "does

6  not provide Righthaven with any exclusive rights necessary to bring suit." *Hoehn*, *supra* at

7  note 1; *see also Democratic Underground,* at n. 1 (expressing "doubt that these seemingly

8  cosmetic adjustments change the nature and practical effect of the SAA"). As explained below,

9  Judge Pro and Chief Judge Hunt were correct. The Amendment, like the original SAA, confers

10  no basis for Righthaven to assert ownership of copyrights in its effort to bully hundreds of

11  defendants into settlements. Righthaven's claims should be dismissed without leave to amend.

12                                    **ARGUMENT**

13  **I.      THE SAA FAILS TO ASSIGN EXCLUSIVE RIGHTS IN THE COPYRIGHT**

14        Righthaven has abandoned its argument that the original SAA assigns the copyright at

15  issue. As held by this Court, it does not. *See Democratic Underground,* 2011 WL 2378186, *3

16  (holding that the SAA did not assign the copyright; labeling contrary argument "flagrantly false—

17  to the point that the claim is disingenuous, if not outright deceitful"); *Hoehn*, 2011 WL 2441020

18  (holding that neither the SAA nor the May 9 Amendment of the SAA assigned the copyright);

19  *DiBiase*, Case No. 2:10-cv-01343-RLH, Dkt. 72 (D. Nev. June 22, 2011) (dismissing on the basis

20  of *Democratic Underground* and *Hoehn*); *Barham*, Case No. 2:10-cv-02150-RLH, Dkt. 20 (D.

21  Nev. June 22, 2011) (same). As Chief Judge Hunt explained, "[t]he entirety of the SAA was

22  designed to prevent Righthaven from becoming 'an owner of any exclusive right in the

23  copyright' . . . regardless of Righthaven and Stephens Media's post hoc explanations of the

24  SAA's intent or later assignments." *Democratic Underground*, *3 (quoting *Silvers v. Sony*

25  *Pictures Entm't,* 402 F.3d 885, 886 (9th Cir. 2005)). Consequently, there is no further dispute

26  that Righthaven was not properly assigned the copyright at issue under the original SAA, and thus

27  Righthaven had no standing to sue at the time the Complaint was filed.

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMICUS CURIAE DU'S REPLY IN
SUPPORT OF AMICUS BRIEF                    2                    CASE NO. 2:10-cv-01575-JCM (PAL)

**II.   RIGHTHAVEN'S ARGUMENT THAT THE MAY 9 AMENDMENT CREATES SUFFICIENT OWNERSHIP IS BOTH INCORRECT AND BARRED BY ISSUE PRECLUSION**

Righthaven now relies entirely on the argument that the May 9 Amendment cures the defects of the original SAA.  As this Court has already found (and entered judgment accordingly) the Amendment does not.  *Hoehn*, 2011 WL 2441020.

**A.   Righthaven's Claim That It Controls Exploitation of the Copyright Under the May 9 Amendment Defies the Amendment's Terms and the Decision in *Hoehn*.**

As Judge Pro recognized, the practical reality is that "[t]he May 9, 2011 Clarification provides Righthaven with only an illusory right to exploit or profit from the Work."  *See Hoehn*, 2011 WL 2441020, at *6.  The actual rights and ability to control exploitation remain with Stephens Media, as was the design all along.  The *Hoehn* analysis agreed with *amici*'s arguments about the Amendment.  Nonetheless, Righthaven's Omnibus Response utterly fails to address either *Hoehn*'s or the *amici's* discussion of the Amendment's structure.  DU Brief at 6-10.

The primary goal of the Amendment is not to provide Righthaven with any ability to exploit a work, but rather to obscure what the original SAA made clear: that Stephens Media holds "an exclusive license" to any work purportedly "assigned" to Righthaven.  *See* SAA § 7.2.  Furthering this artifice, the Amendment provides that, simultaneously with assignment, "Stephens Media is granted a non-exclusive license to Exploit [the work] to the greatest extent permitted by law in consideration of payment [of] $1.00."  Amendment § 7.2.  In the same section that purports to leave Righthaven the ability to "Exploit" the works outside of litigation, Stephens Media takes back an absolute right to prevent any exploitation, by its ability to veto any exploitation within 30 days after notice by Righthaven.  *Id*. § 7.2.  This effectively retains Stephens Media's authority to control all decisions about exploitation, given its right "within 14 days of providing notice" to reclaim "all right, title and interest" in the copyright through payment of a nominal $10 fee to Righthaven.  *Id*. § 8.1; *see  Hoehn*, 2011 WL 2441020, at *6 (finding no standing under the Amendment due to "Stephens Media's power to prevent Righthaven from exploiting the Work").  Moreover, as also recognized by *Hoehn* (2011 WL 2441020, at *6), Stephens Media's control is made complete through the stipulation that any failure of notice by Righthaven would constitute

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Version: 6

"irreparable harm," to Stephens Media, remedial by an injunction.  Amendment § 7.2.  Unless and until Stephens Media decides to allow Righthaven to pursue any particular exploitation by choosing *not* to exercise its veto authority—an event the record does not suggest has ever occurred—Stephens Media remains, by any rational interpretation, the *exclusive* licensee of the work.

