LAURENCE F. PULGRAM (CSB No. 115163)
lpulgram@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:      415.281.1350

CHAD BOWERS (NV State Bar No. 7283)
bowers@lawyer.com
LAW OFFICES OF CHAD A. BOWERS
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone:     (702) 457-1001

Attorneys for Amicus Curiae
Democratic Underground, LLC

[Additional Parties Appear on Signature Page]

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> PAHRUMP LIFE, an entity of unknown origin and nature; MAREN SCACCIA , an individual; and MICHAEL SCACCIA, an individual, <br><br> Defendants. | Case No. 2:10-cv-01575-JCM (PAL) <br><br> **AMICI RESPONSE TO PLAINTIFF RIGHTHAVEN LLC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT [DKT. NO. 57], AND RESPONSE TO COURT ORDER TO SHOW CAUSE [DKT. NO. 21]** |

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## **TABLE OF CONTENTS**

2

**Page**

3  INTRODUCTION ............................................................................................................. 1

4  ARGUMENT ................................................................................................................... 4

5  I.  THE "RESTATED" SAA, LIKE THE PRIOR "CLARIFICATION," CANNOT
       CURE RIGHTHAVEN'S LACK OF STANDING, AND RIGHTHAVEN IS

6     PRECLUDED FROM ARGUING SO. ................................................................. 4

7        A.  Standing is Determined by the Facts at the Commencement of the Action. .......... 4

8        B.  Righthaven Is Barred by the Doctrine of Issue Preclusion from Arguing
              that any Amendment to the SAA Could Cure its Lack of Standing in this

9             Action ..................................................................................................................... 6

10  II.  RIGHTHAVEN CANNOT, THROUGH A COLLUSIVE WINK AND A NOD
          WITH STEPHENS MEDIA, TRANSMUTE AN AGENCY RELATIONSHIP

11       INTO COPYRIGHT OWNERSHIP. ..................................................................... 9

12        A.  The Restated SAA Cannot Mask the True Role of Righthaven as a Mere
               Hired Gun. ............................................................................................................. 9

13
          B.  The Restated SAA Constitutes a Fraud on the Courts and Should be

14            Rejected .............................................................................................................. 13

15  III.  THE RESTATED SAA IS ILLEGAL AND UNENFORCEABLE AND CANNOT
           FORM THE BASIS FOR A CLAIM ................................................................. 17

16
          A.  The Restated SAA is Champertous, Against Public Policy, and

17            Unenforceable. ..................................................................................................... 17

18        B.  The Restated SAA Amounts to an Illegal Attempt to Practice Law Without
               a License .............................................................................................................. 18

19
    IV.  RIGHTHAVEN'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED

20        AS FUTILE AND ABUSIVE. .......................................................................... 19

21  CONCLUSION ............................................................................................................ 20

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Plastic Equip., Inc. v. Toytrackerz, LLC*,
2010 WL 1284471 (D. Kan. Mar. 31, 2010)................................................................. 8

*Appling v. State Farm Mut. Auto. Ins. Co.*,
340 F.3d 769 (9th Cir. 2003)....................................................................................... 13

*Bay County Bar Ass'n. v. Finance Sys., Inc.*,
345 Mich. 434 (1956).................................................................................................. 19

*Clements v. Airport Auth. of Washoe County*,
69 F.3d 321 (9th Cir. 1995).................................................................................... 1, 7

*Del Webb Communities, Inc. v. Partington*,
2009 WL 3053709 (D. Nev. Sept. 18, 2009) .............................................................. 17

*Del Webb Communities, Inc. v. Partington*,
Case No. 10-15975 (9th Cir. July 20, 2011) .............................................................. 17

*Disimone v. Browner*,
121 F.3d 1262 (9th Cir. 1997)...................................................................................... 8

*England v. Doyle*,
281 F.2d 304 (9th Cir. 1960)....................................................................................... 13

*FM Indus., Inc. v. Citicorp Servs., Inc.*,
2008 WL 4722086 (N.D. Ill. Oct. 21, 2008).............................................................. 8

*Garcia v. Berkshire Life Ins. Co. of America*,
569 F. 3d 1174 (10th Cir. 2009).................................................................................. 13

*Green v. Ancora-Citronelle Corp.*,
577 F.2d 1380 (9th Cir. 1978)....................................................................................... 7

*Gruber v. Baker*,
20 Nev. 453, 23 P. 858 (Nev. 1890) ........................................................................... 17

*In re Levander*,
180 F.3d 1114 (9th Cir. 1999)...................................................................................... 13

*In re Repurchase Corp. (Repurchase Corp. v. Bodenstien)*,
2008 WL 4379035 (N.D. Ill. Mar. 24, 2008)............................................................. 8

*In re Westgate-California Corp. (Trone v. Smith)*,
642 F.2d 1174 (9th Cir. 1981)....................................................................................... 8

*Incline Energy, LLC v. Penna Group, LLC*,
2011 WL 1304710 (D. Nev. Apr. 1, 2011) ................................................................. 17

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Liberty Mut. Ins. Co. v. FAG Bearings Corp.*,
  335 F.3d 752 (8th Cir. 2003)..................................................................................... 8, 9

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................... 5

*Lum* v. *Stinnett*,
  87 Nev. 402 (Nev. 1971) ........................................................................................... 17

*Martin v. Morgan Drive Away, Inc.*,
  665 F.2d 598 (5th Cir. 1982) .................................................................................... 17

*Nafal v. Carter*,
  540 F. Supp. 2d 1128 (C.D. Cal. 2007) .................................................................... 12

*Newman-Green, Inc. v. Alfonzo-Larrain*,
  490 U.S. 826 (1989) .................................................................................................... 5

*Phoceene Sous-Marine S.A. v. U.S. Phosmarine, Inc.*,
  682 F.2d 802 (9th Cir. 1982)..................................................................................... 13

*Raylon, LLC v. EZ Tag Corp.*,
  Case No. 6:09-cv-00357-LED, Dkt. 115 at 5 (E.D. Tex. Mar. 9, 2011)................................ 15

*Righthaven, LLC v. Barham*,
  2011 WL 2473602 (D. Nev. June 22, 2011) ........................................................... 5, 6

*Righthaven, LLC v. Democratic Underground*,
  No. 2:10-cv-01356-RLH-GWF, 2011 WL 2378186 (D. Nev. June 14, 2011) ............... *passim*

*Righthaven, LLC v. DiBiase*,
  No. 2:10-cv-01343-RLH, 2011 WL 2473531 (D. Nev. June 22, 2011) ........................ *passim*

*Righthaven, LLC v. Dr. Shezad Malik Law Firm P.C.*,
  Case No. 2:10-cv-00636-RLH-RJJ, 2010 WL 3522372 (D. Nev. Sept. 2, 2010) ................... 2

*Righthaven, LLC v. Hoehn*,
  2:11-cv-00050-PMP, 2011 WL 2441020 (D. Nev. June 20, 2011) ............................ *passim*

*Righthaven, LLC v. Majorwager.com, Inc.*,
  Case No. 2:10-cv-00484-GMN-LRL, 2010 WL 4386499
  (D. Nev. Oct. 28, 2010) ................................................................................................ 2

