# EXHIBIT 1

```
                                                                    1

 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF NEVADA
 2       BEFORE THE HONORABLE ROGER L. HUNT, U.S. DISTRICT JUDGE

 3
     RIGHTHAVEN, LLC, a              :
 4   Nevada limited-liability        :
     company,                        :
 5                                   :  No. 2:10-cv-01356-RLH-GWF
           Plaintiff,                :
 6                                   :  July 14, 2011
           vs.                       :
 7                                   :  Las Vegas, Nevada
     DEMOCRATIC UNDERGROUND,         :
 8   LLC, a District of              :
     Columbia limited-               :
 9   liability company; and          :
     DAVID ALLEN, an                 :
10   individual,                     :
                                     :
11         Defendants.               :
                                     :
12   _____:
                                     :
     DEMOCRATIC UNDERGROUND,         :
13   LLC, a District of              :
     Columbia limited-               :
14   liability company,              :
                                     :
15         Counterclaimant,          :
                                     :
16         vs.                       :
                                     :
17   RIGHTHAVEN, LLC, a              :
     Nevada limited-liability        :
18   company; and STEPHENS           :
     MEDIA, LLC, a Nevada            :
19   limited-liability               :
     company,                        :
20                                   :
           Counterdefendants.        :
21   _____:

22

23           TRANSCRIPT OF ORDER TO SHOW CAUSE [116]

24

25


       DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -  (775) 329-0132
```

```
 1  APPEARANCES:

 2  For the Plaintiffs:        SHAWN MANGANO
                                COLBY WILLIAMS
 3                              DONALD CAMPBELL
                                Attorneys at Law
 4

 5  For the Defendants:        LAURENCE F. PULGRAM
                                KURT OPSAHL
 6                              Attorneys at Law

 7

 8

 9

10

11

12

13

14

15  FTR No. RLH/20110714

16
        (Transcript produced from digital voice recording;
17            transcriber not present at proceedings)

18

19

20

21

22  Transcribed by:    Donna Davidson, RDR, CRR, CCR 318
                        Certified Realtime Reporter
23                      400 South Virginia Street
                        Reno, Nevada  89501
24                      (775) 329-0132

25
```

3

1        LAS VEGAS, NEVADA, JULY 14, 2011, 9:04 A.M.
2                          --o0o--
3                     P R O C E E D I N G S
4
5        THE COURT:  Be seated.
6        THE CLERK:  Righthaven, LLC, versus Democratic
7   Underground, LLC, et al, 2:10-cv-1356-RLH-GWF.
8        This is the time set on order for a show cause
9   hearing and also for the motion to reconsider.
10       Counsel, please note your appearances for the
11  record.
12       MR. MANGANO:  Shawn Mangano on behalf of
13  plaintiff Righthaven, LLC.
14       MR. WILLIAMS:  Good morning, Your Honor, Colby
15  Williams on behalf of Stephens Media.
16       MR. CAMPBELL:  Donald Drew Campbell on behalf
17  of Stephens Media.
18       MR. PULGRAM:  Laurence Pulgram on behalf of
19  Democratic Underground.
20       MR. OPSAHL:  Kurt Opsahl, the Electronic
21  Frontier Foundation, on behalf of Democratic
22  Underground.
23       THE COURT:  Thank you.
24       MR. WILLIAMS:  Excuse me, Your Honor.  I heard
25  your clerk say this was also set for a motion for

DONNA DAVIDSON, RDR, CRR, CCP, CCR # 318 -  (775) 329-0132

1  there's anything about what Mr. Mangano just said that
2  suggests to the Court that I need to hear from
3  Democratic Underground.
4          MR. OPSAHL:  Thank you, Your Honor.
5          THE COURT:  Let me make it clear that the
6  Court is also not here to find fault with Mr. Coons or
7  Mr. Chu.
8          I do find it significant, however, that in all of
9  this -- and I -- I've read and reread this sentence from
10 the statement in the response, and I quote from the
11 second page:  It is certainly understandable how Local
12 Rule 7-1.1 could have arguably been reasonably construed
13 to not require the disclosure of Stephens Media's
14 interest in any recovery.
15         I was impressed that you were able to get three
16 hedge words or qualifiers within the space of four words
17 in that sentence and wondered if maybe you ran out of
18 them.
19         That significant, I guess, to me is is that we
20 don't have any affidavit from Mr. Chu or Mr. Coons:
21 One, that they made a mistake; two, that they didn't
22 understand it; three, that they didn't understand Local
23 Rule 7.1-1.  But, more importantly, I don't have any
24 evidence that they even knew about the relationship;
25 that they were familiar with the terms and circumstances

