SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

DALE M. CENDALI, ESQ. (admitted *pro hac vice*)
dale.cendali@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Tel:    (212) 446-4800
Fax:    (212) 446-4900

*Attorneys for Plaintiff Righthaven LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>PAHRUMP LIFE, an entity of unknown origin and nature; MAREN SCACCIA, an individual; and MICHAEL SCACCIA, an individual,<br><br>Defendants. | Case No.: 2:10-cv-01575-JCM-PAL<br><br>**PLAINTIFF RIGHTHAVEN LLC'S SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND AND RESPONSE TO ORDER TO SHOW CAUSE** |

        Righthaven LLC ("Righthaven") hereby replies to amici curiae Democratic Underground, LLC ("Democratic Underground"), Jascon Schultz ("Mr. Schultz"), and the Citizens Against Litigation Abuse, Inc.'s ("CALA"; all amicus curiae are collectively referred to herein as "Amici") response to Righthaven's supplemental memorandum in support of its motion for leave to file an amended complaint (Doc. # 57) and response to Court Order to show cause (Doc. # 21). (Doc. # 58, "Amici's Response" or the "Response").   This supplemental reply is based on

the below memorandum of points and authorities, the pleadings and papers on file in this action, any other matter upon which this Court takes notice, along with the oral argument of counsel, if any, presented at the July 27, 2011 hearing in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Amici's Response is troubling in both its tone and its misapplication of the legal principles upon which their arguments are based.  In most instances, Amici simply ask the Court to adopt their reasoning without any supporting legal authority.  Stylistically, Amici's Response is littered with disparaging remarks and commentary about Righthaven and Stephens Media's efforts to reform the Strategic Alliance Agreement (the "SAA") through the Clarification and Amendment to Strategic Alliance Agreement ("Amendment") and/or the Restated and Amended Strategic Alliance Agreement ("Restated and Amended SAA").  Amici's unbridled accusations, such as "fraud upon the Court," have no place in zealous, but tempered, advocacy.

It is clear that the Amici need to resort to such tactics, as they now realize that they have no valid basis to challenge Righthaven's standing in light of the Restated and Amended SAA.  Thus, while this Court's Order to Show Cause asked the parties to brief the issue of standing, the Amici are now arguing for the first time a laundry list of extraneous issues relating to issue preclusion, champtery, fraud and unauthorized practice of law, all of which are equally meritless and are in any case outside the scope of this Court's Order.  Equally remarkable is that with respect to each of these new desperate attacks on Righthaven, Amici misstate and misapply well-settled law.

While Amici apparently sincerely believe that the internet should be a "copyright free zone" whereby anyone can use another's copyrighted works without permission or compensation, this point of view is clearly at odds with the U.S. Constitution's grant of a limited monopoly in order to incentivize creation and the numerous decisions of the U.S. Supreme Court, the Ninth Circuit, and numerous District Courts which have held otherwise.  Amici's challenge to Righthaven's standing must be seen as what it is—an effort to advance its policy

agenda.  Such arguments are better made to Congress as opposed to overburdening the courts with poorly reasoned legal arguments that seek to limit the freedom of contract.

As the old adage goes, if the law favors you, argue the law.  If the facts favor you, argue the facts.  If neither favor you, pound the table.  Amici's Response is an exercise in loud table pounding—all they have accomplished is making a lot of noise.