The fiction of Stephens Media's "non-exclusive license" is patent from the other incidents of ownership that continue to be vested in Stephens Media under those terms of the original SAA left in effect by the Amendment.  Specifically, Stephens Media retains absolute ability to decide whether or not to sue any alleged infringer (SAA §3.3); to receive reversion of the assignment if Righthaven declines to sue (*id.*); to halt any litigation and reclaim the copyright at any time (*id.* § 8.2); and perhaps most striking to maintain "any security interest, pledge, hypothecation, lien, or other encumbrance of whatsoever nature" on works that it purportedly assigns to Righthaven.  *Id.* §9.3.  *See Democratic Underground*, 2011 WL 2378186, at *3, *4 n.1 (holding that "collectively, [these sections in the original SAA] destroy Righthaven's supposed rights in the Work" and doubting that the Amendment's "seemingly cosmetic adjustments change the nature and practical effect of the SAA").  The purported assignment remains a sham even after the Amendment.  Righthaven decidedly does not have the authority to exploit assigned works that it professes.[2]

**B.** **Issue Preclusion Estops Righthaven From Arguing That The Amendment Sufficiently Assigns The Copyright**

Judge Pro's recognition that the Amendment does not cure the defects of the SAA (*Hoehn*, 2011 WL 2441020) is not only correct, it also estops further litigation of this claim under the doctrine of issue preclusion (formerly known as collateral estoppel).  A final judgment was entered in *Hoehn* on June 20, 2011.  *Hoehn* Dkt. 30 (clerk's judgment).  Righthaven is therefore precluded from arguing that the May 9 Amendment adequately assigns the copyright at issue.

---

[2] In any event, Righthaven itself has argued that the SAA is "does not not effectuate the assignment of any work.  *See* Righthaven Response to OSC at 6:17-18*; see also Hoehn*, 2011 WL 2441020 ("Righthaven argues the SAA reflects promises made between Righthaven and Stephens Media with regard to future transactions, but itself does not cause an assignment of rights.").  According to Righthaven, the assignments occur separately on a work-by-work basis.  Assuming that to be the case, simply amending the SAA without subsequently assigning the work would have no impact upon the rights that were granted and retained, and thus could not operate to remedy the invalidity of the assignment.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ver

sion: 6

1  *Clements v. Airport Author. of Washoe County*, 69 F.3d 321, 330 (9th Cir. 1995) (collateral

2  estoppels bars "the re-litigation of any issue that has been actually litigated and necessarily

3  decided"); *see also United States v. Mendoza*, 464 U.S. 154, n.4 (1984) ("Defensive use of

4  collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue

5  the plaintiff has previously litigated unsuccessfully."); *Green v. Ancora-Citronelle Corp.,* 577

6  F.2d 1380, 1383-1384 (9th Cir. 1978) (recognizing that non-party to original action may rely on

7  issue preclusion to bar relitigation of issues actually and necessarily decided against a party).

8  This is true even if Righthaven intends to appeal the *Hoehn* decision.  *Tripati v. Henman*, 857 F.

9  2d 1366 (9th Cir. 1988) ("The established rule in the federal courts is that a final judgment retains

10  all of its res judicata consequences pending decision of the appeal . . . To deny preclusion in these

11  circumstances would lead to an absurd result:  Litigants would be able to refile identical cases

12  while appeals are pending, enmeshing their opponents and the court system in tangles of

13  duplicative litigation.") (citations omitted).

### C.   Righthaven's Attempts To Distinguish Precedent Fail

15  Were this Court to find itself not bound by the identical determination already made in

16  *Hoehn*, Righthaven's attempts to distinguish *amici*'s authorities will still fail.  In response to case

17  law providing that illusory, sham assignments are insufficient to provide standing under *Silvers*,

18  Righthaven argues little more than, this time, its Amendment is not a sham, an assertion that, if

19  true, it claims would render those authorities not controlling.  But, Righthaven's conclusion that

20  the Amendment is not a sham is mere *ipse dixit*, unsupported by any analysis of the SAA and

21  Amendment terms.  Apart from assuming the conclusion without analysis, Righthaven's

22  attempted distinctions point only to legally irrelevant factual differences in the hopes of

23  muddying waters that are actually quite clear.

24  Looking first to *Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007), Righthaven

25  argues that in that case the plaintiff "lacked any ability to exercise any rights under the copyright"

26  and on that basis lacked standing.  *See* Omnibus Response at 7.  Righthaven maintains that

27  because Stephens Media purportedly "assigned its entire copyright directly to Righthaven" with

28  only a "non-exclusive" license back, the case is distinguishable and Righthaven must have

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  standing—in essence, that because its assignment is purportedly valid, it must have standing.  *Id.*

2  This argument assumes its own conclusion, which we have debunked above, and which requires

3  no further comment.  The only other distinction that Righthaven points to in *Nafal* is that the

4  purported "co-exclusive license" to the plaintiff in that case was not direct, but rather was

5  conveyed by both the copyright holder *and* the other co-exclusive license.  However, the *Nafal*

6  court did not base its decision that the plaintiff lacked standing on this fact, instead focusing on

7  the constituent rights (or lack thereof) that the licensor actually provided through the purported

8  assignment.  *Id.* at 1141, 1143.[3]

9      Next, Righthaven attempts to distinguish *Althin CD Med., Inc., v. W. Suburban Kidney*

10  *Ctr., S.C.,* 874 F. Supp. 837, 840 (N.D. Ill. 1994), by arguing that the original copyright owner

11  "retained the sole right to determine whether or not to bring an infringement action and gave

12  virtually no right to transfer or assign the license agreement."  *See* Omnibus Response at 8.  This

13  only proves Democratic Underground's point.  Here, just as in *Althin*, Stephens Media retains the

14  right to determine whether to bring an infringement action, and retains the right to veto every

15  other exploitation of the work.  *See, e.g.*, SAA §§ 3.3, 8.1.  Moreover, the court in *Althin* did not,

16  as Righthaven seems to suggest, find that the assignment was invalid simply because there was no

17  right to sublicense (though Stephens Media controls sublicenses here, too, through its notice and

18  veto power).  Omnibus Response at 8.  Rather, the court looked at the rights retained by the

19  owner/licensor, including the absolute right to allow or disallow an infringement action, and

20  found that "[g]iven the licensor's retention of these substantial rights, . . . [the plaintiff] had no

21  standing to sue."  *Althin,* 874 F. Supp. at 840.