*Righthaven, LLC v. Mostofi*,
  No 2:10-cv-01066-KJD-GWF, 2011 WL 2746315
  (D. Nev. July 13, 2011) ........................................................................................ *passim*

*Righthaven, LLC v. Vote For The Worst, LLC, et al.*,
  Case No. 2:10-cv-01045-KJD-GWF (D. Nev. Mar. 30, 2011)............................................ 2

*Saul v. United States*,
  928 F.2d 829 (9th Cir. 1991)..................................................................................... 19

*Schwartz v. Eliades*,
  113 Nev. 586 (Nev. 1997)................................................................................... 17, 18

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Silvers v. Sony Pictures Entm't., Inc.*,
   402 F.3d 881 (9th Cir. 2005)................................................................................... 6

*Spain v. EMC Mortgage Co.*,
   2009 WL 2590100 (D. Ariz. Aug. 20, 2009) .......................................................... 8

*Tripati v. Henman*,
   857 F.2d 1366 (9th Cir. 1988)................................................................................. 7

*United States v. Mendoza*,
   464 U.S. 154,158 (1984) ......................................................................................... 7

*Wyle v. R.J. Reynolds Indus., Inc.*,
   709 F.2d 585 (9th Cir. 1983)............................................................................ 13, 16

## **STATUTES**

17 U.S.C. § 101 .................................................................................................................. 12

## **RULES**

Fed. R. Civ. P. 26 ............................................................................................................... 15

Fed. R. Civ. P. 59 ................................................................................................................. 8

Fed. R. Civ. P. 60 ................................................................................................................. 8

## **OTHER AUTHORITIES**

William Patry, 2 PATRY ON COPYRIGHT, § 5:136 at 5-293 (2009) .......................... 17, 18

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**INTRODUCTION**

Righthaven LLC ("Righthaven") has, with a third revision of its Strategic Alliance Agreement with Stephens Media LLC ("Stephens Media"), attempted again to mask its lack of an adequate interest to bring claims as an agent for enforcement of others' copyrights.  But this third time is no charm.  This Court has repeatedly determined that Righthaven lacks standing and that Stephens Media was the real party in interest with respect to the hundreds of copyright actions Righthaven has filed in this district.  This Court has rejected the original Strategic Alliance Agreement (Dkt. 26 Exh. 2) ("SAA") as "disingenuous," and noted that the "Clarification" (*Id.* Exh. 3) was no such thing, but rather an effort to cloak an unlawful delegation of the right to sue through cosmetic changes.  Yet Righthaven still refuses to recognize that its right to commence these actions has been decided, and that its rights cannot be resurrected by any amount of further "clarification" or "restatement" of agreements purporting—after this Court's deliberations—to redefine retroactively Righthaven's ownership rights for the last year and a half.

While Righthaven doubtless is disappointed, the reality is that *Righthaven, LLC v. Hoehn,* 2:11-cv-00050-PMP, 2011 WL 2441020 (D. Nev. June 20, 2011), *Righthaven, LLC v. DiBiase*, No. 2:10-cv-01343-RLH, 2011 WL 2473531 (D. Nev. June 22, 2011) and *Righthaven, LLC v. Mostofi*, No 2:10-cv-01066-KJD-GWF, 2011 WL 2746315 (D. Nev. July 13, 2011), have each been reduced to a judgment.  Each therefore subjects Righthaven to issue preclusion as to its standing to sue on the SAA, and as to its inability to cure its lack of standing by amendment.  *See Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 330 (9th Cir. 1995) (issue preclusion—formerly known as collateral estoppel—bars "the re-litigation of any issue that has been actually litigated and necessarily decided").  Moreover, the June 14 Order in *Righthaven, LLC v. Democratic Underground*, No. 2:10-cv-01356-RLH-GWF, 2011 WL 2378186 (D. Nev. June 14, 2011)—holding that Righthaven's subsequent amendments could not resurrect its claim—was specifically adopted as the reasoning for the dismissal of *DiBiase*.  The *Democratic Underground* decision thus further precludes relitigation of these issues.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Accordingly, as a starting point for any analysis, amici Democratic Underground, Citizens

2   against Litigation Abuse, and Professor Jason Shultz note that following issues have been

3   conclusively determined and are not in dispute:

4   • "[T]he SAA in its original form qualifies the Assignment with restrictions or
      rights of reversion, such that in the end, Righthaven is not left with ownership

5      of any exclusive rights." *Hoehn*, 2011 WL 2441020, at *5.

6   • "[T]he SAA prevents Plaintiff from obtaining any of the exclusive rights
      necessary to maintain standing in a copyright infringement action." *Mostofi*,

7      2011 WL 2746315, at *5.

8   • "Righthaven and Stephens Media went to great lengths in the SAA to be sure
      that Righthaven did not obtain any rights other than the bare right to sue.

9      Thus, the Court finds that the plain language of the SAA conveys the intent to
      deprive Righthaven of any right, save for the right to sue alleged infringers and

10     profit from such lawsuits." *Democratic Underground*, 2011 WL 2378186, at
      *4.

11
    • "Righthaven and Stephens Media may have wanted Righthaven to be able to
12     sue, but the SAA was anything but silent in making sure that Stephens Media
      retained complete control over the Work rather than actually effectuate the

13     necessary transfer of rights. The entirety of the SAA is concerned with making
      sure that Righthaven did not obtain any rights other than the right to sue." *Id.*

14     at *5.

15  • "[T]he SAA makes abundantly clear [that] Stephens Media *retained* the
      exclusive rights, never actually transferring them to Righthaven." *Id.* at *6

16     (emphasis original).

17  • The prior orders on motions to dismiss in this district that found standing based
      upon the assignment alone "were tainted by Righthaven's failure to disclose the

18     SAA and Stephens Media's true interest." *Id.* at *6.[1]

19  • The May 9 Clarification "cannot create standing because "'[t]he existence of
      federal jurisdiction ordinarily depends on the facts as they exist when the

20     complaint is filed.'" 2011 WL 2746315, at *3; *see also Democratic
      Underground*, 2011 WL 2378186, at *4; *Hoehn*, 2011 WL 2441020, at *6.

21  • "Righthaven and Stephens Media attempt to impermissibly amend the facts to
22     manufacture standing. Therefore, the Court shall not consider the amended
      language of the SAA, but the actual transaction that took place as of the time

23     the complaint was filed." *Democratic Underground*, 2011 WL 2378186, at *4;
      *Mostofi*, 2011 WL 2746315, at *3.

24  • The "May 9, 2011 Clarification ... does not provide Righthaven with any
25     exclusive rights necessary to bring suit." *Hoehn*, 2011 WL 2441020, at *6.

26

27  _____
    [1] The "tainted" decisions are *Righthaven, LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-01045-KJD-
    GWF (D. Nev. Mar. 30, 2011) (Dkt. 28); *Righthaven, LLC v. Majorwager.com, Inc.*, Case No. 2:10-cv-00484-GMN-
28  LRL, 2010 WL 4386499 (D. Nev. Oct. 28, 2010); *Righthaven, LLC v. Dr. Shezad Malik Law Firm P.C.*, Case No.
    2:10-cv-00636-RLH-RJJ, 2010 WL 3522372 (D. Nev. Sept. 2, 2010).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Given these determinations, the simple answer to this Court's order to show cause is that

2    dismissal of Righthaven's present actions is mandated by the doctrine of issue preclusion

3    (collateral estoppel).  Righthaven cannot relitigate the conclusions of Judge Hunt, Judge Pro and

4    Judge Dawson that the SAA did not provide standing and that this failing cannot be cured after

5    the fact.  Judgment should be entered now in the current cases, and the defendants should proceed

6    with any request for fees and costs.