13

1  of the strategic agreement.
2       An argument that they arguably could have
3  reasonably construed to not require that, in the Court's
4  opinion, is, frankly, ludicrous.
5       Rule 7.1-1, the purpose of it, the primary
6  purpose of it, is to make sure that the Court becomes
7  aware, as soon as possible, of any need to recuse itself
8  because of any conflict of interest.  But it's the
9  violation of the rule, in addition to all of the other
10 things that took place in this case and any other cases
11 that the Court has in front of it -- and I think there
12 are -- I think there are or were 34 cases that were
13 assigned to me by Righthaven in this case.  I do not
14 understand the argument that an agreement whereby
15 Stephens Media got half of any recovery or settlement
16 could any -- in any way be construed as not having a
17 direct pecuniary interest.
18      And, again, I'm not here to sanction Mr. Coons or
19 Mr. Chu.  And I will tell you now that I do not think
20 that the Court's sanction power is limited to sanction
21 Mr. Chu or Mr. Coons.  The Court does have the right to
22 sanction an attorney when he violates it.
23      I don't have any evidence that they intentionally
24 kept this from the Court.  But I have a lot of evidence
25 that Righthaven intentionally kept it.  This is not an

1  issue of negligence, in the Court's view.  It goes to
2  the evidence of an intentional avoidance of disclosing
3  information and specific direct statements contrary to
4  that.
5       I think I have sufficient inherent power to
6  sanction.  And I think Rule 11 gives me even additional
7  power to sanction for violation of this rule under these
8  circumstances.
9       Counsel that was representing Righthaven,
10 Mr. Coons and Mr. Chu, were both in-house counsel, if
11 you will.
12      Mr. Gibson, who took over and I think was counsel
13 at the time that the SAA was disclosed is the CEO of
14 Righthaven.  So I think for purposes of the language of
15 7.1-1, in this instance, Righthaven qualifies at a party
16 acting pro se.  Because it's their in-house people doing
17 it, it's not outside counsel as they have now.
18      In the Court's view, the arrangement between
19 Righthaven and Stephens Media is nothing more nor less
20 than a law firm, which, incidentally, I don't think is
21 licensed to practice law in this state, but a law firm
22 with a contingent fee agreement masquerading as a
23 company that's a party.
24      There was a clear pecuniary interest, in the
25 Court's view, by Stephens Media.  Mr. Gibson negotiated

1   the agreement.  He signed the agreement.  He certainly
2   knew the agreement and its contents.  He has a
3   significant amount of experience.  At least that is
4   represented to me.  I think this has been part of a
5   concerted effort to hide Stephens Media's role in this
6   litigation.
7           Plaintiff claimed that it had various exclusive
8   rights when it knew that the ability to exercise those
9   rights were retained exclusively by Stephens Media.  It
10  constantly and consistently refused to produce the
11  agreement.  And it wasn't until after the Court ordered
12  that it be disclosed and then unsealed that they started
13  admitting their reasons.
14          There was, in fact, in the -- in Stephens Media's
15  reply to their motion -- in support of their motion to
16  dismiss, that they state, and I quote, "Stephens Media
17  has never been identified or disclosed as a party who
18  has a direct pecuniary interest in the outcome of any
19  Righthaven case, and for good reason," close quote.
20          The representations about the relationship and
21  the rights of Righthaven were misrepresentations.  They
22  were misleading.  And that -- the failure to disclose
23  them -- and you can speak and argue that there's no case
24  law or there are no -- there's no definition in the rule
25  that lays out what a direct pecuniary interest is.  I