## II.   ARGUMENT

### A.   Amici Tacitly Concede that Standing Exists Under the Restated and Amended SAA.

Righthaven has standing to sue under the Restated and Amended SAA.  Righthaven and Stephens Media played close attention to the various court orders concerning standing and have worked hard to be responsive to the courts' concerns.  As a result of the Restated and Amended SAA, Righthaven is the sole owner of each assigned work and is vested with authority to sue for all past, present and future infringements related thereto.  Under the Restated and Amended SAA, Stephens Media holds only a non-exclusive license to exploit the assigned works.  It is black-letter law that non-exclusive licensees lack standing to sue, ***only*** Righthaven has the legal right to bring a copyright infringement claim regarding the infringed work. *See Davis v. Blige,* 505 F.3d 90, 101 (2d Cir. 2007) ("[T]he holder of a nonexclusive license may not sue others for infringement."); *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996) ("[A] person holding a nonexclusive license has no standing to sue for copyright infringement."); *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 32 (2d Cir. 1982) ("The Copyright Act authorizes only to types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights."). Further, the Restated and Amended SAA eliminates the prior limitations on Righthaven's assignment that Amici asserted were bases to find that Righthaven lacked standing.  For example, under the Restated and Amended SAA, Righthaven has the sole discretion to determine whether or not to bring an infringement action based on an assigned copyright.  Similarly, Stephens Media may not encumber Righthaven's rights in any assigned copyright, and Stephens Media's option to re-purchase any assigned copyright does not accrue until five years after the copyright is assigned.

In short, the Restated and Amended SAA is well within the parameters set by the Ninth Circuit in *Silvers*.  Consequently, there can be no question that Righthaven is the only true owner of any assigned copyright and thus, has standing to sue for infringement.  Tellingly, the Amici do not argue otherwise.

**B.     This Court Should Grant Righthaven's Motion for Leave to Amend, Which Would Cure Any Standing Defect Under the Original Complaint.**

Lacking substance, the Amici result to arguments over form.  They repeat their prior argument that standing must exist at the inception of the lawsuit and cannot be cured with subsequent changes in the facts.  Yet, as Righthaven has already explained in its prior briefing, courts routinely allow a plaintiff to file an amended complaint in order to cure a prior standing defect.  *See, e.g., Bushnell, Inc. v. Brunton Co.*, 659 F. Supp. 2d 1150, 1160 (D. Kan. 2009) (granting leave to amend complaint to cure standing defect existing at inception of lawsuit and noting that a dismissal of the case would waste judicial resources); *Northstar Fin. Advisors, Inc. v. Schwab Inv.*, 2011 WL 1312044, at *3-4  (N.D. Cal. Mar. 2, 2011) (finding that amending complaint after patent assignment to plaintiffs cured prior standing defect and that dismissal of case would elevate form over substance); *Travelers Ins. Co. v. 633 Third Assoc.*, 973 F.2d 82, 87-88 (2d Cir. 1992) (granting plaintiff leave to file a supplemental pleading incorporating events occurring after the complaint was filed in order to establish standing); *see also Galen Med. Assoc., Inc. v. United States*, 74 Fed. Cl. 377, 382 (Fed. Cl. 2006) (amended complaint filed by re-instated corporation cured original standing defect in complaint that was filed when corporation was suspended).  Furthermore, any amended complaint filed by Righthaven would relate back to the time of filing the original complaint pursuant to Federal Rule of Civil Procedure 15(c).  *See In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 585 (S.D.N.Y. 2009) (granting plaintiffs time to acquire assignments or ratifications from real parties in interest and amend complaints to cure standing defects and holding that such amendments would relate back to original filing of complaints); *Haddad Bros. Inc. v. Little Things Mean A Lot, Inc.*, 2000 WL 1099866, at *9 (S.D.N.Y. Aug. 4, 2000) ("Initial defects in standing are remediable through an amended complaint.  Where an amendment cures a standing

defect, nothing in the nature of that amendment would prohibit it from relating back to the initial complaint."); *cf. Valmet Paper Mach., Inc. v. Beloit Corp.*, 868 F. Supp. 1085, 1089-1090 (W.D. Wis. 1994) ("[A] decision that the [post-filing] written assignment did not cure the standing defect would simply lead plaintiffs to amend the complaint to add the assignor and then dismiss it as an unnecessary party, or simply to reinstate the lawsuit.  Either alternative would result in needless delay and needless expenditure of the parties' and the court's resources.  Thus, holding that the written assignment executed only thirteen days after suit was commenced did not cure plaintiffs' standing defect would only 'exalt form over substance.'").  Consequently, as it is well-established that courts routinely permit the filing of an amended complaint to cure a standing defect, Righthaven is respectfully seeking leave to do so here in the interest of judicial economy. Not only do Amici fail to address any of Righthaven's cited case law in this regard, they do not cite any cases that support their position.  Thus, the heavy weight of authority supports granting Righthaven's Motion for Leave to Amend in order to cure a defect in standing under the original complaint.