22      Righthaven attempts to distinguish *Silvers*, itself, by contending that the agreement at

23  issue in that case only assigned "all right, title and interest in and to any claims and causes of

24  action" whereas Righthaven claims to have received a purported interest to exploit the works.

25  *See* Omnibus Response at 7.  Again, Righthaven assumes a conclusion that the facts defy—that it

26

27  [3] Righthaven's suggestion that *Nafal* having been decided under the 1909 Act is significant is of no moment.  While under the 1909 Act there was a total unity of rights required, that does not change the fact that in *Nafal*, as here, the plaintiff lacked *any* rights to exploit the work and thus had no standing.  *Id.* at 1143 (noting that the purported license

28  in *Nafal* did "not confer Plaintiff with the power to exploit any exclusive rights.").

has the ability to control exploitation of the work, when the SAA and the Amendment are designed to ensure exactly the opposite.  At bottom, Righthaven cannot distinguish the principle that when a plaintiff at most obtains the right to sue—and here, not even actual control over that right—it has no standing under the Copyright Act.

### III.   RIGHTHAVEN'S SUGGESTIONS THAT ITS LITIGATION PRACTICES ARE WELL ACCEPTED IS CONTRARY TO LAW

The Omnibus Response includes a cluster of arguments attempting to suggest that what Righthaven has attempted here is just ordinary enforcement of intellectual property rights, consistent with the standard rules of practice and desirable from a policy perspective.  On examination, however, these arguments disintegrate.

#### A.   Righthaven's Reliance on Trademark Cases is Misplaced.

Righthaven knocks down a straw man in contending that an assignment is not invalid "simply because the original owner retains some rights," relying on trademark cases for that proposition.  Amici have never contended otherwise.  Rather, *amici* have pointed out that where an assignor of the right to sue maintains controls of *all exclusive rights* in a copyright, the assignment is invalid.  The trademark cases cited by Righthaven do not suggest otherwise.  Most provide only that, where an assignment is *otherwise valid*, a provision providing some potential for reassignment does not render the assignment a nullity.[4]

Moreover, the profound differences between the trademark and copyright regime renders assignment cases in the former unpersuasive in the latter.  Trademark is a species of unfair competition law; unlike copyrights (and patents) a trademark is "property" only in the sense that it is a symbol of good will tied to a specific article, service or business.  J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 2:1 (4th ed. 2011).  Thus, the Supreme Court has noted that it is "fundamental error" to suppose that "a trademark right is a right in gross or at large, like a statutory copyright or a patent for an invention, *to either of which, in truth, it*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[4] *See Vittoria North America LLC v. Euro-Asia Imports, Inc.*, 278 F.3d 1076, 1082, n.3 (10th Cir. 2001); *Premier Dental Prods. Co. v. Darby Dental Supply Co.,* 794 F.2d 850, 855–56 (3d Cir. 1986); *Int'l Armament Corp. v. Matra Manurhin Int'l., Inc.,* 630 F. Supp. 741, 746 (E.D. Va. 1986), each of which holds that a clause permitting reassignment after a *valid* assignment does not alone render the assignment invalid.

AMICUS CURIAE DU'S REPLY IN SUPPORT OF AMICUS BRIEF                    7                    CASE NO. 2:10-cv-01575-JCM (PAL)

1   *has little or no analogy."  United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918)

2   (emphasis added); *see also The Trademark Cases*, 100 U.S. 82 (1879) (describing differences

3   between copyright, patent and trademark, and noting lack of constitutional basis for trademark);

4   *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 439 n.19 (1984) ("[W]e have

5   consistently rejected the notion that a . . . kinship exists between copyright law and trademark

6   law.").  *See generally McCarthy*, Ch. 6 (comparing patent, copyright and trademark).

7          The profound differences between the two areas of law are reflected in their licensing

8   requirements.  For example, because trademark policy is intended to protect consumer interests

9   by ensuring that consumers get the quality of good or service they expect when they purchase,

10  "trademark licensing is permitted only so long as the licensor maintains adequate control over the

11  nature and quality of goods and services sold under the mark by the licensee." *McCarthy*, § 18:42.

12  Copyright law has no analogy to this rule because copyright is intended to protect and encourage

13  creativity, not competition.

14          **B.        Righthaven's Reliance on Patent Authorities is Misplaced.**

15         Righthaven further cites to two patent infringement cases for the proposition that its

16  standing is unaffected by the fact that the assignment was made solely to facilitate a lawsuit.  *See*

17  Omnibus Brief at 9-10 (citing to *Rawlings v. Nat'l Molasses Co.,* 394 F.2d 645 (9th Cir. 1968);

18  *SGS-Thomson Microelectronics, Inc.* v. *lnt'l Rectifier Corp.,* 1994 WL 374529 (Fed. Cir. Jul. 14,

19  1994))[5].  As an initial matter, each of these cases is also distinguishable because the plaintiffs had

20  been assigned *all rights* in the patent(s) at issue.  *See Rawlings,* 394 F.2d at 647 (plaintiff/patent

21  assignee assigned all rights in the patent, and plaintiff then assigned a non-exclusive license back

22  to patentee); *SGS-Thomson*, 1994 WL 374529 at *5 (plaintiff assigned the "entire right, title and

23  interest" in the litigated patents).  While the purpose of the assignments in those cases may have