7    The slightly more complicated issue is whether Righthaven is precluded not only from

8    continuing with its present actions, but also from filing new ones attempting the same claims

9    against the same defendants, but based on repackaged documentation.  The answer is that

10   Righthaven may not relitigate these issues in subsequent cases, and this Court should so hold to

11   stop a senseless proliferation of lawsuits that require defendants to answer the same tired

12   arguments.

13   Righthaven continues to claim that it and Stephens Media may avoid these adverse rulings

14   by collusively re-characterizing its agency relationship in as many contradictory and inconsistent

15   ways as they want – including describing their relationship and intentions as exactly the opposite

16   of what this Court found to be the truth.  Nonsense.  These freewheeling re-characterizations,

17   regardless of the realities of Righthaven and Stephens Media's relationship, show how superficial

18   their entire "assignment" construct is.  It would make a mockery of this Court's process to adopt

19   the pretense that Righthaven now is suddenly in the business of owning and licensing exclusive

20   rights in copyrights, rather than merely suing on them, when it has done, and is empowered to do,

21   nothing else.  This is especially true given Righthaven's established history of false representation

22   as to the nature of its relationship and Righthaven's authority.  Declaration of Clifford Webb,

23   attaching as Exh. 1 the transcript of Judge Hunts ruling at the July 14, 2011 sanctions hearing in

24   *Democratic Underground*  ("*DU* OSC Ruling") at 15 ("The representations about the relationship

25   and the right of Righthaven were misrepresentations.  They were misleading")[2].  Righthaven

26

27   _____
     [2] Righthaven was required by Judge Hunt's July 14th ruling on the Order to Show Cause in the *Democratic*
28   *Underground* matter to submit the transcript of that oral ruling in each case it has filed in this district.  *DU* OSC
     Ruling at 22.  Amici submit this copy of the transcript until such time as Righthaven complies with that order.

1   should not be allowed to perpetuate its fraud on the court by mischaracterizing its actual

2   relationship and intentions once again.

3       Independently, Righthaven's most recent "Restated SAA" could not change the inherently

4   unlawful nature of its relationship with Stephens Media, in either of two respects.  *See* Dkt. 57-1.

5   First, this Court has already held that it was Righthaven's intent *not* to receive any rights other

6   than the right to share in the proceeds of another's legal claims—a relationship that, by definition,

7   constitutes champerty, an illegal practice under Nevada law.  *Democratic Underground*, 2011

8   WL 2378186, at *3 ("In reality, Righthaven actually left the transaction with nothing more than a

9   fabrication since a copyright owner cannot assign a bare right to sue after *Silvers.* To approve of

10  such a transaction would require the Court to disregard the clear intent of the transaction and the

11  clear precedent set forth by the *en banc* Ninth Circuit in *Silvers*").  *Ex post facto* amendments

12  cannot obscure  the champertous nature of Righthaven's pursuit of Stephens Media's claims:

13  Righthaven's agreements and assignments with Stephens Media are therefore an illegal nullity

14  that can never form the basis for Righthaven to sue.

15      Second, as persuasively argued by Amicus Citizens against Litigation Abuse,

16  Righthaven's scheme constitutes the unlawful, unauthorized practice of law.  Indeed, Judge Hunt

17  expressed that conclusion in his detailed sanctioning Righthaven for intentionally misleading the

18  Court.  OSC Ruling at 14 (holding that Righthaven is nothing "but a law firm with a contingent

19  fee agreement masquerading as a company that's a party").  For this reason too, Righthaven's

20  agreements and assignments with Stephens Media would have to be disregarded, and its claims

21  dismissed—even assuming no Court had ever previously entered judgment against it.

22  Accordingly, Amici respectfully urge the Court to dismiss the instant action, and in doing so,

23  make clear that no subsequent action based on the SAA may be pursued by Righthaven.

24                              **ARGUMENT**

25  **I.    THE "RESTATED" SAA, LIKE THE PRIOR "CLARIFICATION," CANNOT
26         CURE RIGHTHAVEN'S LACK OF STANDING, AND RIGHTHAVEN IS
         PRECLUDED FROM ARGUING SO.**

27      **A.    Standing is Determined by the Facts at the Commencement of the Action.**

28  Righthaven's *seriatim* attempts to "clarify" or "restate" its original relationship in the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    hopes of eventually manufacturing the appearance of rights required under *Silvers*, apart from

2    being totally outside the spirit of *Silvers*' rule, cannot cure its lack of standing.  As this Court has

3    ruled on no less than five separate occasions, Righthaven cannot cure its lack of standing at the

4    initiation of this or any of its lawsuits by means of a purported *nunc pro tunc* amendment.  Dkt.

5    50 ("DU Reply") at 4-5; *Hoehn,* 2011 WL 2441020, at \*6; *Democratic Underground*, 2011 WL

6    2378186, at \*4 ("[h]owever, this amendment [referring to May 9 Clarification] cannot create

7    standing because "'[t]he existence of federal jurisdiction ordinarily depends on the facts as they

8    exist when the complaint is filed'") (emphasis in original) (*quoting Newman-Green, Inc. v.*

9    *Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)); *Mostofi*, 2011 WL 2746315 (same); *DiBiase*, 2011

10   WL 2473531, at \*1 (dismissing for lack of standing and incorporating the reasoning of both

11   *Hoehn* and *Democratic Underground*); *Righthaven, LLC v. Barham*, 2011 WL 2473602, at \*1 (D.

12   Nev. June 22, 2011) (dismissing for lack of standing and incorporating the reasoning of both

13   *Hoehn* and *Democratic Underground*).

14        Righthaven's inability to create jurisdiction and standing after the fact is, of course, no

15   less true with its third attempt, the July 7, 2011 Restated SAA, than it was with its second, the

16   May 9, 2011 Clarification.  As the above decisions have recognized, the existence of standing

17   depends on the jurisdictional facts as they exist at the time the complaint is filed.  *See Lujan v.*

18   *Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) (citing *quoting Newman-Green*, 490 U.S. at

19   830).  And while a deficient *allegation* of jurisdiction can be corrected, the *facts themselves*

20   cannot be changed.  Thus, while a litigant may be able to amend to correct a misstatement of their

21   domicile, it may not move to change that domicile to create jurisdiction.  *Newman-Green*, 490

22   U.S. at 830; *see also Democratic Underground*, 2011 WL 2378186, at \*4.[3]

23        Here, changing the facts is precisely what Righthaven and Stephens Media have attempted

24   to do—or, more appropriately, attempted to create the appearance of doing.  They have sought to

25   entirely reorder the rights actually granted in the SAA to Righthaven to, as they put it, "address

26   the concerns raised by the Court" (Dkt. 57 at 2), as if padding the record with more disingenuous

27

28   [3] As explained by Amicus Democratic Underground's Reply, none of the cases that Righthaven's relies upon for its
     ability to change the jurisdictional facts of this case midstream are either persuasive or controlling.  Reply at 5-12.