1  don't know how more direct you can get.  The fact that
2  it has to go to Righthaven first and then go to Stephens
3  Media, in the Court's view, does not remove it from
4  being a direct pecuniary interest.  It was there.  They
5  had the right to have -- they had the right, actually,
6  to settle claims on their own.
7       And the Court finds it troubling, quite frankly,
8  in all of the cases that I'm aware of filed in this
9  district, and I've lost count as to how many there were,
10  that not only were the terms of the agreement disclosed,
11  but that there was a consistent, repeated failure to
12  identify Stephens Media as having any interest in this
13  lawsuit.
14       And it isn't enough to say, well, the Court
15  should have been on notice of it.  The Court has the
16  right to accept the representations made by a party
17  through counsel.  And when it finds that those
18  representations are not true and, having looked at all
19  this evidence, finds that they are intentionally untrue,
20  the Court feels that there is a necessity of and finds
21  that there is an obligation on the Court to sanction
22  Stephens Media.
23       I've given a lot of thought as to what kind of
24  sanction is required.  I appreciate the fact that
25  counsel has attempted to rectify the problem that has

1  existed.  It does not change or affect the Court's
2  opinion as to whether or not it was an accident or a
3  misunderstanding as opposed to being an intentional --
4  I'll call it failure to disclose, for want of a stronger
5  term, although I think a stronger term is justified.
6  But as part of the sanction, the Court is going to order
7  that every case Righthaven has in any jurisdiction in
8  this country must be provided with a copy of this
9  Court's decision about the agreement, the one on
10 standing, and that the agreement be disclosed to parties
11 that Righthaven has sued.
12       The Court is also going to order a monetary
13 sanction against Righthaven, itself, in the amount of
14 $5,000 and order that Local Rule 7.1-1 will be properly
15 complied with, either retrospectively or prospectively,
16 in all cases that are filed by Righthaven with respect
17 to this agreement.
18       Is there anything -- yes, counsel?
19       Incidentally, that monetary sanction will be paid
20 within two weeks to the clerk of court.
21            MR. MANGANO:  Your Honor, just a couple points
22 of clarification.  And I understand that you will be
23 issuing a written opinion based upon what we -- based
24 upon this hearing, I assume?
25            THE COURT:  I'm not sure I will, counsel.

18

1  I'll give that some consideration.
2          MR. MANGANO:  Okay.  Well, in view of that
3  uncertainty, I'd just --
4          THE COURT:  If I do issue a written opinion,
5  counsel, I'm also going to direct that it be provided,
6  filed in every other case that Righthaven has against
7  anybody on this --
8          MR. MANGANO:  Okay.
9          THE COURT:  Along these issues.
10         MR. MANGANO:  Okay.  Your Honor, just for
11  point of clarification, you've mentioned a couple bases
12  for your sanction power; and it's not to challenge your
13  sanction powers, but to clarify the record.
14      You've mentioned Rule 11, you've mentioned the
15  inherent power, and you've mentioned the local rule.
16  These sanctions that you just enumerated, do those fall
17  under, one, all or -- one specific sanction power or
18  under all your inherent power --
19         THE COURT:  I'm invoking all of them, counsel.
20         MR. MANGANO:  Okay.  Thank you, Your Honor.
21      And a second point of clarification is that you
22  said that parties -- all parties who are sued to be
23  provided with a copy of the agreement, the strategic
24  alliance agreement.
25         THE COURT:  That will not apply to those cases

1  that have been dismissed, unless there's going to be an
2  appeal in those cases.
3              MR. MANGANO:  Okay.  So all -- essentially all
4  pending matters, would that be --
5              THE COURT:  Yes.
6              MR. MANGANO:  Okay.  And would your order
7  include -- since as the Court, I'm sure, is aware, we
8  have a clarification and we have what's now a restated
9  version of the SAA, restated and amended version, would
10 you like those provided as well?
11             THE COURT:  No.
12             MR. MANGANO:  Just the SAA?
13             THE COURT:  And no -- any revisions,
14 amendments after the fact, in the Court's view, is
15 irrelevant to this issue.
16             MR. MANGANO:  Okay.  Thank you, Your Honor.
17             THE COURT:  Thank you.
18       Any questions from other defendant?
19             MR. OPSAHL:  It may also be useful for some of
20 those cases to have a copy of Righthaven's operating
21 agreement.
22             THE COURT:  I beg your pardon?
23             MR. OPSAHL:  It may also be useful to -- for
24 the defendants in those cases to have a copy of
25 Righthaven's operating agreement along with the