### C.      Amici's Claim That Righthaven Is Barred by the Doctrine of Issue Preclusion Is a Misstatement of the Law.

The Amici assert that because the issue of standing under the original SAA and the Amendment have been decided in other cases, the doctrine of issue preclusion applies.  Although a creative attempt to get the Court to ignore the Restated and Amended SAA—which the Amici cannot attack on standing grounds—this argument fails.

"A prior federal court decision has preclusive effect where (1) the issue necessarily decided at the previous proceeding is ***identical*** to the one which is sought to be relitigated; (2) the first proceeding ended with a ***final judgment on the merits***; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party a the first proceeding." *Kourtis v. Cameron,* 419 F.3d 989, 994 (9th Cir. 2005) (emphasis added) (citing *Hydranautics v. FilmTec Corp.,* 204 F.3d 880, 885 (9th Cir. 2000)); *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir. 2001); *W. Radio Servs. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir. 1997).

Amici's flawed issue preclusion analysis can be quickly dispensed of because a dismissal for lack of standing is not a decision on the merits.  *See Stalley v. Orlando Reg. Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."); *Torres-Negron v. J & N Records, LLC,* 504 F.3d 151, 164-65 (1st Cir. 2007) (entry of judgment for lack of subject matter jurisdiction failed to constitute a decision on the merits of copyright infringement allegations); *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1188 (11th Cir. 2003) (stating that a dismissal for lack of subject matter jurisdiction "plainly is not an adjudication on the merits that would give rise to a viable res judicata defense"); *Wages v. IRS,* 915 F.2d 1230, 1234 (9th Cir. 1990) ("A jurisdictional dismissal is not a judgment on the merits."); *GHK Exploration Co. v. Tenneco Oil Co.,* 857 F.2d 1388, 1392 (10th Cir. 1988) ("[A] court-ordered dismissal for lack of subject matter jurisdiction is also not a decision on the merits ...."); *Cook v. Peter Kiewit Sons Co.,* 775 F.2d 1030, 1035 (9th Cir. 1985) (holding that a dismissal for lack of subject matter jurisdiction divests the court of the power to make judgments relating to the merits of the case); *see also* FED. R. CIV. P. 41(b) (involuntary dismissal for lack of jurisdiction is not an adjudication on the merits).  Indeed, each of the cases relied upon by Amici where a judgment has been entered involve dismissals ***without prejudice***. (*See Hoehn,* Docs. # 28 at 7-10, 30; *Mostofi,* Docs. # 34 at 4-8, 35; *DiBiase,* Docs. # 72 at 2, 73.)  Moreover, the *Democratic Underground* decision, which Amici rely upon extensively, is an interlocutory order.  (*Democratic Underground,* Doc. # 116 at 11.)

Even assuming the prior decisions in this District did have preclusive effect (which they do not), ***none*** were based upon the Restated and Amended SAA.  In fact, the decisions in *DiBiase, Barham, Democratic Underground,* and *Mostofi* were decided under the unamended SAA.  Only the decision in *Hoehn* considered, on a potentially advisory basis, the effect of the Amendment on standing.  Therefore, there is an absence of identical issues required to properly apply issue preclusion under controlling Ninth Circuit precedent. *See Kourtis,* 419 F.3d at 994. For at least these reasons, Amici's issue preclusion arguments fails.

**D.      The Restated and Amended SAA is Not Champertous.**

Putting aside its irrelevance to the issue of standing, Amici have incorrectly applied the

law of champerty—a centuries-old doctrine with limited application.  *Prosky v. Clark*, 109 P.

793, 794 (Nev. 1910) ("The reason for the enactment of the English statutes of champerty and

maintenance having very largely ceased to exist, the extent to which the doctrine is applied

varies greatly in different states.  Some states, for example California, have refused to recognize

it at all.").