24

25

26

27  ―――――――――――――
   [5] *SGS-Thomson* is not valid precedent.  The Federal Circuit's own rules do not allow for citation to its
   nonprecedential opinions from before 2007.  *See* FED. CIR. R. 32.1(c).  In fact, in *SGS-Thomson* itself, the Federal
28  Circuit admonished the parties for citing to such opinions without acknowledging their nonprecedential nature,
   calling it "misleading to the court" and "condemn[ing] such behavior."  *SGS-Thomson,* 1994 WL 374529 at *9.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ver
sion: 6

been to facilitate litigation, the assignments to the patent plaintiffs – unlike the "assignments" to Righthaven – were complete and effective transfers of all rights to practice the invention.[6]

Moreover, while the Supreme Court has recognized a kinship between patent and copyright, it also has recognized that the "two areas of the law, naturally, are not identical twins," and instructed courts to "exercise the caution which we have expressed in the past in applying doctrine formulated in one area to the other." *Sony Corp. of Am.*, 464 U.S. at 439 n.19. Likewise, the Ninth Circuit has recognized that "[w]here precedent in copyright cases *is lacking*, it is appropriate to look for guidance to patent law." *Silvers,* 402 F.3d at 887 (emphasis added).

Here, Righthaven cannot show that copyright precedent is lacking simply by seeking to distinguish *Silvers*, *Nafal* and *Althin* factually. For example, the court in *Nafal* found the assignment unenforceable, observing that "Plaintiff's 'interest' in [the work] would have been terminable if a lawsuit had not been filed within 180 days." *Nafal*, 540 F.Supp.2d at 1143. Righthaven's citation to patent law does not explain why this Court should ignore on point copyright precedent.

Before attempting to substitute patent law, Righthaven must "establish why [a patent case] should otherwise apply to the licensing of copyrights." *Bangkok Broad. & T.V. Co., Ltd. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1112 (C.D. Cal. 2010) (declining to apply a patent licensing case to copyright where plaintiff had failed to make this showing); *see also Mazer v. Stein*, 347 U.S. 201, 217-218 (1954) (declining to apply patent law to copyright law due to differences in bodies of law). Righthaven cannot do so because "exclusive copyright and patent licenses convey entirely different types of ownership rights—legal title in the case of the exclusive copyright license and an equitable, beneficial ownership interest in the case of the exclusive patent license." Alice Haemmerli, *Why Doctrine Matters: Patent and Copyright Licensing and the Meaning of*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[6] Righthaven's citation to *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.* 944 F.2d 870 (Fed. Cir. 1991) is equally unavailing. The assignee in *Vaupel* had received full rights to exploit the patent, subject to what the court called the "minor derogation" of a veto on sublicensing, a reversion of rights upon the assignee's bankruptcy, limits on filing foreign patents, and receipt of some share of infringement damages as a portion of compensation. These limitations did not impact the standing of the assignee because the assignee was not required to possess *all* rights related to the patent – just all of the substantial rights. *Id.*, at 875. Indeed, unlike this case, the *Vaupel* assignor could not reclaim the patent at will, control whether lawsuits were filed (a decision that rested "solely with Vaupel" (*id.*)), nor prohibit all exploitation of the patent by the assignee. Here, Stephens Media has not transferred "all substantial" rights in the work to Righthaven—Stephens Media effectively transferred *no rights* beyond the right to sue.

*Ownership in the Federal Context*, 30 COLUMBIA JOURNAL OF LAW & THE ARTS 1, 46 (2006)

("[Copyright and patent] differ greatly in their treatment of licenses, and this difference makes the

utilization of patent doctrine in copyright decisions more than a little problematic.").

In all events, even if the Court were to consider patent law, the cases show that where an

assignor retains the right to terminate the assignees' rights at will, no right to sue on the patent

will be found.  *See Aspex Eyewear, Inc. v. Miracle Optics,* 434 F.3d 1336, 1342 (Fed. Cir. 2006)

(finding no standing to sue and no "effective ownership" when rights to the patent were set to

expire before the patent itself); *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.,*

604 F.3d 1354, 1359-60, n.2 (Fed. Cir. 2010) ("at least for purposes of determining standing to

sue for infringement, there may not be multiple groups or unaffiliated individuals who claim

ownership of the patent; one of these groups or individuals must be determined to be the owner,

and that owner is the only party with standing to sue on its own").

Furthermore, as explained above, Righthaven effectively received no right to exploit the

copyright at issue.  *Supra*, Section II.A.  In analogous circumstances in patent law, a party lacks

proper standing to sue.  *See Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1379 (Fed. Cir.

2000) ("In evaluating whether a particular license agreement transfers all substantial rights in a

patent to the licensee, we pay particular attention to whether the agreement conveys *in full* the

right to exclude others from making, using and selling the patented invention in the exclusive

territory") (emphasis in original);[7] *Abbott Labs. Diamedix Corp.,* 47 F.3d 1128, 1132-33 (Fed.

Cir. 1995) (party lacked standing to sue when transferring party "retained substantial interests" in

the patents at issue).  Because Stephens Media retains rights to recover and exploit the copyright

at issue, Righthaven alone lacks standing to bring this suit. "To hold otherwise would be to allow

a patent owner to effectively grant a 'hunting license,' solely for the purpose of litigation, in the

form of a pro forma exclusive license, e.g., covering only a minuscule territory."  *Prima Tek II,*

222 F.3d at 1381.  Thus, even if applied, patent law would not tolerate the fiction of "ownership"

that Righthaven has attempted here.