AMICI  RESPONSE TO SUPP. MEMO ISO            5            CASE NO. 2:10-cv-01575-JCM (PAL)
MFL AND OSC

disguises might cause *less* concern.   The Restated SAA pretends to create control in Righthaven, when in reality no such control exists.  It purports now to keep for Stephens Media only a "non-exclusive license" (Restated SAA ¶ 7.2), where the original SAA made clear that Stephens Media retained the exclusive license in all rights (SAA ¶ 7.2).  Similarly, the Restated SAA claims to dial back many of the extensive rights retained by Stephens Media under the terms of the original SAA, and Clarification.  *Compare* Restated SAA ¶ 3.3 to SAA ¶ 3.3 (purporting to remove Stephens Media's ability to control who Righthaven sues); Restated SAA ¶ 8 to SAA ¶ 8.2 (purporting to limit Stephens Media's right of reversion to an option to repurchase five years from the date of a copyright assignment); Restated SAA ¶ 9.3 to SAA ¶ 9.3 (claiming to limited Stephens Media's absolute right to encumbers assigned copyrights to only its ability to encumber those assets as part of its "overall funding" as an encumbrance of "all or substantially all" of Stephens Media's assets).

Even if genuine, this kind of revisionism could not manufacture jurisdiction or a valid copyright claim after the fact.  *Silvers* requires that Righthaven have possessed exclusive rights to exploit the copyright at issue here *at the time it filed suit.  See Silvers v. Sony Pictures Entm't., Inc.*, 402 F.3d 881, 890 (9th Cir. 2005) (en banc); *Democratic Underground*, 2011 WL 2378186, at *4; *Mostofi*, 2011 WL 2746315, at *2. It is indisputable that Righthaven did not have any such rights at that time, requiring dismissal for lack of standing.

**B.    Righthaven Is Barred by the Doctrine of Issue Preclusion from Arguing that any Amendment to the SAA Could Cure its Lack of Standing in this Action.**

Moreover, Righthaven is barred by the doctrine of issue preclusion from even arguing that it can cure its lack of standing by amendment.  Righthaven has repeatedly argued, and this Court has uniformly rejected, that a purported amendment of the SAA can retroactively cure Righthaven's lack of standing in this or any action.  *See Hoehn,* 2011 WL 2441020, at *6; *Democratic Underground*, 2011 WL 2378186, at *4; *DiBiase*, 2011 WL 2473531, at *1 (dismissing for lack of standing and incorporating the reasoning of both *Hoehn* and *Democratic Underground*); *Barham*, 2011 WL 2473602, at *1 (dismissing for lack of standing and incorporating the reasoning of both *Hoehn* and *Democratic Underground*); *Mostofi*, 2011 WL

2746315, at *5.  The *Hoehn*, *DiBiase*, and *Mostofi* dismissals for lack of standing have each since been reduced to judgments.  *Righthaven, LLC v. Hoehn,* No. 2:11-cv-00050-PMP-RJJ ("*Hoehn*")*,* Dkt. 30; (clerk's judgment); *Righthaven, LLC v. DiBiase*, No. 2:10-cv-01343-RLH-PAL, ("*DiBiase*") Dkt. 73; *Mostofi*, Dkt. 35 (judgment entered for Defendant Dean Mostofi and against Righthaven).

The doctrine of issue preclusion—formerly known as collateral estoppel—bars a party from relitigating issues actually and necessarily decided against them in previous cases. *Clements*, 69 F.3d at 330; *see also United States v. Mendoza*, 464 U.S. 154,158 n.4 (1984) ("Defensive use of  collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully."); *Green v. Ancora-Citronelle Corp.,* 577 F.2d 1380, 1383-1384 (9th Cir. 1978) (recognizing that non-party to original action may rely on issue preclusion to bar relitigation of issues actually and necessarily decided against a party).  This is true, even where, as here, the defendant seeking to rely on the doctrine of issue preclusion was not a party to the original action (*see Green,* 577 F.2d at 1383-1384), or if Righthaven seeks to appeal all the judgments at issue.[4]  *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) ("The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal . . . . To deny preclusion in these circumstances would lead to an absurd result:  Litigants would be able to refile identical cases while appeals are pending, enmeshing their opponents and the court system in tangles of duplicative litigation.") (citations omitted).

In each of its above-cited cases, Righthaven argued extensively that an amendment to the original SAA could cure Righthaven's lack of standing under the original SAA at the time it filed its complaint.  *See, e.g., Hoehn*, Dkt. 23; *DiBiase*, Dkt. 55; *Mostofi*, Dkt. 29.  In each case, the Court considered and rejected this possibility.  *See, e.g., Hoehn,* 2011 WL 2441020, at *6; *Democratic Underground*, 2011 WL 2378186, at *4 (incorporated by reference into *DiBiase*); *Mostofi*, 2011 WL 2746315, at *3.  That the amendment at issue in those cases was the Clarification and not the newly minted Restated SAA gives Righthaven no cover to continue

Fenwick & West LLP
Attorneys at Law
San Francisco

[4] Righthaven has filed a notice of appeal in *Hoehn*. *Hoehn*, Dkt. 33.

arguing this rejected point.  Whether Righthaven relied upon the Clarification or Restated SAA is not a legally material fact for these holdings.  *Disimone v. Browner*, 121 F.3d 1262, 1267-1268 (9th Cir. 1997) (adopting the view of the Restatement of Judgments that factual identity is not required).  Righthaven cannot continue to challenge these adjudications, forcing each litigant to incur significant expense to beat back Righthaven's rejected theories.[5]

Moreover, Righthaven is also barred by issue preclusion from bringing any new suit against these Defendants claiming standing on the basis of the subsequently created Restated SAA.  A final judgment is a conclusive determination of the issues.  Just as a party cannot manufacture new evidence to avoid a final judgment under Rule 60 or seek a new trial under Rule 59, a party cannot use newly created evidence to avoid the preclusive effect of a previous judgment in a new suit in that same context.  *See FM Indus., Inc. v. Citicorp Servs., Inc.*, 2008 WL 4722086, at *1 (N.D. Ill. Oct. 21, 2008) (subsequent copyright assignment "newly created for the purpose of litigation" not the type of newly discovered evidence that could warrant relief from judgment under Rule 60); *accord American Plastic Equip., Inc. v. Toytrackerz, LLC*, 2010 WL 1284471 (D. Kan. Mar. 31, 2010); *see also Spain v. EMC Mortgage Co.*, 2009 WL 2590100, at *5 (D. Ariz. Aug. 20, 2009) (holding that a "corrected" warranty deed was not "newly discovered evidence" and did not warrant reconsideration of a judgment that the plaintiff lacked standing); *In re Repurchase Corp. (Repurchase Corp. v. Bodenstien)*, 2008 WL 4379035, at *9 (N.D. Ill. Mar. 24, 2008) (court's refusal to consider newly created merger agreement in Chapter 11 bankruptcy proceeding under Rule 59 upheld as "[n]ewly created or prepared evidence does not necessarily correlate to newly discovered evidence, the absence of which is excusable").