1  strategic alliance.
2           THE COURT:  I think that was part of my order,
3  counsel, is that the operating -- well, are you talking
4  about the strategic alliance agreement?
5           MR. OPSAHL:  There's a strategic alliance
6  agreement as between Stephens Media and Righthaven; then
7  there's also the Righthaven operating agreement, which
8  is the organizational document for Righthaven.
9           MR. MANGANO:  Your Honor, that's -- the issue
10 here is the failure to disclose Stephens Media, which is
11 a party to the --
12          THE COURT:  Yes.  I will not include that,
13 counsel.  I don't think it's relevant to this.
14          MR. OPSAHL:  Okay.  Thank you, Your Honor.
15          MR. MANGANO:  And, Your Honor, there are cases
16 pending, such as in the District of Colorado, which
17 involve -- do not involve Stephens Media, but they
18 involve MediaNews Group as the holder of the work that's
19 been assigned.
20      Would your order require a production of the SAA
21 or the production of the operative agreement, which I
22 believe has been publicly filed already in the lead case
23 that's resulted in a stay of some 34 actions?
24          THE COURT:  In Colorado, you're talking about?
25          MR. MANGANO:  Yes.  All the Colorado

1   actions -- all the Colorado actions, to my knowledge, do
2   not involve Stephens Media content.
3         I just want to make sure that when you say
4   produced in all jurisdictions, it's not all -- not all
5   jurisdictions involve Stephens Media content.  So --
6         THE COURT:  Are the agreements, the strategic
7   agreements the same?
8         MR. MANGANO:  No.  They are in a different
9   form.  The content is significantly -- it looks
10  different.  It's very -- the document that controls
11  those agreements has been produced and has not been
12  sealed.
13        THE COURT:  All right.
14        MR. MANGANO:  So the only other jurisdiction
15  would be there's a pending action in South Carolina, and
16  there are the pending actions in this jurisdiction that
17  involve Stephens Media.
18        THE COURT:  You are obligated to the one in
19  South Carolina, but you're also obligated to advise the
20  Colorado court of this decision.
21        MR. MANGANO:  Thank you, Your Honor.
22        MR. PULGRAM:  And, finally, Your Honor,
23  Laurence Pulgram.  You stated that if you issued a
24  ruling in writing on this matter today, on this OSC,
25  that you would ask that it be provided to the other

1  courts.
2       In the absence of that written ruling, would it
3  make sense for the transcript of your ruling, up to the
4  colloquy here, to be provided to other courts in lieu of
5  a written order, to save Your Honor from having to write
6  the written order?
7       MR. MANGANO:  I think that's the
8  understanding.  If there's no order, I'm to produce the
9  transcript, correct?
10      THE COURT:  Yes.  I think that's a good
11 suggestion.  And that will be the order if it wasn't
12 clear otherwise.
13      Anything else?
14      MR. MANGANO:  No, Your Honor.
15      MR. OPSAHL:  No, Your Honor.
16      THE COURT:  We'll be in recess.
17           (The proceedings were concluded at
18           9:35 a.m.)
19                *   *   *
20
21
22
23
24
25

```
                                                                    23
 1                              -o0o-

 2          I certify that the foregoing is a correct

 3          transcript from the electronic sound recording

 4          of the proceedings in the above-entitled matter.

 5
            [signature: Donna Davidson]                    7/14/11
 6          _____           _____

 7          Donna Davidson, RDR, CRR, CCR #318             Date
            Official Reporter
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

DONNA DAVIDSON, RDR, CRR, CCR #318 - (775) 329-0132