Under Nevada law, champerty is a contract defense that "cannot be invoked except

between the parties to the champertous agreement in cases where such contract is sought to be

enforced."  *Del Webb Communities, Inc. v. Partington*, 2011 WL 2854086, at *7 (9th Cir. 2011)

(citing *Prosky,* 109 P. at 794).  Amici cannot challenge the Restated and Amended SAA as

champertous because they are not a party to the agreement—a threshold requirement that they

completely ignore.  While this, in and of itself, is fatal to Amici's argument, it should also be

noted that even if Amici could assert champerty, there is no substantive basis to conclude the

contractual agreement between Righthaven and Stephens Media is champertous.  As stated by

the Nevada Supreme Court, an agreement cannot be champertous if the plaintiff has an interest in

the litigation:

> Where a person promoting the suit of another has any interest whatever,
> legal or equitable, in the thing demanded, . . . he is in effect also a suitor
> according to the nature and extent of his interest. *McIntosh v. Harbour
> Club Villas Condominium*, 421 So.2d 10, 11 (Fla. Dist. Ct. App. 1982).

*Schwartz v. Eliades,* 939 P.2d 1034, 1036 (Nev. 1997).  Moreover, as the U.S. Supreme Court

has held, an assignee of an accrued cause of action has standing to bring suit in his or her own

name even if there is a promise to remit a portion of any proceeds recovered to the assignor.

*Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 275 (2008).

Under the Restated and Amended SAA, Righthaven has ownership of all works assigned

to it by Stephens Media, along with the right to sue for all past, present and future infringements.

As such, it is beyond dispute that Righthaven has an interest in the works upon which its

copyright infringement claims are based.  This precludes a finding that the Restated and

7

Amended SAA is champertous under Nevada law.  *See Schwartz,* 939 P.2d at 1036.  Moreover, the fact that Righthaven has agreed to share the proceeds of any recovery for infringement of a work assigned by Stephens Media is not improper.  *See Sprint Communications Co., L.P.,* 554 U.S. at 275.

**E.    Amici's Allegations of Fraud on the Court Are Frivolous and Unnecessary.**

Amici accuse Righthaven of defrauding the Court because it and Stephens Media chose to amend their agreement to comply with the court's ruling in *Hoehn*.  The Amici make this serious accusation with absolutely no basis.  As the Ninth Circuit has held, the power of a Court to find that a party has committed fraud on the court "is narrowly construed, applying only to fraud that defiles the court or is perpetrated by officers of the court."  *U.S. v. Chapman*, 642 F.3d 1236, 1240 (9th Cir. 2011) (citing *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1104 (9th Cir. 2006) (describing fraud on the court as "fraud perpetrated by officers of the court that prevents the judicial machinery from performing its impartial task of adjudging cases that are presented for adjudication.")).

Here, Righthaven and Stephens Media revised their agreement in order to comply with the *Hoehn* Court's holding regarding standing.  Not only did Righthaven promptly inform all parties of the existence of the Restated and Amended SAA just after it was executed, Righthaven also promptly informed the Court and disclosed the agreement.  Righthaven affirmatively sought a stipulation giving all parties the opportunity to address standing under this agreement.  Righthaven respectfully submits that its actions were consistent with providing this Court with the information it needs to adjudicate this case on the merits.  The Amici's attempt to use the unrelated *Democratic Underground* decision regarding Righthaven's disclosure of interested parties is unavailing.  Righthaven has rectified its prior failure to disclose Stephens Media as an interested party, and that issue has nothing to do with its standing to sue under the Restated and Amended SAA.

Amici have failed to cite a single case that prohibits private parties, such as Righthaven and Stephens Media, from amending their contractual agreements to effectuate the parties' intent.  Moreover, through Section 15.1 of the SAA, the parties expressly empowered the Court

to correct any defective provision in order to "approximate the manifest intent of the [p]arties." (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)  Indeed, even the U.S. Supreme Court has expressly acknowledged that failure to confer standing upon an assignee of an accrued claim "could easily be overcome" by rewriting the agreement.  *See Sprint Communications Co., L.P.,* 554 U.S. at 289.  Thus, it would be illogical to hold that such revisions constitute fraud upon this Court.  Amici's argument is frivolous and should be disregarded.