[7] *Prima-Tek II* was cited with approval in *Silvers*, 402 F.3d at 888.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**C.**    **Righthaven's Invocation Of The Objectives of Copyright Do Not Support It's Model.**

In its zeal to extract settlements from bloggers who cite to copyrighted works, Righthaven seeks this Court's creation of a loophole that could swallow the *Silvers* rule.  In essence, Righthaven asks the Court to consider only the words of a post-facto redrafting of its agreements, while ignoring the practical result that, by design, affords Righthaven only a bare right to sue and affords Stephens Media a continuing power to operate as the owner of the exclusive rights. Under Righthaven's regime, sufficiently crafty contract writers can, by massaging assignment language, licenses, restrictions and revocations, achieve the very result *Silvers* precludes: a pure assignment of the right to sue with all other rights retained.  This is not the type of creativity the Copyright Act is designed to encourage.  Nor can Righthaven point to any policy objectives that would be served by giving it, as opposed to the actual right holder, the power to sue bloggers over content the genuine rights holder created, owned and exploited.

Righthaven attempts to rehabilitate itself by claiming "there is nothing wrong with a party focused on protecting intellectual property—except, of course, from the perspective of an infringer."  Omnibus Brief at 1.  Righthaven forgets two other important perspectives that might also object to over-zealous protectionism:  (i) the courts that must address bogus claims not permitted by law; and (ii) the wrongfully sued non-infringer, who now must front the costs of defense of a baseless action.[8]

Righthaven is not a typical plaintiff in an intellectual property case; it has attempted to build a business based on filing hundreds of lawsuits against foreign parties in the hope of obtaining nuisance-value settlements.  As Chief Judge Hunt explained, "Righthaven and Stephens Media have attempted to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar." *Righthaven v. Democratic Underground*, Case No. 2:10-cv-1356, Dkt. 94 (D. Nev. April 14, 2011). Moreover, Righthaven

---

[8] While few of the hundreds of defendants in Righthaven lawsuits have been able to afford a defense, some of the lawsuits have been litigated to conclusions. **Every court that has reached a final decision on the merits of a Righthaven copyright claim has found no infringement.**  *See Righthaven LCC v. Jama*, 2011 WL 1541613, at *5 (D. Nev. April 22, 2011); *Righthaven LLC v. Hoehn, supra*; and *Righthaven LLC v. Realty One Group, Inc.*, 2010 WL 4115413 (D. Nev. Oct. 19, 2010); *cf. Righthaven LLC v. Choudhry*, 2011 WL 1743839 (D. Nev. May 03, 2011) (denying summary judgment on infringement because of unresolved fact issues).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    omits the perspective of the courts.  *See Righthaven LLC v. Hill*, Case No. 1:11-cv-00211-JLK,

2    Dkt. 16 at 2 (D. Colo. April 7, 2011) ("Plaintiff's wishes to the contrary, the courts are not merely

3    tools for encouraging and exacting settlements from Defendants cowed by the potential costs of

4    litigation and liability.").

5            Righthaven's policy arguments also fail to account for the legal and policy principles on

6    which copyright law rests.  As this Court has found, Righthaven's "litigation strategy . . . does

7    nothing to advance the Copyright Act's purpose of promoting artistic creation."  *Jama*, *supra* at

8    note 1.  In response to Professor Schultz's persuasive copyright policy arguments, Righthaven

9    points to the unremarkable proposition that causes of action can be transferred *in conjunction with*

10   *ownership* of copyright's exclusive rights.  Omnibus Brief at 11.  However, Righthaven fails to

11   explain why this Court should destroy the linkage between those who own the right to exploit and

12   those who have the right to sue.  To be sure, many creators assign their rights to publishers better

13   able to exploit those rights.  Enabling such broad access to works, as well as their creation,

14   combine to form the underlying object of the copyright scheme.  *Sony Corp.,* 464 U.S. at 429

15   (copyright is "intended to motivate the creative activity of authors . . . and to allow the public

16   access to the products of their genius").  Righthaven's agreement with Stephens Media, however,

17   is carefully drafted to deny Righthaven *any ability* to exploit or provide the public access to the

18   work.  Untethered to any interest in providing access to the work, the copyright litigation

19   company stands unaligned with the creator, the publisher or the distributor – it simply wants to

20   maximize its return on its investment in litigation costs, relying "in large part upon reaching

21   settlement agreements with a minimal investment of time and effort."  *Hill*, *supra* at 1.

22           Righthaven next attempts to justify its sham assignments because "Righthaven was

23   created in order to assist media organizations in pursuing the infringement of copyrighted works."

24   Omnibus Brief at 12.  Without references or citation, Righthaven then purports to speak for the

25   newspaper industry and allege facts about its troubles.  Ironically Righthaven touts such interests

26   to explain why the *Review-Journal*—a newspaper—did not itself bring suit, instead relying on its

27   "little friend" Righthaven to do its bidding.  *See Democratic Underground,* 2011 WL 2378186 at

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   *8 ("Stephens Media's then CEO, Sherman Frederick, generally threatened potential defendants

2   that he would send his 'little friend called Righthaven' after them.").

3       Newspapers are an important part of American society.  Many are rightly concerned about

4   how to adjust their business models to the information age.  To protect and encourage

5   newspapers' ability to write, edit, publish and distribute creative content to the public,

6   newspapers should (and do) possess the right to sue over actual infringements of their

7   copyrighted works, whether those infringements occur online or off.  They can engage an

8   attorney to evaluate the situation, file a case if warranted, and collect whatever damages they are

9   entitled to under the law.  Dismissing Righthaven's claim for lack of ownership, however, would

10  do nothing to disturb that paradigm, and holding that Stephens Media is the true owner of the

11  copyrighted work would only bolster it.

12      **D.    Righthaven's Assignment Is Also Void Under the Law of Champerty**

13      Finally, Righthaven's policy arguments fail to address the public policy against

14  champerty.  *See* DU Amicus Brief at 9, n.6.  As a champertous agreement, the purported

15  assignment is a nullity; even if it had accomplished its attempted goal of assigning the right to sue

16  (which it does not), it would be void.  *See* William Patry, 2 PATRY ON COPYRIGHT, § 5:136 at 5-

17  293 (2009) (noting that in copyright litigation, "the successful assertion of [champerty] results in

18  the voiding of the champertous agreement").