Issue preclusion applies not merely to the precise issues litigated by a party, but also to "all arguments and evidence that could be presented to resolve the issue."  *See, e.g., Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 762 (8th Cir. 2003).  While the courts will at times allow "newly discovered" evidence to avoid the preclusive effect of a judgment in a subsequent

_____

[5] That the *Hoehn* court, for instance, had an additional and independent basis upon which to grant judgment for the defendant also does not deprive the judgment of its preclusive effect. *In re Westgate-California Corp. (Trone v. Smith)*, 642 F.2d 1174 (9th Cir. 1981) (recognizing that a judgment based on multiple independent theories is necessarily decided upon each such theory for the purposes of issue preclusion).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    suit, this is only where it was not absent from the previous case by the party's own fault.  *Id*.

2    Here we are dealing not with "newly discovered" evidence, but with *newly created* evidence.

3    Such evidence is categorically different from newly discovered evidence, as recognized by *FM*

4    *Industries* and *American Plastic Equipment*.  It cannot form the basis for relief from the

5    preclusive effect of a determination that Righthaven has no standing to pursue its claim against

6    the Defendants, here.

7    **II.    RIGHTHAVEN CANNOT, THROUGH A COLLUSIVE WINK AND A NOD**
         **WITH STEPHENS MEDIA, TRANSMUTE AN AGENCY RELATIONSHIP INTO**
8        **COPYRIGHT OWNERSHIP.**

9         **A.    The Restated SAA Cannot Mask the True Role of Righthaven as a Mere**
                **Hired Gun.**
10

11        Even were Righthaven theoretically able to cure its standing defect after the fact, which it

12   legally cannot, its course of conduct with Stephens Media overwhelms any possible argument that

13   revisionist documentation is sufficient to comply with *Silvers*.  Plaintiff's repapering of its deal

14   with its 50% owner to assert status as an owner of its owner's copyright, rather than as a hired

15   gun, gets it nowhere.

16        For over a year and a half, Righthaven has operated purely as the agent of Stephens

17   Media.  *See Democratic Underground*, 2011 WL 2378186, at *7 (noting agency relationship).  In

18   addition to having to share 50% of all proceeds with Stephens Media, the remaining 50% flows

19   into a company in which Stephens Media's affiliate, SI Content Monitor, owns 50% of the

20   company.  Righthaven Operating Agreement ("RHOA," Dkt 32-2, Exh. 1), Exh. 18-1; SSA § 2

21   (providing that Righthaven must be owned by Stephens Media affiliate controlled by the same

22   entities that control Stephens Media).  Righthaven was limited by the original SAA, then the

23   Clarification, as well as by its own Operating Agreement to bringing suits for infringement at

24   Stephens Media's direction and under Stephens Media's control.  *See Democratic Underground*,

25   2011 WL 2378186 at *6; *Hoehn*, 2011 WL 2441020, at *6.  The RHOA defines Righthaven's

26   purpose as to obtain "a limited, revocable assignment (with license-back) of copyrights from third

27   Persons in order to enable the Company to recover damages associated with Identified

28   Infringements."  RHOA § 3.2(c).  Righthaven was never intended to exploit any purportedly

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

assigned copyrights other than through litigation.  The RHOA explicitly states that an assignor, like Stephens Media, not Righthaven, "would ultimately enjoy the copyright registration upon revocation of the assignment."  RHOA, § 3.2(d).

Even the Restated SAA provides in no uncertain terms that it was created because this Court "held that the SAA and Amendment were insufficient to transfer sufficient copyright ownership to Righthaven such that it had *standing to sue* for infringement."  Restated SAA at 1 (emphasis added).  This third rewriting of the SAA, by its terms, was not motivated by a desire to actually empower Righthaven to do anything other than sue; rather, it was motivated by a desire to provide a patina for a claim of adequacy under *Silvers*.  As Righthaven's own witness declared, (Dkt. 27), the parties' intent is to preserve "Stephens Media's ability to continue to display or otherwise use the assigned content through the grant of a license from Righthaven."  Hinueber Decl. (Dkt. 27) at ¶ 6; *see also* Gibson Decl. (Dkt. 26) at ¶ 13.  In short, Stephens Media wants to maintain its ownership, as if the SAA did not change a thing but the right to sue.

The Restated SAA is just another attempt by contract to accomplish this illegal objective. Most tellingly, the fundamental premise of the Restated SAA is one this Court has already found to be false.  It recites that "the intent of the Parties in entering in the SAA and Amendment was to convey all ownership rights in and to any identified Work to Righthaven . . . ."  Restated SAA, at 1; *see also id.* § 8 (incorporating recitals as substantive terms).  Yet this Court has already found that "the plain language of the SAA conveys the intent to deprive Righthaven of any right, save for the right to sue alleged infringers and profit from such lawsuits."  *Democratic Underground*, 2011 WL 2378186, at *4, *adopted by DiBiase*, 2011 WL 2473531, at *1.  Righthaven and Stephens Media cannot, by a wave of the pen, change their past intentions to the opposite of what this Court adjudicated, let alone comply with *Silvers* retroactively by doing so.

Just as transparently, the Restated SAA creates bizarre contradictions with its predecessors.  These range beyond the mutating grants of licenses back from Righthaven to Stephens Media—a grant first labeled "exclusive," then "clarified" to be "non-exclusive" but with Stephens Media retaining a veto over every subsequent license by Righthaven, and now, in the Restated SAA, purportedly erasing that veto.

As an initial matter, the Restated SAA shows that the now defunct Clarification was nothing more than a bad faith attempt to dig out of the deep well created by Righthaven's original non-disclosure of the SAA.  Take, for example, the Clarification's $1 per year licensing fee payable by Stephens Media.  Righthaven and Stephens Media inserted this provision into the Clarification, claiming it reflected the parties' intent all along.  *See e.g.* Righthaven Response to OSC (Dkt. 25) at 14 (claiming the Clarification's purpose was to "clarify and effectuate, to the extent not already accomplished, what has at all times been the intent of the parties."). Righthaven did not explain why the parties' supposed intent to have a license fee was overlooked in drafting the first version.  The likely explanation: this provision was a fiction, designed solely to gin up the subsequent argument that Righthaven was the "beneficial owner," and therefore entitled to sue.  *See* Righthaven Response to OSC (Dkt. 25) at 9.[6]  Given that the provision has now disappeared, and there is no evidence any royalties were ever paid, it is difficult to see it as anything other than an attempt to fool the Court into accepting a fiction and then issuing a decision premised on it.

Likewise, under the Clarification, the parties asserted that it "would cause Stephens Media irreparable harm" if Righthaven exploited any copyrighted work by granting even one license to which Stephens did not approve.  Clarification ¶ 7.2.  As Judge Pro summarized, under the Clarification, "Stephens Media may obtain injunctive relief against Righthaven to prevent such 'irreparable harm' and, pursuant to the Clarification, Righthaven has no right to oppose Stephens Media's request for injunctive relief."  *Hoehn*, 2011 WL 2441020, at *6.  Since Righthaven's entering into competing licenses could present a serious problem for Stephens Media's exploitation, Stephens Media was quite concerned and required a right to reject every license. But now Righthaven wants this Court to believe that Stephens Media will exercise no sway over Righthaven's rights to license anyone and everyone—that is, that Stephens Media would have no problem with such "irreparable" harm.  This is so even though the Amended SAA had such a strong provision and the original "SAA was anything but silent in making sure that Stephens

---

[6] As Amicus Democratic Underground explained, this argument was specious. *Democratic Underground,* Dkt. 107 at 8, n.5 (filed herein at Dkt. 32-2).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Media retained complete control over the Work rather than actually effectuate the necessary transfer of rights.  The entirety of the SAA is concerned with making sure that Righthaven did not obtain any rights other than the right to sue." *Democratic Underground*, 2011 WL 2378186, at *5.  That the parties to the SAA can so blithely recast their agreement, disregarding all the purported economics, to try to establish Righthaven's right to sue, overwhelmingly demonstrates that singular objective.