### F.   The Restated and Amended SAA Does Not Constitute an Attempt to Practice Law Without a License.

Amici's assertion that the Restated Amendment constitutes an illegal attempt to practice law without a license is also without merit.  Righthaven is not a law firm.  While it has in-house counsel, all cases in this District are currently handled exclusively by outside counsel licensed to practice in this jurisdiction or with permission to do so from the Court on a *pro hac vice* basis. The fact that Righthaven and Stephens Media may share the proceeds of any recovery related to copyright litigation based on assigned works is neither unlawful nor does it constitute "an illicit contingency fee agreement" as asserted by Amici (Doc. # 58 at 19:4-5).  *See Sprint Communications Co., L.P.,* 554 U.S. at 289 ("Petitioners . . . say [] the assignments in this litigation constitute nothing more than a contract for legal services. We think this argument is overstated.  There is an important distinction between simply hiring a lawyer and assigning a claim to a lawyer (on the lawyer's promise to remit litigation proceeds).  The latter confers a property right (which creditors might attach); the former does not."); *see also  In re Brooms*, 447 B.R. 258, 265 (9th Cir. 2011) ("And for collection purposes, the assignee who holds legal title to the debt according to substantive law is the real party in interest, even though the assignee must account to the assignor for whatever is recovered in the action.")

Amici cites *Bay County Bar Ass'n v. Finance Sys., Inc.,* 345 Mich. 434 (1956) for the proposition that a law firm cannot sue on clients' cases in its own name.  This case is inapposite. As noted, Righthaven is not a law firm.  Moreover, under the Restated and Amended SAA,

9

Righthaven has been validly conveyed ownership in the assigned works, along with the right to sue for past, present and future infringements.

While Amici wish to characterize the structure of this transaction as analogous to a law firm bringing a client's suit in the firm's own name, this is simply not the case.  Ownership of the works is transferred to Righthaven along with right to sue for infringement.  Stephens Media's receipt of a non-exclusive license to exploit the works does not alter this conclusion.  In fact, given the Stephens Media's non-exclusive license, Righthaven is the only party with standing to sue for copyright infringement. *See Davis,* 505 F.3d at 101 ("[T]he holder of a nonexclusive license may not sue others for infringement."); *I.A.E., Inc.,* 74 F.3d at 775 ("[A] person holding a nonexclusive license has no standing to sue for copyright infringement."); *Eden Toys, Inc.,* 697 F.2d at 32 ("The Copyright Act authorizes only to types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.").  Accordingly, there is no justifiable basis to adopt Amici's claim the Amended and Restated SAA constitutes the unauthorized practice of law or to invoke the overreaching relief of barring Righthaven from relying on the amended version of the SAA or any other subsequent amendment of the SAA in any litigation commenced by the company.

## V.    CONCLUSION

For the foregoing reasons, Righthaven respectfully requests that the Court grant its motion for leave to amend its complaint and to further determine that it has standing to maintain this action.

Dated this 25th day of July, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada  89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

10

KIRKLAND & ELLIS LLP
DALE M. CENDALI, ESQ. (admitted *pro hac vice*)
dale.cendali@kirkland.com
601 Lexington Avenue
New York, New York  10022
Tel:     (212) 446-4800
Fax:     (212) 446-4900

*Attorneys for Plaintiff Righthaven LLC*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I on this 25th day of July, I attempted to cause the foregoing document to be served by the Court's CM/ECF system, but internet accessibility through Cox Communications was disrupted for several hours, thereby requiring me to formally submit the foregoing document on the 26th day of July by relocating to my office, which utilizes a different internet service provider.  I have also caused the foregoing document to be and to be served via U.S. Mail and electronic mail to:


Michael Scaccia:
4191 West Quail Run Road
P.O. Box 9466
Pahrump, Nevada 89060
pahrumplife@yahoo.com

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.