19      Champerty is a flavor of maintenance, and a part of barratry.  As this Court has explained,

20  "'maintenance is helping another prosecute a suit; champerty is maintaining a suit in return for a

21  financial interest in the outcome; and barratry is a continuing practice of maintenance or

22  champerty.'"  *Del Webb Communities, Inc. v. Partington*, No. 2:08-cv-00571, 2009 WL 3053709,

23  at* 3 (D. Nev. Sep. 18, 2009) (quoting *In re Primus*, 436 U.S. 412, 424 n. 15 (1978)); *see also*

24  *Lum v. Stinnett*, 87 Nev. 402 at 408, 488 P.2d 347 (1971) (Nevada Supreme Court describing

25  champerty and maintenance, citing 14 C.J.S. Champerty and Maintenance).

26      Here, the very purpose of Righthaven violates the policy behind the doctrine of

27  champerty: "'that no encouragement should be given in litigation by the introduction of parties to

28  enforce those rights which others are not disposed to enforce.'"  PATRY ON COPYRIGHT, *supra*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

§ 5:136 at 5-292 (quoting *Graham v. La Crossee & Railroad Co.* 102 U.S. 148, 156 (1880)).

"The laws against champerty, maintenance, and barratry are aimed at the prevention of multitudinous and useless lawsuits and at the prevention of speculation in lawsuits." 14 C.J.S. Champerty and Maintenance § 2.[9]

Moreover, the doctrine is particularly well suited to curb abuse of the Copyright Act. Copyright scholar William Patry explains how champerty interacts with copyright law:

> As applied to copyright, champerty may be found only when there is an assignment of the copyright and preexisting causes of action and ***where the assignment of the copyright was a sham*** designed to disguise the real intent of conveying the chose in action. For example, ***if the assignment required the assignee to reconvey the copyright*** at the conclusion of the litigation, this would be very strong evidence of champerty. ***If***, however, ***the assignor continued to exploit the work*** in a manner inconsistent with an assignment of rights, a claim of champerty might prove out.

PATRY ON COPYRIGHT, *supra* at § 5:136 (emphasis added).  Although written years before Righthaven began its litigation campaign, Professor Patry's example seems to predict Righthaven's illegal business model.  As explained above, (1) the assignment is a sham designed to disguise the intent of conveying, at most, a cause of action; (2) the terms of the deal require the assignee to reconvey the copyright; and (3) the assignor continues to exploit the work.

Moreover, champerty has always been Righthaven's business plan.  As submitted with *amici's* opening brief, Righthaven's Operating Agreement ("RHOA" Dkt 32-2 Exh. 1) makes clear that Righthaven has never intended to have any interest in the works it purportedly acquires, beyond obtaining a share of litigation proceeds.  The company's avowed purpose is to obtain "a limited, revocable assignment (with license-back) of copyrights from third Persons in order to enable the Company to recover damages associated with Identified Infringements."  RHOA, § 3.2(c).  Righthaven was never interested in either exploiting the copyright other than by

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[9] While some jurisdictions have replaced this common law doctrine by statute or through other doctrines, "Nevada still recognizes maintenance and champerty."  *Del Webb*, 2009 WL 3053709 at *4 (citing *Schwartz v. Eliades*, 113 Nev. 586, 588, 939 P.2d 1034 (Nev. 1997)).  By its terms, the SAA is to be "interpreted and enforced in accordance with the laws of the State of Nevada."  SAA, § 15.3.  Under Nevada law, "[t]o maintain the suit of another is now, and always has been, held to be unlawful, unless the person maintaining has some interest in the subject of the suit." *Lum*, 87 Nev. at 408 (citing *Gruber v. Baker*, 20 Nev. 453, 23 P. 858, 862 (1890)).

litigation.  Indeed, the RHOA explicitly states that Stephens Media "would ultimately enjoy the copyright registration upon revocation of the assignment."  RHOA, § 3.2(d).

Under settled law, Righthaven's conduct constitutes champerty.  "A champertous agreement is one in which [i] a person without interest in another's litigation [ii] undertakes to carry on the litigation at his own expense, in whole or in part, [iii] in consideration of receiving, in the event of success, a part of the proceeds of the litigation."  *Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598, 603 (5th Cir. 1982), *cert. dismissed*, 458 U.S. 1122 (1982) (quoted with approval by the Nevada Supreme Court in *Schwartz v. Eliades*, 113 Nev. 586, 588, 939 P.2d 1034 (Nev. 1997)).  These three elements of champerty are easily satisfied here.  First, Righthaven began with no genuine interest in any alleged infringement of the *Review-Journal* article.  Second, Righthaven has undertaken Stephens Media's copyright litigation at its own expense. *See* SAA, § 4 and § 6 ("Righthaven shall be responsible for all Costs incurred in an Infringement Action.").  Third, Righthaven has done so with the expectation of receiving a part of the litigation proceeds in the event of success.  SAA, § 5 (providing for split of the Recovery).[10]

With these elements satisfied, it is abundantly clear that Righthaven has violated the public policy against champerty through this action, and against barratry (the continuing practice of champerty) in its series of litigations.  For this additional reason, as the purported assignment is part of a champertous transaction, any transfer of the right to sue is void, and therefore Righthaven has no right to bring this suit.