The Restated SAA is also replete with internal contradictions.  Despite the purported change in ownership of the copyright, Stephens Media may still maintain its funding securitization.  Restated SAA ¶ 5.  Apparently, Stephens Media has used its copyrights as collateral for financing, and needs this provision to avoid problems with its lenders.  However, the Restated SAA's contractual fancy dancing cannot avoid the fundamental problem: "a mortgage ... or any other ... hypothecation of a copyright" is a "transfer of copyright ownership." 17 U.S.C. § 101.  And this is something that a non-exclusive licensee cannot do, even with the licensors' permission.

Several other provisions of the original SAA remain curiously unchanged.   Pursuant to Section 9.4, Stephens Media still might settle an infringement action.  Section 10.2 still contemplates that a "Recovery Instrument" might be in Stephens Media's name.  Section 11 still acknowledges that Stephens Media may be liable for attorneys' fees for an infringement action. The unchanged provisions, of course, reflect the truth underlying the transaction: that Stephens Media is the true owner.

*Silvers* requires that the Court look beyond formal recitations to practical reality of the relationship between the parties.  *See Nafal v. Carter*, 540 F. Supp. 2d 1128, 1144 (C.D. Cal. 2007) (rejecting standing for a "glorified non-exclusive licensee" noting that court's cannot "ignore[] reality" in the application of Silvers nor accept "formalistic labels" attached by the parties).  No matter what Righthaven and Stephens Media attempt to conjure up with this or any "amendment," it cannot change the true fact, already determined by this Court, that Stephens Media is the real party in interest and the only party with any actual ability to exploit the assigned works.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**B.      The Restated SAA Constitutes a Fraud on the Courts and Should be Rejected**

Additionally, this Court should reject the Restated SAA, and dismiss Righthaven's suit,

because the Restated SAA furthers Righthaven's propagation of a fraud on the Court.  "A 'fraud

on the court' is 'an unconscionable plan or scheme which is designed to improperly influence the

court in its decision.'"  *Phoceene Sous-Marine S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 805

(9th Cir. 1982) (quoting *England v. Doyle,* 281 F.2d 304, 309 (9th Cir. 1960)).  In response to a

fraud upon the court, "the courts have inherent power to dismiss an action or enter a default

judgment to ensure the orderly administration of justice and the integrity of their orders." *Id*. at

806; *see also Wyle v. R.J. Reynolds Indus., Inc*., 709 F.2d 585, 589 (9th Cir. 1983) ("courts have

inherent power to dismiss an action when a party has willfully deceived the court and engaged in

conduct utterly inconsistent with the orderly administration of justice.").

Amici do not make this accusation lightly, recognizing that fraud on the court "embraces

only that species of fraud which does or attempts to, defile the court itself, or is a fraud

perpetrated by officers of the court." *Appling v. State Farm Mut. Auto. Ins. Co*., 340 F.3d 769,

780 (9th Cir. 2003) (citing *In re Levander,* 180 F.3d 1114, 1119 (9th Cir. 1999)). A party's failure

to disclose information, or even a party's perjury, does not ordinarily constitute fraud on the

court.  *Id*.  However, "when false evidence or testimony is provided under oath, knowingly and

with intent to deceive, a party commits a fraud on the court."  *Garcia v. Berkshire Life Ins. Co. of

America,* 569 F. 3d 1174, 1181-1182 (10th Cir. 2009) (distinguishing "deceptions [that]

concerned the issues in controversy, rather than an attempt to delay discovery or trial.")

That is what has happened here. Righthaven has gone well beyond a simple failure to

disclose Stephens Media's direct pecuniary interest in this and its hundreds of other cases in this

district or presenting "multiple inaccurate and likely dishonest statements to the Court."

*Democratic Underground*, 2011 WL 2378186, at *9; *see also Democratic Underground*,

Sanctions Minute Order (Dkt. 138) (holding that "Righthaven made intentional

misrepresentations to the Court").  As Judge Hunt noted, though one could "call it failure to

disclose . . .  a stronger term is justified."  OSC Ruling at 17.

1    Led by Steven Gibson (Righthaven's CEO and member of the Nevada bar), Righthaven

2    cooked up a scheme to defile the integrity of the Court by manufacturing a false "Assignment"

3    form to present to litigants and the courts.  Not only was it *designed* to mislead, it in fact *did*

4    mislead "the district judges of this district to believe that it was the true owner of the copyright in

5    the relevant news articles." *Democratic Underground*, 2011 WL 2378186, at *6. As a result, the

6    prior orders in this district finding standing based upon the assignment alone "were tainted by

7    Righthaven's failure to disclose the SAA and Stephens Media's true interest." *Id.* at *6; *see also*

8    Sanctions Minute Order (Dkt. 138) (holding that "there is a significant amount of evidence that

9    Righthaven made intentional misrepresentations to the Court and also engaged in a concerted

10   effort to hide Stephens Media's role in this litigation.").[7]

11   This Court has held that "the plain language of the SAA conveys the intent to deprive

12   Righthaven of any right, save for the right to sue alleged infringers and profit from such

13   lawsuits." *Id.* at *4.  Accordingly, as of January 2010 when they entered the SAA, the parties

14   intended to convey only the right to sue, in contravention of *Silvers*.  Righthaven has admitted,

15   however, that it knew about the *Silvers* rule.  It claimed that "the manner in which the [SAA] was

16   drafted accounted for *Silvers* and any other relevant legal authorities." *Righthaven, LLC* v.

17   *Democratic Underground*, No. 2:10-cv-01356-RLH-GWF, Dkt. 78 at 6.  The SAA was an

18   intentional effort to circumvent *Silvers'* clear mandate.

19   Rather than argue for a change in the law, Righthaven instead made, as Judge Hunt

20   determined, a "concerted effort to hide Stephens Media's role in this litigation" using both a

21   "consistent, repeated failure to identify Stephens Media as having any interest in" the lawsuits,

22   and making representations that were "intentionally untrue."  OSC Ruling at 15-16.  The

23   "Copyright Assignment" speaks vaguely of unidentified "monetary commitments and

24   commitment to services provided" (Dkt. 26 Exh. 1) rather than disclosing that Stephens Media

25   got 50% of the proceeds.  Moreover, the "Copyright Assignment" characterized itself as a transfer

26

27   _____

[7] Nevertheless, Righthaven continues to cite to these fraudulently obtained opinions.  *See e.g. Righthaven v.*
28   *Newsblaze*, Case No. 11-cv-00720-RCJ–GWF, Righthaven Response to Motion to Dismiss (Dkt. 13) at 11-12  (filed
     July 19, 2011).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

of "all copyrights requisite to have Righthaven recognized as the copyright owner," obscuring what rights were transferred—which turned out to be only the purported right to sue.