## IV.    RIGHTHAVEN'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE

### A.    Righthaven's Claims Must Be Dismissed

Righthaven cannot avoid dismissal by changing jurisdictional facts to create standing after the Complaint was filed.  As Chief Judge Hunt explained, the

> "amendment cannot create standing because ' "[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed.*" '*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)) (emphasis in *Lujan*).  Although a court may allow parties to amend defective allegations of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

---

[10] "Recovery" is broadly defined as "including, without limitation, all Sums paid by way of damages, costs and attorneys fees with respect to or arising from an Infringement Action," as well as settlement proceeds. SAA, Schedule 1 – Definitions at 14.

jurisdiction, it may not allow the parties to amend the facts themselves. *Newman-Green*, 290 U.S. at 830."

*Democratic Underground*, 2011 WL 2378186, *4. Thus, even if the Amendment had cured the defects in the original SAA, which it did not, Righthaven cannot use the Amendment to create standing that did not exist when the complaint was filed. *Id.* ("Righthaven and Stephens Media attempt to impermissibly amend the facts to manufacture standing. Therefore, the Court shall not consider the amended language of the SAA, but the actual transaction that took place as of the time the complaint was filed.").[11] Likewise Righthaven cannot use the possibility of further amendments to avoid dismissal, since those could not retroactively change the facts in place when the action was filed.

Righthaven falsely accuses Democratic Underground of "cleverly" seeking a result under which "no party has standing to bring suit against the infringer here," and as seeking such a ruling to escape its circumstances as an "accused infringer." Omnibus Reply at 8. This mischaracterization is disappointing.[12] Righthaven fails to inform the Court that Democratic Underground has consistently asserted that Stephens Media is the real-party-in-interest; that Democratic Underground joined Stephens Media as counterclaim defendant in a request for a declaratory judgment that its conduct was entirely non-infringing; and that Chief Judge Hunt agreed with Democratic Underground that "[i]f Stephens Media wishes to assert claims against Democratic Underground, it may do so separately." *Democratic Underground*, *supra* at note 6. Democratic Underground has been litigating to achieve a declaration of its innocence against the actual rights holder, not to avoid a decision. *See Democratic Underground*, Dkt. 94 at 2 (Chief Judge Hunt noting that Righthaven is "now offended when someone has turned the tables on them insisting on a judgment in their favor rather than a simple dismissal of the lawsuit").

---

[12] While Righthaven may disagree with *amici*, it should not dissemble in its quest to avoid dismissal. *See generally Democratic Underground*, at *9 ("As shown in the preceding pages, the Court believes that Righthaven has made multiple inaccurate and likely dishonest statements to the Court.").

[12] While Righthaven may disagree with *amici*, it should not dissemble in its quest to avoid dismissal. *See generally Democratic Underground*, at *9 ("As shown in the preceding pages, the Court believes that Righthaven has made multiple inaccurate and likely dishonest statements to the Court.").

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ver

sion: 6

1    In all events, even if Righthaven's tangled web of contracts and amendments had ensnared

2    it in uncertainty as to Stephens Media's ability to bring its own claim today, that is both a

3    problem of those parties' own making and one easily cured.  Even under the Amendment,

4    Stephens Media may "[a]t any time, in its sole discretion," reclaim any and all right that

5    Righthaven ever held in the copyright for the nominal $10 charge.  Amendment §8.1.  Nothing

6    keeps it from doing so today, obtaining indisputable title, and rendering dismissal of Righthaven's

7    claim all the less problematic.

8         **B.**        **Righthaven's Claim Should Be Dismissed With Prejudice**

9         Righthaven has conceded, as it must, that ownership of a valid copyright is not only a

10   prerequisite for standing but also an essential element of a copyright claim.  *See e.g.*, *Righthaven*

11   *v. Democratic Underground*, Case 2:10-cv-01356-RLH, Dkt. 36, at 16:10-14 ("The law is

12   venerable that to prove copyright infringement, one must demonstrate: '(1) ownership of the

13   allegedly infringed work and...'") (citations omitted).  The evidence before the Court shows

14   that Righthaven does not own the copyright.  Accordingly, a dismissal here is not merely a

15   procedural one.  It effectuates a simultaneous adjudication of the essential element of

16   Righthaven's claim.  Because the sham nature of Righthaven's assignment defeats its claims

17   based *both* on lack of standing under the Copyright Act and lack of the essential element of

18   ownership, the adjudication acts as a resolution on the merits requiring dismissal with prejudice.

19   *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (holding when "[t]he

20   question of jurisdiction and the merits of [the] action are intertwined," dismissal for lack of

21   subject matter jurisdiction is improper, and accordingly reviewing the district court's order "not

22   as a dismissal for lack of subject matter jurisdiction but rather as a grant of summary judgment on

23   the merits[.]"); *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold &*

24   *Easement in the Cloverly Subterranean, Geological Formation,* 524 F.3d 1090, 1094 (9th Cir.

25   2008) ("such an intertwining of jurisdiction and merits may occur when a party's right to

26   recovery rests upon the interpretation of a federal statute that provides both the basis for the

27   court's subject matter jurisdiction and the plaintiff's claim for relief."); *Lerner v. Fleet Bank,* 318

28   F.3d 113, 116-17 (2d Cir.2003) (holding that lack of standing did not divest the district court of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

AMICUS CURIAE DU'S REPLY IN
SUPPORT OF AMICUS BRIEF
CASE NO. 2:10-cv-01575-JCM (PAL)

1   jurisdiction over the action, because standing was sufficiently intertwined with the merits of the

2   claim, and accordingly affirming the district court's granting of defendant's motion to dismiss

3   plaintiffs' civil RICO claim with prejudice not for lack of subject matter jurisdiction, but for

4   failure to state a claim).