As explained by Amicus Democratic Underground elsewhere, "[t]he purpose of this design is obvious. In litigation, Righthaven could and did trot out a copy of the one-page Assignment, assert a presumption of ownership based on its fraudulently obtained copyright registration, and yet keep the true nature of the transaction secret." *Democratic Underground*, DU Reply to Response to Order to Show Cause re Sanctions (Dkt. 133) at 9; *see also DU* OSC Ruling at 15 (Righthaven "claimed that it had various exclusive rights when it knew that the ability to exercise those rights were retained exclusively by Stephens Media. It constantly and consistently refused to produce the [SAA] agreement.")

More insidiously, this design takes advantage of the economics of nuisance litigation. As Judge Hunt also recognized, "Righthaven and Stephens Media have attempted to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar." *Democratic Underground,* Order on Motion to Reconsider (Dkt. 94) at 2; *see also Righthaven, LLC v. Hill*, Case No. 1:11-cv-00211-JLK, Dkt. 16 at 2 (D. Colo. April 7, 2011) ("Plaintiff's wishes to the contrary, the courts are not merely tools for encouraging and exacting settlements from Defendants cowed by the potential costs of litigation and liability."); *see also Raylon, LLC v. EZ Tag Corp*., Case No. 6:09-cv-00357-LED, Dkt. 115 at 5 (E.D. Tex. Mar. 9, 2011) (lambasting "plaintiffs who file cases with extremely weak infringement positions in order to settle for less than the cost of defense and have no intention of taking the case to trial. Such a practice is an abuse of the judicial system and threatens the integrity of and respect for the courts.")

Righthaven knew that, before anyone could get to the SAA and challenge its scheme, the defendant would need to file a responsive pleading, hold a Rule 26 conference, exchange initial disclosures, issue requests for the production of documents, negotiate a protective order, meet and confer about Righthaven's refusal to provide documents, move to compel, win the motion to

1   compel and then move to dismiss.[8]  All the while, the defendants would need to fight against

2   Righthaven's efforts to "needlessly increase[] the costs of litigation."  *Democratic Underground*,

3   Sanctions Minute Order (Dkt. 138).  If *pro bono* attorneys had not stepped in to defend these

4   actions and uncover the SAA, Righthaven may well have continued its unlawful scheme

5   indefinitely.

6           Against this background, it becomes obvious that Restated SAA is not a candid expression

7   of its subscribers intent, but an after-the-fact attempt to create new fictional "evidence" that

8   simply says whatever Righthaven thinks will avoid the judgments against it.  The Restated SAA

9   seeks to perpetuate, in fact, to revitalize Righthaven's fraud by denying its victims the dismissals

10  of Righthaven's claims that they deserve.  It seeks to undo the rulings of this Court based on the

11  pretense that Stephens Media and Righthaven supposedly intended to convey all rights to

12  Righthaven from the beginning (*see* SAA Recitals)—an assertion 180 degrees from the truth

13  already settled by this Court's adjudication.  While Stephens Media and Righthaven continue to

14  behave as they always have, and the true nature of their transaction is not substantively changed,

15  they hope that they can keep massaging the wording of the SAA until they find the magic words

16  that turn *Silvers* into an empty letter.  This Court need not be an accomplice to that mission.

17          Accordingly, Righthaven's fraud on the courts provides an independent basis for

18  dismissal.  While "dismissal is so harsh a penalty [that] it should be imposed only in extreme

19  circumstances," *Wyle*, 709 F. 2d at 589, Righthaven's fraud upon this Court presents such a

20  circumstance.  Righthaven's fraud goes directly to the merits of the action:  the ownership of the

21  copyright at work.  Righthaven's "conduct demonstrated Righthaven's bad faith, wasted judicial

22  resources, and needlessly increased the costs of litigation."  *Democratic Underground*, Sanctions

23  Minute Order (Dkt. 138).  More importantly, Righthaven's Restated SAA continues its attempt to

24  subvert the integrity of the Courts, thus allowing this Court to dismiss with prejudice and to deny

25  leave to amend or commence a new action.

26

27

28

---

[8] For example, Defendant Tad. DiBiase filed a fee motion in *Righthaven v. DiBiase* showing that the costs of such an endeavor were close to $120,000, even after a substantial discount.  *DiBiase*, Motion for Attorneys Fees (Dkt. 78).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   THE RESTATED SAA IS ILLEGAL AND UNENFORCEABLE AND CANNOT FORM THE BASIS FOR A CLAIM.

Even if the Court were to accept (i) that Righthaven could cure its standing in this case after filing the complaint, and (ii) that the Restated SAA were sufficient under *Silvers* to create standing, the Restated SAA and Righthaven's assignments should still be rejected as illegal and unenforceable as a violation of both the prohibition against champerty and the unlicensed and unauthorized practice of law.

### A.   The Restated SAA is Champertous, Against Public Policy, and Unenforceable.

For the same reasons that the May 9 Clarification was unenforceable as unlawful champerty, so too is the Restated SAA.  DU Reply at 13-15; *see also* William Patry, 2 PATRY ON COPYRIGHT, § 5:136 at 5-293 (2009) (noting that in copyright litigation, "the successful assertion of [champerty] results in the voiding of the champertous agreement").

Nevada law recognizes that a champertous contract is void.[9] *Incline Energy, LLC v. Penna Group, LLC,* 2011 WL 1304710, at *4 n.2 (D. Nev. Apr. 1, 2011) ("in Nevada a champertous agreement is not only voidable, but void.") (citing *Schwartz v. Eliades*, 113 Nev. 586, 588 (Nev. 1997); *see also DiBiase,* Righthaven Response to Motion to Dismiss (Dkt. 55) at 17 (conceding "[t]he doctrine of champerty is recognized under Nevada law.").  Under Nevada law, "[t]o maintain the suit of another is now, and always has been, held to be unlawful, unless the person maintaining has some interest in the subject of the suit."  *Lum* v. *Stinnett*, 87 Nev. 402, 408 (Nev. 1971) (citing *Gruber v. Baker*, 20 Nev. 453, 23 P. 858, 862 (Nev. 1890)).  "A champertous agreement is one in which [i] a person without interest in another's litigation [ii] undertakes to carry on the litigation at his own expense, in whole or in part, [iii] in consideration of receiving, in the event of success, a part of the proceeds of the litigation." *Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598, 603 (5th Cir. 1982), *cert. dismissed*, 458 U.S. 1122 (1982) (quoted with

---

[9] Today, the Ninth Circuit issued its opinion in the appeal of *Del Webb Communities, Inc. v. Partington*, 2009 WL 3053709 (D. Nev. Sept. 18, 2009).  *See Del Webb Communities, Inc. v. Partington*, Case No. 10-15975 (9th Cir. July 20, 2011)(vacating in part the injunction issued by this Court).  On the facts before it, the Ninth Circuit "reject[ed] the district court's reliance on Nevada's common law of champerty to create a tort cause of action for which Del Webb could obtain relief."  *Id.*  No champerty tort claim is at issue in this case; instead the question is whether the champertous agreement is void.  Pursuant to the Nevada cases cited herein, it is.

1   approval by the Nevada Supreme Court in *Schwartz*, 113 Nev. at 588).  In the copyright context a

2   sham assignment designed to hide the parties' true intent to transfer only the right to sue

3   constitutes champerty.  *See* PATRY ON COPYRIGHT, *supra* at § 5:136.