5          The cases cited by Righthaven in a footnote do not support dismissal without prejudice

6   here.  *See, e.g., HT Litig. Trust v. Jess Rae Booth*, No. 07-56381, 2008 WL 5227300, at * 1

7   (9th Cir. Dec. 16 2008) (dismissing *with prejudice*).  In *Harris v. Amgen, Inc.*, 573 F.3d 728 (9th

8   Cir. 2009), the Ninth Circuit found that the plaintiff actually *did* have constitutional and statutory

9   standing; it allowed amendment so that the plaintiff with standing could name the proper

10  defendants—not so that a party without standing could attempt to create same.

11         The Federal Circuit's decision in *Univ. of Pittsburgh v. Varian Med. Sys.*, 569 F.3d 1328

12  (Fed. Cir. 2009), also ultimately supports *amici*'s position.  There, after reversing a determination

13  that the plaintiff was the sole owner of the patent, the court sensibly allowed the joinder as an

14  additional plaintiff of the very party it found to be the co-owner.  Of greater import, in its analysis

15  the *University of Pittsburgh* court considered and distinguished another case in which it affirmed

16  dismissal *with prejudice*:  *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971 (Fed. Cir. 2005).

17  In *Sicom*, dismissal with prejudice was appropriate because the suit "'was Sicom's second suit

18  that was dismissed for lack of standing' and because 'Sicom already had a chance to cure the

19  defect and failed.'"  *Univ. of Pittsburgh*, 569 F.3d at 1333 (quoting *Sicom Sys., Ltd.*, 427 F.3d at

20  980)).  By contrast, because the *University of Pittsburgh* plaintiff had had no prior chances to

21  cure, and clearly *could* cure the defect, dismissal *without* prejudice was justified there.  *Id.*

22  Righthaven's claims here are like those in *Sicom*:  Righthaven has already had its chance to cure.

23  It tried, but failed, through the May 9 Amendment, which instead of actually transferring

24  ownership continues the same effort to vest the lawsuit in Righthaven but control in Stephens

25  Media.  Even in their motion for leave to amend, Dkt. 45, no facts showing a cure of the defect

26

27

28

AMICUS CURIAE DU'S REPLY IN
SUPPORT OF AMICUS BRIEF                          18                    CASE NO. 2:10-cv-01575-JCM (PAL)

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  have been provided to the court, and so that motion should be denied, and no further leave to

2  amend is required. [13]

3      With considerable chutzpah, Righthaven asserts that it and Stephens Media "are

4  considering further amending their agreements in order to prevent other courts from erroneously

5  concluding that Righthaven lacks standing."  Omnibus Response n.1.  Far from justifying further

6  opportunity to amend, this threat shows exactly why dismissal with prejudice is necessary.

7  Apparently Righthaven believes it may continue repeatedly to amend its agreements and file

8  additional complaints, hoping to eventually massage the fact into a grant to Righthaven of the

9  minimum set of rights sufficient to pass muster while, at the same time, maintaining true control

10  in Stephens Media.  For example, will the next amendment contend that Righthaven's ownership

11  is genuine by raising the Amendment's $10 fee that Stephens Media must pay to exercise its right

12  to preclude all other exploitation by Righthaven to $100, or even $1000?  Will the next

13  amendment claim it is an authentic grant by purporting to allow Righthaven to "oppose" Stephens

14  Media's demand for an injunction against Righthaven's exploitation of the copyright?  Nothing

15  about this process can undo the sham nature of this transaction, even as it requires numerous

16  courts in hundreds of cases to consider those amendments.[14]

17      This Court need not indulge Righthaven's request for opportunity to amend again or sue

18  again.  Having first misled the Court as to the nature of its ownership interest, and then

19  orchestrated a sham "Clarification and Amendment" designed to preserve Stephens Media's

20  ongoing control with only cosmetic changes, Righthaven has been afforded far more than fair

---

[13] Righthaven's pending request for leave to amend (Dkt. 45) should be denied as futile. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008) (affirming district court's denial of plaintiff's motion for leave to amend where amendment would be futile).  That motion proposes an amended complaint that specifically invokes the May 9 Amendment as filed with the Court. *See* Dkt. 45-1 Exh. 1 ¶21 (citing Amendment filed in Dkt. 26 as Exh. 3).  Thus, the specific facts sought to be added in the amended complaint—*i.e.*, the terms of the May 9 Amendment —are already before the Court, having been presented by the declarations Righthaven previously submitted and fully briefed by Righthaven in its Omnibus Response.  Because the amended complaint is based on the May 9 Amendment, it would face dismissal on the identical grounds already being addressed by the Court in this motion, and there is no cause to require duplicative briefing after an amended pleading is filed.  Moreover, the amended complaint is futile because it is based on a theory that, as explained above, is barred by collateral estoppel after the judgment in *Hoehn*.

[14] Righthaven's CEO Steve Gibson and Stephens Media's General Counsel Mark Hinueber have both provided declarations stating that their intent is to provide Righthaven with the right to sue, while keeping all other aspects of ownership with Stephens Media. *See* Gibson Decl. (Dkt. 26); Hinueber Decl. (Dkt. 27).  No matter how many times they amend the SAA, if it continues to convey the right to sue, while Stephens Media keeps all the other rights, its problems will persist.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   latitude in this Court.  Its claims should be dismissed with prejudice, there being no indication of

2   any legal basis on which they may continue.

3   Dated:     June 27, 2011                          Respectfully,

4                                                     FENWICK & WEST LLP

5

6                                                     By:   /s/ Laurence F. Pulgram

7                                                           Laurence F. Pulgram

8                                                           Attorneys for Amicus Curiae
                                                            DEMOCRATIC UNDERGROUND, LLC
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Ver

sion: 6

AMICUS CURIAE DU'S REPLY IN
SUPPORT OF AMICUS BRIEF                    20                CASE NO. 2:10-cv-01575-JCM (PAL)