4          Now, as ever, under the Restated SAA, Righthaven's conduct squarely fits this definition.

5   Just as before, Righthaven began with no genuine interest in any alleged infringement of the

6   *Review-Journal* article—no one disputes this point.  Further, Righthaven has undertaken Stephens

7   Media's copyright litigation at its own expense.  *See* SAA ¶ 6 ("Righthaven shall be responsible

8   for all Costs incurred in an Infringement Action.") (unchanged by Restated SAA).  Again, this is

9   undisputed.  Third, Righthaven has done so with the expectation of receiving a part of the

10  litigation proceeds in the event of success.  SAA ¶ 5 (providing Righthaven a 50% split of the

11  Recovery (less costs), unchanged by Restated SAA).  Likewise, undisputed.  As an unlawful and

12  champertous agreement under Nevada law, Righthaven and Stephens Media's Restated SAA is

13  void and cannot confer standing.

14         That the Restated SAA now purports to convey an ownership interest in the copyrights

15  free of some of the restrictions of its predecessor drafts does not change the champerty analysis.

16  The most recent amendment is merely the next instrument designed to accomplish the

17  champertous scheme.  As Righthaven admits, it executed this latest Restated SAA in an effort to

18  empower Righthaven to sue because this Court rejected its standing before, and for no other

19  reason.  Restated SAA at 1.  Executing a document designed to assist a champertous scheme to

20  comply with *Silvers* makes it no less champertous, and no less illegal.  Indeed, if a champertous

21  scheme could, once challenged, be immunized by mid-stream reallocation of interests between

22  the parties, the doctrine would be essentially nugatory:  the parties could always reallocate

23  ownership after the fact and accomplish thereby their illegal objective.

24         **B.      The Restated SAA Amounts to an Illegal Attempt to Practice Law Without a
                     License**

25

26         Independently, as has been persuasively argued by Amicus Citizens against Litigation

27  Abuse, Inc., Righthaven's entire business model and relationship with Stephens Media are also

28  illegal as constituting the unauthorized practice of law.  *See generally* Dkt. 48-1.  Under the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Restated SAA, as with the previous SAA and Clarification, Righthaven remains, in essence, a law

2   firm taking cases on a contingency fee basis, masquerading as a business.  *Id*. at 4-13.

3   Righthaven takes an "assignment" from Stephens Media for a 50% share in recovery.  That

4   "assignment" however is an assignment only in name—actually constituting nothing but an illicit

5   contingency fee agreement.  This exact arrangement has been repeatedly rejected by courts across

6   the country as illegal; it cannot form the basis for standing here.  *Id.*

7       Judge Hunt recognized this point in this recent order imposing Sanctions in the

8   *Democratic Underground* case.  *DU* OSC Ruling at 14 ("In the Court's view, the arrangement

9   between Righthaven and Stephens Media is nothing more nor less than a law firm, which

10  incidentally, I don't this is licensed to practice law in this state, but a law firm with a contingent

11  fee agreement masquerading as a company that's a party").  A law firm may not lawfully take

12  cases from its clients to sue on them in its own name.  *See, e.g., Bay County Bar Ass'n. v. Finance*

13  *Sys., Inc.*, 345 Mich. 434 (1956).  For a law firm to do so without even qualifying to practice is

14  doubly illegal.[10]

15      The illegal nature of Righthaven's relationship with Stephens Media thus provides not

16  only a basis to dismiss the present action, but to preclude any future claims based on the SAA,

17  however it might be amended.

18  **IV.   RIGHTHAVEN'S MOTION FOR LEAVE TO AMEND SHOULD BE DENIED AS
        FUTILE AND ABUSIVE.**

19

20      Righthaven's Motion for Leave to Amend should also be denied.  First, it is premised

21  entirely on flawed conclusion that its Restated SAA can manufacture standing in this action.

22  However, as explained above, no amendment can cure Righthaven's lack of standing at the

23  initiation of this suit, and accordingly leave to amend is futile.  *Saul v. United States*, 928 F.2d

24  829, 843 (9th Cir. 1991) (district court does not abuse its discretion when it denies leave to amend

25  a complaint where amended complaint would likewise be subject to dismissal).

26  [10] Amici also note that under the Nevada Rules of Professional Conduct, a law firm may not share legal fees with a
    non-lawyer or have non-lawyer investors. Nev. R. Prof. Conduct 5.4. Righthaven is owned by Net Sortie Systems
27  LLC (Steve Gibson's shell company) and SI Content Monitor LLC (an investment vehicle for members of the family
    of billionaire Warren Stephens who also own Stephens Media). RHOA, Ex. 18-1; *see also* SAA, § 2. Contrary to the
28  Rules, the "Recovery" that Righthaven splits with Stephens Media includes attorneys' fees. *See* SAA, Schedule 1 –
    Definitions at 14.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Moreover, as explained above, Righthaven's relationship with Stephens Media is unlawful

2  champerty, amounts to the unauthorized practice of law, seeks to perpetuate a fraud upon the

3  Court, and is based on an agreement that is, on its face, contrary to fact and to this Court's prior

4  judgments.  No possible amendment or refiling of this suit could pass muster, and none should be

5  allowed.  Permitting this or any further suit to continue would unnecessarily prolong the existence

6  of this unlawful relationship and legitimatize Righthaven's continuing scheme to hide its true

7  nature.

8    Enough is enough.  This case should be dismissed now without leave to amend, and with

9  direction that no further lawsuits shall be filed by Righthaven based on its SAA with Stephens

10  Media.

11                                    **CONCLUSION**

12    For the foregoing reasons, Amici Democratic Underground LLC, Citizens against

13  Litigation Abuse, and Professor Jason Shultz respectfully request that this Court dismiss

14  Righthaven's lawsuit for lack of standing and deny its Motion to Amend.

15  Dated:   July 20, 2011                 FENWICK & WEST LLP

16

17                                        By:    _s/ Laurence F. Pulgram_
                                                 Laurence F. Pulgram
18
                                          Attorneys for Amicus Curiae
19                                        Democratic Underground, LLC

20  Dated:   July 20, 2011                 CHAD A. BOWERS, LTD

21

22                                        By:    _s/ Chad A. Bowers_
                                                 Chad A. Bowers
23
                                          Attorney for Amicus Curiae
24                                        Democratic Underground, LLC and
                                          Professor Jason Schultz
25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Dated:   July 20, 2011                    THE KINCANNON FIRM

2

3                                            By:   *s/ J. Todd Kincannon*
                                                  J. Todd Kincannon
4                                                 (*Pro Hac Vice Pending*)
                                                  P.O. Box 7901
5                                                 Columbia, SC 29202
                                                  Telephone:  877-992-6878
6
                                             Attorney for Amicus Curiae
7                                            Citizens against Litigation Abuse, Inc.

8

9                              **ATTORNEY ATTESTATION**

10          In accordance with the Court's Special Order No. 109, dated September 30, 2005, I

11   hereby attest that concurrence in the filing of this document has been obtained from the

12   signatories indicated by a "conformed" signature (/s/) within this e-filed document:

13

14                                                */s/ Laurence Pulgram*
                                                  Laurence Pulgram
15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO